Silverman Perlstein & Acampora LLP
Counsel to Plaintiffs
100 Jericho Quadrangle, Suite 300
Jericho, New York  11753
(615) 479-6300
Edward M. Flint, Esq. (EMF#7001)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
GOLDEN MANAGERS ACCEPTANCE
CORP. and GOLDEN IMPROVEMENTS
CORPORATION,
                        Plaintiffs,

          -against-                       Index No. CV

RICHARD YANDOLI,

                        Defendant.
-------------------------------------------------------------x

**APPLICATION BY ORDER TO SHOW CAUSE FOR (A) A PRE-JUDGMENT
ORDER OF ATTACHMENT PURSUUANT TO RULE 64 OF THE FEDERAL
RULES OF CIVIL PROCEDURE AND SECTION 6201(3) OF THE NEW YORK
CIVIL PRACTICE LAW AND RULES AND (B) AN ORDER GRANTING AN
*EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
<u>PURSUANT TO RULE 65(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>**

GOLDEN MANAGERS ACCEPTANCE CORP. ("Golden Mac") and GOLDEN IMPROVEMENTS CORPORATION ("Impco" and with Golden Mac, the "Plaintiffs"), individually, by their attorneys, Silverman Perlstein & Acampora LLC, as and for their Application by Order to Show Cause for (a) a Pre-judgment Order of Attachment Pursuant to Rule 64 of the Federal Rules of Civil Procedure (the "FRCP") and Section 6201(3) of the New York Civil Practice Law and Rules (the "CPLR") and (b) an Order Granting an *Ex Parte* Temporary Restraining Order and Preliminary Injunction Pursuant to Rule 65(b) of the FRCP, respectfully alleges as follows:

### **BACKGROUND**

1.      This is an action to recover money due and owing on nine (9) separate Guaranties (the "Guaranties") each of which guaranties the payment of nine (9) separate notes (the "Notes").  Each of the Notes and each of the Guaranties were executed by Richard Yandoli

(the "Defendant"). The Notes were executed in the Defendant's capacity as President of the corporate borrower, Yandoli Foods, Inc. (Foods") and the Guaranties were executed by the Defendant personally, in his individual capacity. The Defendant is the sole shareholder and director of the corporate borrower, Foods. The Notes and the Guaranties are more fully described in the Complaint filed in this action.

2.     The Notes and Guaranties were in the following amounts and executed on the dates indicated:

| Date | Amount |
|---|---|
| June 22, 2004 | $ 95,986.78 |
| June 22, 2004 | $ 265,737.63 |
| June 24, 2004 | $ 400,000.00 |
| October 25, 2004 | $ 376,693.04 |
| October 29, 2004 | $ 93,086.88 |
| November 2, 2004 | $ 150,000.00 |
| November 30, 2004 | $ 731,546.96 |
| November 30, 2004 | $ 279,248.05 |
| March 14, 2006 | $1,000,000.00 |

3.     The total principal amount owed to Plaintiffs on the Notes and the Guaranties is $2,831,995.78. In addition, pursuant to the terms of the Notes and the Guaranties, the Plaintiffs are entitled to payment of accrued and unpaid interest, certain late fees and attorneys' fees.

4.     Although Foods was the borrower on each of the nine (9) Notes, the proceeds of the loans evidenced by the Notes were utilized to purchase equipment for, and for working capital for, the seven (7) operating subsidiaries of Foods, each of which operated a McDonald's franchise.

5.     On or about July 21, 2006, Foods and its seven (7) wholly-owned subsidiaries filed for bankruptcy relief in the Eastern District of New York. The Plaintiffs filed identical proofs of claims in the bankruptcy cases of Foods and each of its seven (7) subsidiaries.

6.     Substantially all of the assets of the subsidiaries were sold in March and April, 2007 for net proceeds in excess of $6 million. Foods, on the other hand, had, and has, substantially no assets with which to satisfy claims of creditors, such as the Plaintiffs.

7. After the sale of the subsidiaries' assets, counsel for Plaintiffs commenced an investigation of the transactions and business conducted by the subsidiaries during their bankruptcy cases, as such activity was reflected in the subsidiaries' publicly filed monthly operating reports. As a result of their investigation, counsel determined that a substantial amount of funds had been transferred to third parties and to the Defendant during the bankruptcy cases, without apparent approval by the bankruptcy court and apparently without any benefit to the subsidiaries or their creditors.

