Richard J. McCord, Esq. (RJM 3290)
John Gionis, Esq. (JG 6373)
Jaspreet S. Mayall, Esq. (JSM 0615)
Carol A. Glick, Esq. (CAG 2675)
CERTILMAN BALIN ADLER & HYMAN, LLP
Counsel to the Chapter 7 Trustee, Richard J. McCord, Esq.
90 Merrick Avenue
East Meadow, NY 11554
(516) 296-7000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
GOLDEN MANAGERS ACCEPTANCE
CORP. and GOLDEN IMPROVEMENTS
CORPORATION,

           Plaintiffs,   Index No. 08 CV 2007

  -against-           Honorable Stephen C. Robinson

RICHARD YANDOLI,

           Defendant.
-----------------------------------------------------------X

**AFFIRMATION IN OPPOSITION TO THE APPLICATION
OF PLAINTIFFS GOLDEN MANAGERS ACCEPTANCE
CORP. AND GOLDEN IMPROVEMENTS CORPORATION FOR
(A) A PRE-JUDGMENT ORDER OF ATTACHMENT
PURSUANT TO RULE 64 OF THE FEDERAL RULES OF
CIVIL PROCEDURE AND CPLR § 6201(3) AND (B) AN
ORDER GRANTING A PRELIMINARY INJUNCTION
PURSUANT TO RULE 65(b) OF THE FEDERAL RULES
<u>OF CIVIL PROCEDURE</u>**

  **JASPREET S. MAYALL ESQ.**, the undersigned, an attorney at law, duly admitted to practice law before the courts of the State of New York and the Southern District of New York, affirms the following to be true under the penalties of perjury:

  1.  I am a member of the firm of Certilman Balin Adler & Hyman, LLP, counsel for RICHARD J. MCCORD, ESQ., Trustee of the Chapter 7 Estates ("Trustee")

of Yandoli Foods, Inc.; Thurm-Lee Foods, Inc.; Neptune Ave. Foods, Inc.; Flatlands Avenue Foods, Inc.; Rockaway Parkway Foods, Inc.; Seaview Avenue Foods, Inc.; Avenue V Foods, Inc.; and Nostrand-Hillel Foods, Inc. (collectively the "Debtors").

2. The instant affirmation is submitted in opposition to the Application (the "Application") of Golden Managers Acceptance Corp. ("Golden MAC") and Golden Improvements Corporation ("Impco") (Golden MAC and Impco, collectively, the "Plaintiffs"), for (a) a Pre-Judgment Order of Attachment Pursuant to Rule 64 of the Federal Rules of Civil Procedure ("FRCP") and Section 6201(3) of the New York Civil Practice Law and Rules ("CPLR") and (b) an Order Granting an *Ex Parte* Temporary Restraining Order and Preliminary Injunction Pursuant to FRCP 65(b).

### The Underlying Action

3. Plaintiffs commenced the underlying action to recover money allegedly due and owing on nine (9) separate Guaranties (the "Guaranties"), each of which guaranties the payment of nine (9) separate notes (the "Notes").[1] Each of the Notes and each of the Guaranties were executed by Richard Yandoli ("Richard"). The Notes were executed in Richard's capacity as President of the corporate borrower, Yandoli Foods, Inc. ("Foods"), and the Guaranties were executed by Richard personally, in his individual capacity. Richard is the sole shareholder and director of the corporate borrower, Foods.

4. Plaintiffs allege in their complaint that the total principal amount owed to Plaintiffs on the Notes and Guarantees is $2,831,995.78. Plaintiffs also allege that,

---

[1] According to Plaintiff's Application, the Notes and Guaranties were in the following amounts and executed on the following dates: June 22, 2004 - $95,986.78; June 22, 2004 - $265,737.63; June 24, 2004 - $400,000.00; October 25, 2004 - $376,693.04; October 29, 2004 - $93,086.88; November 2, 2004 - $93,086.88; November 2, 2004 - $150,000.00; November 30, 2004 - $731,546.96; November 30, 2004 - $279,248.05; March 14, 2006 - $1,000,000.00.

pursuant to the terms of the Notes and Guaranties, the Plaintiffs are entitled to payment of accrued and unpaid interest, certain late fees and attorneys' fees.