8. Based on the results of the investigation, Impco, Golden Mac and their servicer, JPMorgan Chase Bank, N.A., filed a motion to convert the cases to liquidations under chapter 7. After a number of hearings, on or about October 30, 2007, the bankruptcy court converted the bankruptcy cases and Richard J. McCord ("McCord") was appointed as the chapter 7 Trustee for the debtors

9. On or about January 4, 2008, McCord filed an adversary proceeding against both the Defendant and his spouse alleging, among other things, that McCord was entitled to judgment because the Defendant caused Foods' subsidiaries not to pay federal and New York State income taxes and State Sales taxes while, at the same time, causing Foods to transfer assets of the subsidiaries in various payments to the Defendant, his spouse and other third parties for the benefit of the Defendant. On the same date, McCord filed and served an application for a pre-judgment attachment and temporary restraining order.[1]

10. Significantly, McCord's application did not allege that the Defendant or his spouse had transferred assets, was threatening to transfer assets or was about to transfer assets.

11. As detailed in the accompanying Affidavit of Edward M. Flint, Esq., at a hearing before the Bankruptcy Court for the Eastern District of New York on January 31, 2008, both

---

[1] Significantly, the Plaintiffs have claims based upon Notes and Guaranties executed by the Defendant. McCord, on the other hand, has asserted claims that must be litigated and reduced to judgment.

McCord and counsel for the Defendant confirmed on the record that Yandoli and his spouse would transfer approximately $200,000 in cash and cash equivalents and the deeds to eight condominium units owned by the Defendant or the Defendant and his spouse.  Upon information and belief, the Defendant and his spouse will receive no consideration for the transfer of cash and real property to McCord.  At the January 31, 2008 hearing, it was represented to the Bankruptcy Court that the property to be transferred by the Defendant had equity with a value in excess of $2,000,000. .

12. Both McCord and bankruptcy counsel for Foods and its subsidiaries have challenged whether the Plaintiffs have legitimate claims against the seven (7) operating subsidiaries whose assets were sold.  To date, there have no objections or defenses asserted regarding the claims against Yandoli Foods, Inc. based on the loans advances by the Plaintiffs.  Thus, if McCord obtains possession of assets of the Defendant, it appears that he will utilize the assets to satisfy the claims of creditors of Foods' subsidiaries, which, according to McCord and the subsidiaries bankruptcy counsel, would exclude the Plaintiffs from any distribution.

13. Furthermore, a search of the public records reflects that there no fewer than eleven (11) pending lawsuits or judgments against the Defendant, including a number of foreclosure actions against properties that the Defendant has announced that he will transfer.  Few of these actions and judgments involve parties who are creditors of the bankrupt entities.[2]  Moreover, public records also reveal that there are at least five (5) tax liens filed against the Defendant.

14. It is clear that the Defendant has very significant creditors, among the largest of which are the Plaintiffs.  It is equally clear that if the Defendant carries through on the plan to transfer his assets, the Plaintiffs will be severely prejudiced by the Defendant's depletion of assets available to satisfy his creditors, without any assurances of a corresponding ability to

---

[2] Although it may be highly probable that the Defendant and his spouse may be forced into personal bankruptcies, that issue is not before the Court at this time.

4

share in any distributions made by McCord. On the other hand, McCord, as a putative creditor of the Defendant, will be protected by virtue of any injunction issued that will assure that the Defendant's assets are not put beyond the reach of legitimate creditors.

## APPLICATION AND RELIEF REQUESTED

15. By this application, Plaintiffs seek an Order of the Court granting a pre-judgment attachment to the real and personal property of the Defendant and a temporary restraining order and preliminary injunction enjoining the transfer of any property belonging to the Defendant, except for payment of reasonable living expenses for the Defendant and the Defendant's spouse and children.

16. As demonstrated in the accompanying Affidavit of Edward M. Flint, Esq., ample cause exists for the order of attachment, the temporary restraining order and the preliminary injunction requested herein. The Defendant has announced his intention to transfer cash and real property worth than $2 million to McCord for no consideration. McCord has announced his intention to liquidate that property for the benefit of creditors of the subsidiaries of Foods.

17. Furthermore, if the Defendant goes forward with his plan to transfer assets to McCord, the Plaintiffs and the Defendant's other creditors will be permanently deprived of recourse to those assets thereby causing them irreparable harm. There is an immediate and pressing need for provisional relief requested herein until such time as the competing interests for the Defendant's assets can be sorted out.