5.  Plaintiffs further allege in their complaint that although Foods was the borrower on each of the nine (9) Notes, the proceeds of the loans evidenced by the Notes were utilized to purchase equipment for, and for working capital for, the seven (7) operating Debtors, each of which operated a McDonald's franchise.

6.  Foods is a holding company that provided certain administrative services for the seven (7) operating McDonald's franchises.

### The Debtors' Chapter 11 Cases

7.  On July 21, 2006, (the "Petition Date"), the Debtors filed voluntary petitions for relief with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") pursuant to Chapter 11 of title 11 of the United States Code. Pursuant to Court Order dated July 26, 2006, the Chapter 11 cases were jointly administered.

8.  Beginning on the Petition Date, the Debtors acted as debtors-in-possession pursuant to Sections 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code"). As sole shareholder and director, Richard operated the business of the Debtors on a day-to-day basis.

9.  No official committee of unsecured creditors was appointed in the Chapter 11 cases.

10. By Order dated February 13, 2007 (the "Bar Date Order"), the Bankruptcy Court fixed March 23, 2007 as the deadline for filing proofs of claims in the Debtors' Chapter 11 cases.

11. Plaintiffs and JPMorgan Chase Bank, N.A. ("Chase"), Master Servicer and Administrator of the Plaintiffs' loans (Plaintiffs and Chase, collectively, the "Chase Entities"), each timely filed proofs of claim against the estates of each of the eight (8) separate Debtors on November 6, 2006, at which time Plaintiffs became subject to the jurisdiction of the Bankruptcy Court. By such proofs of claim Golden MAC asserts a general unsecured claim against each of the Debtors' estates in the amount of $1,877,133.98; Impco asserts a general unsecured claim against each of the Debtors' estates in the amount of $971,992.77, and Chase asserts a general unsecured claim against each of the Debtors' estates in the amount of $2,849,126.75.[2] Copies of the proofs of claim filed by the Chase Entities in each of the eight (8) Chapter 11 cases pursuant to the Bar Date Order are annexed hereto as Exhibit 1.

12. The First Note did not become due and payable until November 20, 2006—after the Petition Date—and the other eight (8) Notes also became due and payable after the Petition Date.

13. In March and April 2007, the Debtors sold substantially all of their assets to the following parties: (1) the McDonald's® Corporation, a Delaware corporation that owns the national McDonald's® restaurant system and the McDonald's® franchise, and (2) Marianne, Patrick and Brian Spillane, existing McDonald's® franchises. Upon the closing of the sales, the Debtors ceased to conduct any business.

14. On June 14, 2007, the Debtors filed a Disclosure Statement in Respect to Debtors' Plan of Liquidation (the "Original Disclosure Statement") and proposed Plan of Liquidation.

---

[2] Although Foods executed a Security Agreement in connection with each of the Notes, the Plaintiffs failed to perfect the security interest granted thereby by filing Form UCC-1 financing statements. Consequently, the claims asserted by the Chase Entities are all general unsecured claims.

15. On August 20, 2007, the Debtors filed a First Amended Disclosure Statement in Respect to Debtor's Plan of Liquidation (the "Amended Disclosure Statement").

16. On August 27, 2007, the Plaintiffs filed an Objection to the Amended Disclosure Statement (the "Objection Memorandum").

### The Dismissal and Conversion Motions

17. During the period of time between the Petition Date and the sale of substantially all of the Debtors' assets, Richard was transferring, or arranging for the Debtors to transfer, at least $1,000,000 out of the Debtors' bankruptcy estates for the benefit of himself, his wife Judith Yandoli and various other parties. Richard did not seek the Bankruptcy Court's authorization for these transfers, which "supplemented" his regular compensation from the Debtors in the amount of $328,000.