18. Finally, because this action is based on Notes and Guaranties duly executed by the Defendant, there is a very high probability of success on the merits.

19. Clearly, the facts and the equities militate heavily in favor of the relief requested by the Plaintiffs.

## CONCLUSION

20. For the foregoing reasons, and because the planned transfer of the Defendant's assets for no consideration will cause irreparable harm, the Court should enter an Order (a)

granting the Plaintiffs a pre-judgment order of attachment, (b) enjoining the Defendant from transferring any interest in property, except for cash reasonably necessary to support the Defendant, the Defendant's spouse and the Defendant's minor children, until the final disposition of this action.

Dated: Jericho, New York
         February 28, 2008

                    **SILVERMAN PERLSTEIN & ACAMPORA LLP**
Attorneys for plaintiffs Golden Managers Acceptance Corp., and Golden Improvements Corporation

By:   s/Edward M. Flint
         Edward M. Flint (EMF#7001)
         A Member of the Firm
         100 Jericho Quadrangle, Suite 300
         Jericho, New York 11753
         (516) 479-6300

Silverman Perlstein & Acampora LLP
Counsel to Plaintiffs
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(615) 479-6300
Edward M. Flint, Esq. (EMF#7001)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
GOLDEN MANAGERS ACCEPTANCE
CORP. and GOLDEN IMPROVEMENTS
CORPORATION,

                Plaintiffs,

      -against-                          Index No. CV

RICHARD YANDOLI,

                Defendant.
-------------------------------------------------------------x

**CERTIFICATION OF EDWARD M. FLINT, ESQ., PURSUANT TO
RULE 65(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE
OF EFFORTS TO GIVE NOTICE OF PRESENTATION PLAINTIFFS'
APPLICATION BY ORDER TO SHOW CAUSE FOR (A) A PRE-JUDGMENT
ORDER OF ATTACHMENT PURSUUANT TO RULE 64 OF THE FEDERAL
RULES OF CIVIL PROCEDURE AND SECTION 6201(3) OF THE NEW YORK
CIVIL PRACTICE LAW AND RULES AND (B) AN ORDER GRANTING AN
*EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
PURSUANT TO RULE 65(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

      Edward M. Flint, Esq., an attorney duly admitted to practice law before the courts of the State of New York and before this Court, certifies under penalty of perjury as follows:

      1.    I am a member of Silverman Perlstein & Acampora LLC, attorneys for plaintiffs GOLDEN MANAGERS ACCEPTANCE CORP. ("Golden Mac") and GOLDEN IMPROVEMENTS CORPORATION ("Impco" and with Golden Mac, the "Plaintiffs"). I am personally and fully familiar with the facts alleged herein, except for those facts alleged upon information and belief. I submit this affidavit in support of the Plaintiffs' Application by Order to Show Cause for (a) a Pre-judgment Order of Attachment Pursuant to Rule 64 of the Federal Rules of Civil Procedure (the "FRCP") and Section 6201(3) of the New York Civil Practice Law

EMF/D260196v/F053785

and Rules (the "CPLR") and (b) an Order Granting an *Ex Parte* Temporary Restraining Order and Preliminary Injunction Pursuant to Rule 65(b) of the FRCP.

2. Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, at approximately 11.30 a.m. on February 28, 2008, I placed a telephone call to Harvey J. Cavayero of Harvey J. Cavayero & Associates, the attorney who has represented defendant, Richard Yandoli (the "Defendant"), in the bankruptcy proceedings for his companies pending in the Eastern District of New York.  Mr. Cavayero did not answer his telephone at his office.  I thereupon left a voice mail message that I would present to the Court after 1:00 p.m. on February 28, 2008, an application for a temporary restraining order enjoining the transfer of property by the Defendant pending a hearing on the Application for a preliminary injunction and an order of attachment.

3. At approximately 12:45 p.m., I spoke to Mr. Cavayero and faxed him copies of the Complaint, the Application for a temporary restraining Order, the supporting Affidavit and the proposed Order to Show Cause.  At the time of the call, Mr. Cavayero indicated that he had no objections to the temporary injunction being sought.

Dated: Jericho, New York
February 28, 2008

                                                                                          s/Edward M. Flint
                                                                                          Edward M. Flint, Esq. (EMF 7001)