18. These unauthorized transactions first started to come to light when the United States Trustee for the Eastern District of New York (the "UST") filed motions to dismiss or convert the Debtors' Chapter 11 cases. In her motion (the "Dismissal Motion"), the UST noted that the few Monthly Operating Reports ("MORs") the Debtors had filed through the date of the Dismissal Motion reflected certain apparently unauthorized transfers to Richard. Nevertheless, the UST did not base the relief she was seeking on these transfers, but, instead, on the Debtors' failure to timely file MORs required to be filed by debtors-in-possession under the Bankruptcy Code. The Debtors addressed the UST's concerns by bringing their MORs current through April 30, 2007. The UST and the Debtors formally resolved the Dismissal Motion by executing a Stipulation and Order on or about May 31, 2007.

19. Upon the filing of the MORs, the Chase Entities were able to examine the Debtors' post-petition operations and financial status. In connection with such examination, the Chase Entities discovered the extent of the unauthorized transfers. Among other things, the Chase Entities found evidence that Richard was transferring money to himself, to his wife, to "petty cash," and to a defunct nondebtor affiliate, Boardwalk Foods, Inc. ("Boardwalk") and using estate funds to directly pay his family's bills and living expenses. The Chase Entities reported this evidence to the UST.

20. The timing of these discoveries coincided with the hearing scheduled to consider the approval of the Original Disclosure Statement (the "Disclosure Hearing"). When confronted by the Chase Entities and the UST with allegations of "looting" of estate assets, the Debtors sought and obtained an adjournment of the Disclosure Hearing so that they could amend the Original Disclosure Statement.

21. The Amended Disclosure Statement briefly discusses the unauthorized transfer of estate assets for the benefit of Richard and states, in pertinent part, as follows:

> A preliminary investigation indicates that there are potential avoidance claims to be commenced by the Debotrs for the benefit of the estate. The probable preference targets at this juncture appear to be several equipment leasing creditors, Golden Managers Acceptance Corp., JP Morgan Chase and Golden Improvement Corp. In addition to certain potential preference actions, the Debtors believe that they hold an action against Richard Yandoli for unauthorized post-petition transfers in the approximate amount of $354,902.05 which represents payments made to Richard Yandoli during the course of the chapter 11 case which either exceeds the amount of compensation authorized by the Court or was paid on account of his shareholder's loan. Forchelli, Curto [Debtors' counsel] has commenced negotiations with separate counsel for Richard Yandoli to discuss an agreement which provides for the repayment of these funds. Preliminarily, the Debtors anticipate that they will

> be repaid partly from the proceeds of the collateral pledged to Sterling and All-Points by Richard and Judy Yandoli which will be released after the Plan is confirmed. It is estimated that the release of this collateral will be $100,000.00 and the remaining balance will be paid within 120 days of the confirmation Date.

Amended Discl. Stmt., pp. 42-43 (annexed to Plaintiffs' Application as Exhibit E).

22. In essence, the Amended Disclosure Statement contains an admission that Richard was the beneficiary of transfers of at least $354,902.05 which Richard would repay with his personal assets.

23. In the Objection Memorandum, the Chase Entities objected to the Amended Disclosure Statement on the following grounds: (i) the Debtors' inadequate disclosure of the unauthorized transfers discovered by the Chase Entities by examination of the MORs; (ii) the Debtors' failure to disclose other unauthorized post-petition activities (e.g., improper post-petition loans); and (iii) the inability of the Debtors' to confirm a plan of reorganization because of, among other things, the administrative insolvency of certain Debtors and the failure to pay administrative sales and income taxes.

24. On August 28, 2007, the Chase Entities filed a Motion to Convert Debtors' Chapter 11 Cases to Cases Under Chapter 7, to Disqualify Debtors' Bankruptcy Counsel, and to Disgorge Interim Attorneys' Fees Previously Paid, based on the Debtors' unauthorized post-petition transfers and other transactions, their failure to timely file MORs or pay post-petition taxes, and their patent inability to confirm a plan. The motion was thereafter amended (the "Amended Motion to Convert") on or about September 7, 2007.[3] The Amended Motion states that Richard's actions qualify as "a substantial or

---

[3] Prior to the hearing on the Amended Motion to Convert, the Chase Entities withdrew the requests for

1977131-2                                7

continuing loss to or diminution of the estate," "gross mismanagement of the estate" and "unauthorized use of cash collateral" that have "substantially harmed the Debtors' creditors," for purposes of Section 1112(b)(4) of the Bankruptcy Code. (Amended Motion to Dismiss, ¶ 28). In addition, the Amended Motion points out that the Debtors failed to pay post-petition tax obligations of $546,211.68 to the New York State Department of Taxation and Finance and $331,752.25 to the Internal Revenue Service, in clear derogation of their duties as debtors-in-possession, which also constitutes cause to convert the cases. (Amended Motion to Dismiss, ¶ 32). Finally, the Chase Entities made an impassioned plea for conversion of the Chapter 11 cases to Chapter 7 and concomitantly for the appointment of a Chapter 7 Trustee to investigate the egregious conduct of the Debtors' principal:

> In conclusion, if any Chapter 11 cases ever deserved conversion to Chapter 7, these cases do. The Debtors have misappropriated estate assets, retained professionals and obtained loans without this Court's approval, and failed to meet their statutory duties as debtors-in-possession (by, *inter alia*, filing late and possibly fraudulent Operating Reports and not paying their post-petition taxes). There is also no hope that these Debtors will ever confirm a plan. This Court should therefore convert these Bankruptcy Cases to cases under Chapter 7 immediately.

(Amended Motion, ¶ 34). A copy of the Amended Motion to Convert is annexed hereto as Exhibit 2. Several parties subsequently joined the Chase Entities' Amended Motion to Convert.

25. In the Debtors' response to the Amended Motion to Convert ("Debtors' Response"), Debtors stated that in addition to the post-petition transfers to Richard in the amount of $354,902.05, the Debtors had also located an additional $178,739.01 in

---

relief seeking to disqualify Debtors' bankruptcy counsel and to disgorge its fees.

unauthorized post-petition transfers to various third parties. (Debtor's Response, ¶ 29). A copy of the Debtors' Response is annexed hereto as Exhibit 3. Consequently, the Debtors admitted to $533,641.06 in inappropriate and unauthorized transfers of estate assets for the benefit of Richard.

26. The Bankruptcy Court heard evidence and argument on the Chase Entities' Amended Motion to Convert on October 16, 2007, and continued the hearing until October 30, 2007 to permit the litigants to file supplemental briefs in support of their respective positions. After consideration of all of the evidence and arguments, the Court found that cause existed under Section 1112 of the Bankruptcy Code to convert the Chapter 11 cases and granted the Amended Motion to Convert on October 30, 2007 (the "Conversion Date").

27. On October 31, 2007, Richard J. McCord, Esq. was appointed as the Chapter 7 Trustee of the estates pursuant to Section 702(d) of the Bankruptcy Code.

### The Adversary Proceeding Commenced by the Trustee

28. After the Conversion Date, the Trustee retained the law firm of Certilman Balin Adler & Hyman, LLP as attorneys for the Trustee and the accounting firm of Eisner, LLP as accountants for the Trustee.

29. The Trustee's accountants immediately began to investigate the financial affairs of the Debtors.

30. Among other things, the accountants' investigation revealed that (i) Richard, a 100% shareholder of the Debtors, willfully and knowingly failed to pay post-petition sales and income taxes to the Internal Revenue Service and the New York State Department of Taxation and Finance; (ii) instead, Richard made a decision to pay himself

and other creditors and vendors at the expense and detriment of the Debtors, the estates and their creditors; and (iii) there is no documentary proof establishing that Richard gave fair consideration for these transfers.

31.  Based on the foregoing, on or about January 4, 2008, the Trustee's attorneys filed an adversary proceeding in the Bankruptcy Court entitled *Richard J. McCord, Esq., as Chapter 7 Trustee of the Estates of Yandoli Foods, Inc., et al. v. Richard Yandoli and Judith Yandoli* (collectively, the "Yandlolis"), Adv. Pro. No. 08-1005-ess, which action arises out of the fraudulent diversion of the Debtors' assets to or for the benefit of the Yandolis. A copy of the Adversary Complaint is annexed hereto as Exhibit 4.

32.  In the adversary proceeding, the Trustee is seeking an Order pursuant to Section 105(a) of the Bankruptcy Code and FRCP 64 and 65, as made applicable to adversary proceedings by Rules 7064 and 7065 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"): (a) granting the Trustee a pre-judgment order of attachment attaching all of the assets of the defendants Richard Yandoli and Judith Yandoli; (b) granting the Trustee an *ex parte* temporary restraining order pending a hearing scheduled by Order to Show Cause, restraining and enjoining the Yandolis, their relatives, agents, servants, employees, former employees, or any other person or entity acting on their behalf, or purportedly acting on their behalf, from using, dissipating, assigning, encumbering, hypothecating, transferring, disposing of, distributing, commingling, the Defendants' assets, either individually held or jointly held with other individuals or entities, wherever located, including, but not limited to, real property, cash, accounts receivable, notes, chattel paper, corporate books and records whether physically

maintained, electronically maintained or maintained on paper, and all other property of the Yandolis; (c) granting the Trustee a preliminary injunction enjoining the Yandolis, their relatives, agents, servants, employees, former employees, or any other person or entity acting on his behalf, or purportedly acting on their behalf, from using, dissipating, assigning, encumbering, hypothecating, transferring, disposing of, distributing, commingling, or exercising control over the Defendants' assets, either individually held or jointly held, with other individuals or entities, wherever located including, but not limited, to real property, cash, accounts receivable, notes chattel paper, corporate books and records whether physically maintained, electronically maintained or maintained on paper, and all other property of the Yandolis; and (d) for such other and further relief as the Bankruptcy Court deems just and proper to protect and preserve the Debtors' estates.

33. On January 7, 2008, the Yandolis consented to the entry of a temporary restraining order and pre-judgment order of attachment (the "January 7, 2008 Restraining Order"), enjoining and restraining the Yandolis, their relatives, agents, servants, employees, former employees or any other person acting on their behalf, or purportedly acting on their behalf, from dissipating, disbursing, assigning, encumbering, hypothecating, transferring, disposing of, distributing, commingling, or exercising any control over the Yandolis' assets, either individually held, or jointly held with other individuals or entities, wherever located and including, but not limited to, the Yandolis' real property and cash, accounts receivable, notes, chattel paper, corporate book and records, whether physically maintained, electronically maintained or maintained on paper and all other property of the Defendants pending the hearing and determination of the Trustee's application, except in the ordinary course of business. A copy of the Order to

Show Cause containing the January 7, 2008 Restraining Order is annexed hereto as Exhibit 5.

35. On February 18, 2008, counsel to the Yandolis sent via overnight delivery to the Trustee six (6) Quit Claim Deeds to certain condominium units located in Waterbury, CT (the "Six Waterbury Condos") owned by Richard through his real estate holding company, KKR Properties, LLC. See letter from Harvey J. Cavayero & Associates to the Trustee dated February 18, 2008 annexed hereto as Exhibit 6. Notwithstanding the fact that the February 18 letter purports to enclose a $50,000 check payable to the Trustee, said check was inadvertently omitted from the UPS package.

35. On February 19, 2008, counsel to the Yandolis sent a replacement check payable to the Trustee in the amount of $50,000, which was deposited into the Trustee's bank account on or about said date. See letter from Harvey J. Cavayero & Asssociates to the Trustee dated February 19, 2008 annexed hereto as Exhibit 7.

36. By Stipulation and Order dated March 5, 2008 ("Modified Restraining Order"), a copy of which is annexed hereto as Exhibit 8, the Bankruptcy Court modified and expanded the January 7, 2008 Restraining Order to provide as follows:

> **ORDERED,** that on consent of the [Yandolis], the Yandolis, their relatives, agents, servants, employees, former employees, any limited liability partnership in which the [Yandolis] may be a general or limited partner, any limited liability company in which the Defendants may be a member, including without limitation, KKR Properties, LLC, and any other person (as defined in 11 U.S.C. § 101(41)), or entity (as defined in 11 U.S.C. § 101(15)), acting on their behalf, or purportedly acting on their behalf, are hereby temporarily enjoined and restrained from using, dissipating, disbursing, assigning, encumbering, hypothecating, transferring, disposing of, distributing, commingling, or exercising any control over the Defendants' assets, either individually held, or jointly

> held with other individuals or entities, wherever located and including, but not limited to, Defendants' real property and cash, accounts receivable, notes, chattel paper, corporate books and records, whether physically maintained, electronically maintained or maintained on paper and all other property of the Defendants pending the hearing and determination of the Trustee's application, except in the ordinary course of business. . . .

Modified Restraining Order, ¶ 2.

37. The Trustee intends to seek authorization from the Bankruptcy Court to market and sell the Six Waterbury Condos for the benefit of the Debtors' estates and all of the creditors.[4] Upon information and belief, the value of the Six Waterbury Condos is approximately $200,000.

38. Prior to the date on which the Plaintiffs commenced the instant action in the Southern District in New York, the Yandolis had already consented to a Pre-Judgment Order of Attachment as evidenced by the January 7, 2008 Restraining Order and turned over to the Trustee cash and other property worth approximately $250,000.

39. The Plaintiffs allege in the Application that Richard and his spouse planned to transfer to the Trustee approximately $200,000 in cash and cash equivalents and the deeds to eight (8) condominium units owned by Richard or by Richard and his spouse with a value in excess of $2,000,000. The Plaintiffs greatly overestimate the value of the property turned over to the Trustee pursuant to the temporary restraining order and pre-judgment order of attachment, as the Trustee believes that the value of the cash and Six Waterbury Condos is approximately $250,000. (Application, ¶ 11).

---

[4] Richard, as a member of KKR Properties, LLC, has consented to execute Assignments of Rents in favor of the Trustee with respect to the Six Waterbury Condos and to turn over to the Trustee any and all rents paid to KKR after entry of the Modified Restraining Order to be deposited into the Trustee Escrow Account maintained by the Trustee in connection with these Chapter 7 cases.

1977131-2                                           13

40. Plaintiffs argue in support of the Application that the Trustee has not reduced his claim against the Yandolis to judgment, while the Plaintiffs' claims against Richard on the Guaranties are based on a sum certain.

41. As indicated in paragraph 25 *supra*, the Debtors admitted to $533,641.06 in inappropriate and unauthorized transfers of estate assets for the benefit of Richard. Consequently, it is respectfully submitted that the Trustee should be permitted to market the Six Waterbury Condos pursuant to authorization of the Bankruptcy Court for the benefit of ***all*** of the creditors of the eight (8) Debtors and deposit the proceeds of sale in his Trustee Escrow Account. In the event that the sale yields proceeds in excess of $533,641.06, the Trustee agrees to segregate such amount until such time as a court of competent jurisdiction determines who has a superior right to the proceeds.

## The Relief Requested Should be Denied

### A. *Lack of Due Process*

42. The Plaintiffs did not give prior notice of the Application, as mandated by FRCP 65(b), to the Trustee, who has an interest in the proceedings as well as in the assets which the Plaintiffs seek to enjoin Richard from transferring, assigning, selling, hypothecating or otherwise disposing of and which assets the Plaintiffs seek to attach pursuant to a pre-judgment order of attachment.

43. Instead, the Trustee received the Application and the exhibits from the attorneys for the Yandolis one week after the entry of the Order to Show Cause and temporary restraining order.

44. The foregoing demonstrates that the Court issued the temporary restraining order despite a lack of due process.

45. Consequently, the Trustee respectfully submits that this Court should dissolve the temporary restraining order and deny the relief requested by the Plaintiffs' Application.

**B.**     *Trustee Has Superior Rights in the Richard Yandoli Assets*

46. Pursuant to Section 544(a)(1) and (a)(2) of the Bankruptcy Code:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of an creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is avoidable by (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists. . . .

11 U.S.C. §544(a)(2). In other words, the Trustee has the status as of the Petition Date of a hypothetical lien creditor with an execution against the Debtors that has been returned unsatisfied. In sum, the Trustee has the rights and powers of a secured creditor of the Debtors as of July 21, 2006—the Petition Date.

47. Section 348(a) of the Bankruptcy Code states:

> Conversion of a case from a case under one chapter of this title to a case under another chapter of this title, constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the ***date of filing of the petition, the commencement of the case***, or the order for relief.

11 U.S.C. § 348(a) (emphasis supplied). *See also In re R & J Construction Co., Inc.*, 43 B.R. 29, 31 (Bankr. E.D. Mo. 1984). Consequently, the fact that the case was converted on October 30, 2007 does not change the fact that the Trustee has the rights and powers of a hypothetical lien creditor as of July 21, 2006.

48. The Plaintiffs are general unsecured creditors of one or more of the Debtors, whose claims are evidenced by Notes that did not mature until after the Petition Date.[5]

49. In these Chapter 7 cases, the Trustee is charged with, among other things, the following statutory duties: (a) to collect and reduce to money the property of the estates for which the Trustee serves, and close such estates as expeditiously as is compatible with the best interests of parties in interest; (b) to be accountable for all property received; (c) to investigate the financial affairs of the Debtors; (d) if a purpose would be served, to examine proofs of claim and object to the allowance of any claim that is improper; (e) unless the Bankruptcy Court orders otherwise, to furnish such information concerning the estates and the estates' administration as is requested by a party in interest; and (f) make a final report and file a final account of the administration of the estate with the court and with the United States Trustee. 11 U.S.C. § 704(a). In sum, the Trustee acts as a fiduciary for all of the parties in interest involved in the Chapter 7 cases.

50. When the Bankruptcy Court was considering the proper course of action between converting the cases to Chapter 7 and appointing a chapter 7 trustee or appointing a chapter 11 trustee to oversee the liquidation of the chapter 11 cases pursuant

---

[5] The Plaintiffs' complaint states that the First Note became fully due and payable on November 20, 2006 and that Foods failed to satisfy the First Note by November 20, 2006. (Complaint ¶¶ 16 and 17).

to a Plan of Liquidation, Plaintiffs' counsel vehemently advocated in support of conversion and the appointment of a chapter 7 trustee. At the October 30, 2007 hearing, Plaintiffs' counsel argued as follows:

> MR. FLINT: . . . The real issue before the court today is this case has to start moving forward to its ultimate conclusion which is the investigation of the recovery actions, the collection of the funds and the distribution to creditors. And the best way to get there, what's in the best interest to [sic] creditors is the conversion to a Chapter 7.

(Tr. 10/30/07 Hrg., at 60). See excerpt of transcript annexed hereto as Exhibit 9. Consequently, it is evident that the Plaintiffs believed—and convinced most of the other creditors—that the primary function of any chapter 7 trustee that would be appointed would be to investigate the financial affairs of the Debtors, recover any unauthorized transfers for the benefit of the Chapter 7 estates, distribute the property of the estate according to priorities set forth in Section 726 of the Bankruptcy Code and to file a final report and account.

51. In accordance with his fiduciary duties to **all** of the creditors of the Chapter 7 estates, the Trustee commenced the adversary proceeding against the Yandolis in order to recover for the benefit of the estates the unauthorized transfers of the Debtors' assets to Richard. The Trustee also obtained a consensual temporary restraining order and pre-judgment order of attachment, as evidenced by the January 7, 2008 Restraining Order, as modified on March 8, 2008.

52. FRCP 64, made applicable in adversary proceedings by Bankruptcy Rule 7064, sets forth the conditions under which a plaintiff may obtain an order of attachment. It provides, in pertinent part:

> At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the District Court is held, existing at the time the remedy is sought.... The remedies thus available include arrest, attachment, garnishment, replevin, sequestration and other corresponding or equivalent remedies, however designed and regardless of whether by state procedure the remedy is ancillary to an action or must be obtained by an independent action.

53. In addition, CPLR § 6201 provides, in part:

> An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more Defendants, when:
>
> * * *
>
> 3. The Defendants, with the intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts;

54. In New York, a plaintiff is entitled to an order of attachment under an evidentiary showing that the Defendants have concealed or are about to conceal property in one of the ways enumerated in CPLR §6201(3) and that the Defendants have acted or will act with the intent to defraud his creditors or frustrate the enforcement of a judgment that might be obtained by such plaintiff. See Paul Bongoni v. Claire Friedlander, 176 A.D.2d 527, 574 N.Y.S.2d 717 (1st Dep't 1991); Societe Generale Alsacienne de Banque, Zurich v. Flemingdon Development Corp., 118 A.D.2d 769, 500 N.Y.S.2d 278 (2d Dep't 1986); Mishkin v. Kenney & Branisel, Inc., 609 F.Supp. 1254 (S.D.N.Y.) aff'd, 779 F.2d

35 (2d Cir. 1985); Al Finer Co. v. Premium Produce Corp., 1986 U.S. Dist. Lexis 26336 (S.D.N.Y. 1986).

55.   The January 7, 2008 Restraining Order, as modified, and the consensual turnover of the cash and deeds to the Six Waterbury Condos are tantamount to a pre-judgment order of attachment.

56.   A pre-judgment attachment acts as a placemarker, ensuring the Trustee's spot in the priority line until the Trustee can obtain a judgment in the adversary proceeding. See In re Robbins, 310 B.R. 626, 629 (9th Cir. BAP 2004), citing In re Southern California Plastics, Inc., 165 F.3d 1243, 1246 (9th Cir. 1999).

57.   In view of the foregoing, the Trustee has the status of a hypothetical lien creditor (i.e., secured creditor) of the Debtors as of the Petition Date and, as the holder of an attachment lien, has priority over any other creditor who may obtain a pre-judgment attachment against Richard Yandoli's personal assets after January 7, 2008.

58.   Consequently, the Plaintiffs cannot make an "end run" around the Trustee by obtaining the relief requested in the Application so as to receive preferred treatment to the detriment of the other creditors of the Chapter 7 estates.

C.   *There May be a Distribution to Unsecured Creditors*

59.   The Trustee presently has approximately $4.4 million in his Trustee Escrow Account for distributions to creditors, and he is seeking $5,000,000 in damages in the adversary proceeding he commenced against the Yandolis.

60.   Richard has consented to the liquidation of his personal assets by the Trustee in order to reduce his debts to the Chapter 7 estates and their creditors.

61. The Plaintiffs have asserted timely claims against Foods as well as each of the affiliated Debtors that operated McDonald's franchises and may be entitled to a distribution if the Trustee recovers sufficient assets to make distributions to the general unsecured creditors of the Chapter 7 estates.

### Relief Requested by Plaintiffs Should be Denied

62. Based upon all of the above, it is respectfully requested that this Court deny the Plaintiffs' Application in its entirety, as the Trustee was appointed by the Bankruptcy Court to pursue the rights and interests of all of the creditors of the Chapter 7 estates as against Richard Yandoli and has obtained a prior lien of attachment vis-à-vis Richard Yandoli's personal assets which assures that the Trustee's rights are superior to the rights of the Plaintiffs in such personal assets.

**WHEREFORE**, it is respectfully requested that this Court deny the Plaintiffs' Application in its entirety, dissolve the temporary restraining order for lack of due process and grant such other, further and different relief in favor of the Trustee as this Court may deem just, proper and equitable.

Dated: East Meadow, New York
March 19, 2008

                              **CERTILMAN BALIN ADLER & HYMAN, LLP**
                              Attorneys for Richard J. McCord, Esq., Trustee of the
                              Chapter 7 Estates of Yandoli Foods, Inc., et al.

By _____
       JASPREET S. MAYALL, ESQ. (JSM 0615)
       90 Merrick Avenue
       East Meadow, NY 11554
       (516) 296-7000