Richard J. McCord, Esq. (RJM 3290)
John Gionis, Esq. (JG 6373)
Jaspreet S. Mayall, Esq. (JSM 0615)
Carol A. Glick, Esq. (CAG 2675)
CERTILMAN BALIN ADLER & HYMAN, LLP
Counsel to the Chapter 7 Trustee, Richard J. McCord, Esq.
90 Merrick Avenue
East Meadow, NY 11554
(516) 296-7000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
GOLDEN MANAGERS ACCEPTANCE
CORP. and GOLDEN IMPROVEMENTS
CORPORATION,

|  |  |
|---|---|
| Plaintiffs, | Index No. 08 CV 2007 |
| -against- | Honorable Stephen C. Robinson |

RICHARD YANDOLI,

Defendant.
----------------------------------------------------------X

## AFFIRMATION IN OPPOSITION TO THE APPLICATION OF PLAINTIFFS GOLDEN MANAGERS ACCEPTANCE CORP. AND GOLDEN IMPROVEMENTS CORPORATION FOR (A) A PRE-JUDGMENT ORDER OF ATTACHMENT PURSUANT TO RULE 64 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND CPLR § 6201(3) AND (B) AN ORDER GRANTING A PRELIMINARY INJUNCTION PURSUANT TO RULE 65(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE

**JASPREET S. MAYALL ESQ.**, the undersigned, an attorney at law, duly

admitted to practice law before the courts of the State of New York and the Southern

District of New York, affirms the following to be true under the penalties of perjury:

1.      I am a member of the firm of Certilman Balin Adler & Hyman, LLP,

counsel for RICHARD J. MCCORD, ESQ., Trustee of the Chapter 7 Estates ("Trustee")

of Yandoli Foods, Inc.; Thurm-Lee Foods, Inc.; Neptune Ave. Foods, Inc.; Flatlands Avenue Foods, Inc.; Rockaway Parkway Foods, Inc.; Seaview Avenue Foods, Inc.; Avenue V Foods, Inc.; and Nostrand-Hillel Foods, Inc. (collectively the "Debtors").

2.     The instant affirmation is submitted in opposition to the Application (the "Application") of Golden Managers Acceptance Corp. ("Golden MAC") and Golden Improvements Corporation ("Impco") (Golden MAC and Impco, collectively, the "Plaintiffs"), for (a) a Pre-Judgment Order of Attachment Pursuant to Rule 64 of the Federal Rules of Civil Procedure ("FRCP") and Section 6201(3) of the New York Civil Practice Law and Rules ("CPLR") and (b) an Order Granting an *Ex Parte* Temporary Restraining Order and Preliminary Injunction Pursuant to FRCP 65(b).

## The Underlying Action

3.     Plaintiffs commenced the underlying action to recover money allegedly due and owing on nine (9) separate Guaranties (the "Guaranties"), each of which guaranties the payment of nine (9) separate notes (the "Notes").[1] Each of the Notes and each of the Guaranties were executed by Richard Yandoli ("Richard"). The Notes were executed in Richard's capacity as President of the corporate borrower, Yandoli Foods, Inc. ("Foods"), and the Guaranties were executed by Richard personally, in his individual capacity. Richard is the sole shareholder and director of the corporate borrower, Foods.

4.     Plaintiffs allege in their complaint that the total principal amount owed to Plaintiffs on the Notes and Guarantees is $2,831,995.78. Plaintiffs also allege that,

---

[1] According to Plaintiff's Application, the Notes and Guaranties were in the following amounts and executed on the following dates: June 22, 2004 - $95,986.78; June 22, 2004 - $265,737.63; June 24, 2004 - $400,000.00; October 25, 2004 - $376,693.04; October 29, 2004 - $93,086.88; November 2, 2004 - $93,086.88; November 2, 2004 - $150,000.00; November 30, 2004 - $731,546.96; November 30, 2004 - $279,248.05; March 14, 2006 - $1,000,000.00.

pursuant to the terms of the Notes and Guaranties, the Plaintiffs are entitled to payment of accrued and unpaid interest, certain late fees and attorneys' fees.

5.      Plaintiffs further allege in their complaint that although Foods was the borrower on each of the nine (9) Notes, the proceeds of the loans evidenced by the Notes were utilized to purchase equipment for, and for working capital for, the seven (7) operating Debtors, each of which operated a McDonald's franchise.

6.      Foods is a holding company that provided certain administrative services for the seven (7) operating McDonald's franchises.

### The Debtors' Chapter 11 Cases

7.      On July 21, 2006, (the "Petition Date"), the Debtors filed voluntary petitions for relief with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") pursuant to Chapter 11 of title 11 of the United States Code.  Pursuant to Court Order dated July 26, 2006, the Chapter 11 cases were jointly administered.

8.      Beginning on the Petition Date, the Debtors acted as debtors-in-possession pursuant to Sections 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code").   As sole shareholder and director, Richard operated the business of the Debtors on a day-to-day basis.

9.      No official committee of unsecured creditors was appointed in the Chapter 11 cases.

10.     By Order dated February 13, 2007 (the "Bar Date Order"), the Bankruptcy Court fixed March 23, 2007 as the deadline for filing proofs of claims in the Debtors' Chapter 11 cases.

11.    Plaintiffs and JPMorgan Chase Bank, N.A. ("Chase"), Master Servicer and Administrator of the Plaintiffs' loans (Plaintiffs and Chase, collectively, the "Chase Entities"), each timely filed proofs of claim against the estates of each of the eight (8) separate Debtors on November 6, 2006, at which time Plaintiffs became subject to the jurisdiction of the Bankruptcy Court.  By such proofs of claim Golden MAC asserts a general unsecured claim against each of the Debtors' estates in the amount of $1,877,133.98; Impco asserts a general unsecured claim against each of the Debtors' estates in the amount of $971,992.77, and Chase asserts a general unsecured claim against each of the Debtors' estates in the amount of $2,849,126.75.[2]  Copies of the proofs of claim filed by the Chase Entities in each of the eight (8) Chapter 11 cases pursuant to the Bar Date Order are annexed hereto as Exhibit 1.

12.    The First Note did not become due and payable until November 20, 2006—after the Petition Date—and the other eight (8) Notes also became due and payable after the Petition Date.

13.    In March and April 2007, the Debtors sold substantially all of their assets to the following parties:  (1) the McDonald's® Corporation, a Delaware corporation that owns the national McDonald's® restaurant system and the McDonald's® franchise, and (2) Marianne, Patrick and Brian Spillane, existing McDonald's® franchises.  Upon the closing of the sales, the Debtors ceased to conduct any business.

14.    On June 14, 2007, the Debtors filed a Disclosure Statement in Respect to Debtors' Plan of Liquidation (the "Original Disclosure Statement") and proposed Plan of Liquidation.

---

[2] Although Foods executed a Security Agreement in connection with each of the Notes, the Plaintiffs failed to perfect the security interest granted thereby by filing Form UCC-1 financing statements.  Consequently, the claims asserted by the Chase Entities are all general unsecured claims.

15.     On August 20, 2007, the Debtors filed a First Amended Disclosure Statement in Respect to Debtor's Plan of Liquidation (the "Amended Disclosure Statement").

16.     On August 27, 2007, the Plaintiffs filed an Objection to the Amended Disclosure Statement (the "Objection Memorandum").

### The Dismissal and Conversion Motions

17.     During the period of time between the Petition Date and the sale of substantially all of the Debtors' assets, Richard was transferring, or arranging for the Debtors to transfer, at least $1,000,000 out of the Debtors' bankruptcy estates for the benefit of himself, his wife Judith Yandoli and various other parties.  Richard did not seek the Bankruptcy Court's authorization for these transfers, which "supplemented" his regular compensation from the Debtors in the amount of $328,000.

18.     These unauthorized transactions first started to come to light when the United States Trustee for the Eastern District of New York (the "UST") filed motions to dismiss or convert the Debtors' Chapter 11 cases.  In her motion (the "Dismissal Motion"), the UST noted that the few Monthly Operating Reports ("MORs") the Debtors had filed through the date of the Dismissal Motion reflected certain apparently unauthorized transfers to Richard.  Nevertheless, the UST did not base the relief she was seeking on these transfers, but, instead, on the Debtors' failure to timely file MORs required to be filed by debtors-in-possession under the Bankruptcy Code.  The Debtors addressed the UST's concerns by bringing their MORs current through April 30, 2007.  The UST and the Debtors formally resolved the Dismissal Motion by executing a Stipulation and Order on or about May 31, 2007.

19.     Upon the filing of the MORs, the Chase Entities were able to examine the Debtors' post-petition operations and financial status.    In connection with such examination, the Chase Entities discovered the extent of the unauthorized transfers. Among other things, the Chase Entities found evidence that Richard was transferring money to himself, to his wife, to "petty cash," and to a defunct nondebtor affiliate, Boardwalk Foods, Inc. ("Boardwalk") and using estate funds to directly pay his family's bills and living expenses.      The Chase Entities reported this evidence to the UST.

20.     The timing of these discoveries coincided with the hearing scheduled to consider the approval of the Original Disclosure Statement (the "Disclosure Hearing"). When confronted by the Chase Entities and the UST with allegations of "looting" of estate assets, the Debtors sought and obtained an adjournment of the Disclosure Hearing so that they could amend the Original Disclosure Statement.

21.     The Amended Disclosure Statement briefly discusses the unauthorized transfer of estate assets for the benefit of Richard and states, in pertinent part, as follows:

> A preliminary investigation indicates that there are potential avoidance claims to be commenced by the Debotrs for the benefit of the estate.    The probable preference targets at this juncture appear to be several equipment leasing creditors, Golden Managers Acceptance Corp., JP Morgan Chase and Golden Improvement Corp. In addition to certain potential preference actions, the Debtors believe that they hold an action against Richard Yandoli for unauthorized post-petition transfers in the approximate amount of $354,902.05 which represents payments made to Richard Yandoli during the course of the chapter 11 case which either exceeds the amount of compensation authorized by the Court or was paid on account of his shareholder's loan.    Forchelli, Curto [Debtors' counsel] has commenced negotiations with separate counsel for Richard Yandoli to discuss an agreement which provides for the repayment of these funds.    Preliminarily, the Debtors anticipate that they will

> be repaid partly from the proceeds of the collateral pledged
> to Sterling and All-Points by Richard and Judy Yandoli
> which will be released after the Plan is confirmed.  It is
> estimated that the release of this collateral will be
> $100,000.00 and the remaining balance will be paid within
> 120 days of the confirmation Date.

Amended Discl. Stmt., pp. 42-43 (annexed to Plaintiffs' Application as Exhibit E).

22.    In essence, the Amended Disclosure Statement contains an admission that Richard was the beneficiary of transfers of at least $354,902.05 which Richard would repay with his personal assets.

23.    In the Objection Memorandum, the Chase Entities objected to the Amended Disclosure Statement on the following grounds:  (i) the Debtors' inadequate disclosure of the unauthorized transfers discovered by the Chase Entities by examination of the MORs; (ii) the Debtors' failure to disclose other unauthorized post-petition activities (e.g., improper post-petition loans); and (iii) the inability of the Debtors' to confirm a plan of reorganization because of, among other things, the administrative insolvency of certain Debtors and the failure to pay administrative sales and income taxes.

24.    On August 28, 2007, the Chase Entities filed a Motion to Convert Debtors' Chapter 11 Cases to Cases Under Chapter 7, to Disqualify Debtors' Bankruptcy Counsel, and to Disgorge Interim Attorneys' Fees Previously Paid, based on the Debtors' unauthorized post-petition transfers and other transactions, their failure to timely file MORs or pay post-petition taxes, and their patent inability to confirm a plan.  The motion was thereafter amended (the "Amended Motion to Convert") on or about September 7, 2007.[3]  The Amended Motion states that Richard's actions qualify as "a substantial or

---

[3] Prior to the hearing on the Amended Motion to Convert, the Chase Entities withdrew the requests for

continuing loss to or diminution of the estate," "gross mismanagement of the estate" and "unauthorized use of cash collateral" that have "substantially harmed the Debtors' creditors," for purposes of Section 1112(b)(4) of the Bankruptcy Code.  (Amended Motion to Dismiss, ¶ 28).  In addition, the Amended Motion points out that the Debtors failed to pay post-petition tax obligations of $546,211.68 to the New York State Department of Taxation and Finance and $331,752.25 to the Internal Revenue Service, in clear derogation of their duties as debtors-in-possession, which also constitutes cause to convert the cases.  (Amended Motion to Dismiss, ¶ 32).  Finally, the Chase Entities made an impassioned plea for conversion of the Chapter 11 cases to Chapter 7 and concomitantly for the appointment of a Chapter 7 Trustee to investigate the egregious conduct of the Debtors' principal:

> In conclusion, if any Chapter 11 cases ever deserved conversion to Chapter 7, these cases do.  The Debtors have misappropriated estate assets, retained professionals and obtained loans without this Court's approval, and failed to meet their statutory duties as debtors-in-possession (by, *inter alia*, filing late and possibly fraudulent Operating Reports and not paying their post-petition taxes).  There is also no hope that these Debtors will ever confirm a plan.  This Court should therefore convert these Bankruptcy Cases to cases under Chapter 7 immediately.

(Amended Motion, ¶ 34).  A copy of the Amended Motion to Convert is annexed hereto as Exhibit 2.   Several parties subsequently joined the Chase Entities' Amended Motion to Convert.

25.     In the Debtors' response to the Amended Motion to Convert ("Debtors' Response"), Debtors stated that in addition to the post-petition transfers to Richard in the amount of $354,902.05, the Debtors had also located an additional $178,739.01 in

---

relief seeking to disqualify Debtors' bankruptcy counsel and to disgorge its fees.

unauthorized post-petition transfers to various third parties. (Debtor's Response, ¶ 29). A copy of the Debtors' Response is annexed hereto as Exhibit 3. Consequently, the Debtors admitted to $533,641.06 in inappropriate and unauthorized transfers of estate assets for the benefit of Richard.

26.     The Bankruptcy Court heard evidence and argument on the Chase Entities' Amended Motion to Convert on October 16, 2007, and continued the hearing until October 30, 2007 to permit the litigants to file supplemental briefs in support of their respective positions. After consideration of all of the evidence and arguments, the Court found that cause existed under Section 1112 of the Bankruptcy Code to convert the Chapter 11 cases and granted the Amended Motion to Convert on October 30, 2007 (the "Conversion Date").

27.     On October 31, 2007, Richard J. McCord, Esq. was appointed as the Chapter 7 Trustee of the estates pursuant to Section 702(d) of the Bankruptcy Code.

### The Adversary Proceeding Commenced by the Trustee

28.     After the Conversion Date, the Trustee retained the law firm of Certilman Balin Adler & Hyman, LLP as attorneys for the Trustee and the accounting firm of Eisner, LLP as accountants for the Trustee.

29.     The Trustee's accountants immediately began to investigate the financial affairs of the Debtors.

30.     Among other things, the accountants' investigation revealed that (i) Richard, a 100% shareholder of the Debtors, willfully and knowingly failed to pay post-petition sales and income taxes to the Internal Revenue Service and the New York State Department of Taxation and Finance; (ii) instead, Richard made a decision to pay himself

and other creditors and vendors at the expense and detriment of the Debtors, the estates and their creditors; and (iii) there is no documentary proof establishing that Richard gave fair consideration for these transfers.

31.    Based on the foregoing, on or about January 4, 2008, the Trustee's attorneys filed an adversary proceeding in the Bankruptcy Court entitled *Richard J. McCord, Esq., as Chapter 7 Trustee of the Estates of Yandoli Foods, Inc., et al. v. Richard Yandoli and Judith Yandoli* (collectively, the "Yandlolis"), Adv. Pro. No. 08-1005-ess, which action arises out of the fraudulent diversion of the Debtors' assets to or for the benefit of the Yandolis. A copy of the Adversary Complaint is annexed hereto as Exhibit 4.

32.    In the adversary proceeding, the Trustee is seeking an Order pursuant to Section 105(a) of the Bankruptcy Code and FRCP 64 and 65, as made applicable to adversary proceedings by Rules 7064 and 7065 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"): (a) granting the Trustee a pre-judgment order of attachment attaching all of the assets of the defendants Richard Yandoli and Judith Yandoli; (b) granting the Trustee an *ex parte* temporary restraining order pending a hearing scheduled by Order to Show Cause, restraining and enjoining the Yandolis, their relatives, agents, servants, employees, former employees, or any other person or entity acting on their behalf, or purportedly acting on their behalf, from using, dissipating, assigning, encumbering, hypothecating, transferring, disposing of, distributing, commingling, the Defendants' assets, either individually held or jointly held with other individuals or entities, wherever located, including, but not limited to, real property, cash, accounts receivable, notes, chattel paper, corporate books and records whether physically

maintained, electronically maintained or maintained on paper, and all other property of the Yandolis; (c) granting the Trustee a preliminary injunction enjoining the Yandolis, their relatives, agents, servants, employees, former employees, or any other person or entity acting on his behalf, or purportedly acting on their behalf, from using, dissipating, assigning, encumbering, hypothecating, transferring, disposing of, distributing, commingling, or exercising control over the Defendants' assets, either individually held or jointly held, with other individuals or entities, wherever located including, but not limited, to real property, cash, accounts receivable, notes chattel paper, corporate books and records whether physically maintained, electronically maintained or maintained on paper, and all other property of the Yandolis; and (d) for such other and further relief as the Bankruptcy Court deems just and proper to protect and preserve the Debtors' estates.

33.    On January 7, 2008, the Yandolis consented to the entry of a temporary restraining order and pre-judgment order of attachment (the "January 7, 2008 Restraining Order"), enjoining and restraining the Yandolis, their relatives, agents, servants, employees, former employees or any other person acting on their behalf, or purportedly acting on their behalf, from dissipating, disbursing, assigning, encumbering, hypothecating, transferring, disposing of, distributing, commingling, or exercising any control over the Yandolis' assets, either individually held, or jointly held with other individuals or entities, wherever located and including, but not limited to, the Yandolis' real property and cash, accounts receivable, notes, chattel paper, corporate book and records, whether physically maintained, electronically maintained or maintained on paper and all other property of the Defendants pending the hearing and determination of the Trustee's application, except in the ordinary course of business. A copy of the Order to

Show Cause containing the January 7, 2008 Restraining Order is annexed hereto as Exhibit 5.

34.    On February 18, 2008, counsel to the Yandolis sent via overnight delivery to the Trustee six (6) Quit Claim Deeds to certain condominium units located in Waterbury, CT (the "Six Waterbury Condos") owned by Richard through his real estate holding company, KKR Properties, LLC.   See letter from Harvey J. Cavayero & Associates to the Trustee dated February 18, 2008 annexed hereto as Exhibit 6. Notwithstanding the fact that the February 18 letter purports to enclose a $50,000 check payable to the Trustee, said check was inadvertently omitted from the UPS package.

35.    On February 19, 2008, counsel to the Yandolis sent a replacement check payable to the Trustee in the amount of $50,000, which was deposited into the Trustee's bank account on or about said date.  See letter from Harvey J. Cavayero & Asssociates to the Trustee dated February 19, 2008 annexed hereto as Exhibit 7.

36.    By Stipulation and Order dated March 5, 2008 ("Modified Restraining Order"), a copy of which is annexed hereto as Exhibit 8, the Bankruptcy Court modified and expanded the January 7, 2008 Restraining Order to provide as follows:

> **ORDERED,** that on consent of the [Yandolis], the Yandolis, their relatives, agents, servants, employees, former employees, any limited liability partnership in which the [Yandolis] may be a general or limited partner, any limited liability company in which the Defendants may be a member, including without limitation, KKR Properties, LLC, and any other person (as defined in 11 U.S.C. § 101(41)), or entity (as defined in 11 U.S.C. § 101(15)), acting on their behalf, or purportedly acting on their behalf, are hereby temporarily enjoined and restrained from using, dissipating, disbursing, assigning, encumbering, hypothecating, transferring, disposing of, distributing, commingling, or exercising any control over the Defendants' assets, either individually held, or jointly

> held with other individuals or entities, wherever located and including, but not limited to, Defendants' real property and cash, accounts receivable, notes, chattel paper, corporate books and records, whether physically maintained, electronically maintained or maintained on paper and all other property of the Defendants pending the hearing and determination of the Trustee's application, except in the ordinary course of business. . . .

Modified Restraining Order, ¶ 2.

37.   The Trustee intends to seek authorization from the Bankruptcy Court to market and sell the Six Waterbury Condos for the benefit of the Debtors' estates and all of the creditors.[4]  Upon information and belief, the value of the Six Waterbury Condos is approximately $200,000.

38.   Prior to the date on which the Plaintiffs commenced the instant action in the Southern District in New York, the Yandolis had already consented to a Pre-Judgment Order of Attachment as evidenced by the January 7, 2008 Restraining Order and turned over to the Trustee cash and other property worth approximately $250,000.

39.   The Plaintiffs allege in the Application that Richard and his spouse planned to transfer to the Trustee approximately $200,000 in cash and cash equivalents and the deeds to eight (8) condominium units owned by Richard or by Richard and his spouse with a value in excess of $2,000,000.  The Plaintiffs greatly overestimate the value of the property turned over to the Trustee pursuant to the temporary restraining order and pre-judgment order of attachment, as the Trustee believes that the value of the cash and Six Waterbury Condos is approximately $250,000. (Application, ¶ 11).

---

[4] Richard, as a member of KKR Properties, LLC, has consented to execute Assignments of Rents in favor of the Trustee with respect to the Six Waterbury Condos and to turn over to the Trustee any and all rents paid to KKR after entry of the Modified Restraining Order to be deposited into the Trustee Escrow Account maintained by the Trustee in connection with these Chapter 7 cases.

40.    Plaintiffs argue in support of the Application that the Trustee has not reduced his claim against the Yandolis to judgment, while the Plaintiffs' claims against Richard on the Guaranties are based on a sum certain.

41.    As indicated in paragraph 25 *supra*, the Debtors admitted to $533,641.06 in inappropriate and unauthorized transfers of estate assets for the benefit of Richard. Consequently, it is respectfully submitted that the Trustee should be permitted to market the Six Waterbury Condos pursuant to authorization of the Bankruptcy Court for the benefit of ***all*** of the creditors of the eight (8) Debtors and deposit the proceeds of sale in his Trustee Escrow Account. In the event that the sale yields proceeds in excess of $533,641.06, the Trustee agrees to segregate such amount until such time as a court of competent jurisdiction determines who has a superior right to the proceeds.

## The Relief Requested Should be Denied

A.    ***Lack of Due Process***

42.    The Plaintiffs did not give prior notice of the Application, as mandated by FRCP 65(b), to the Trustee, who has an interest in the proceedings as well as in the assets which the Plaintiffs seek to enjoin Richard from transferring, assigning, selling, hypothecating or otherwise disposing of and which assets the Plaintiffs seek to attach pursuant to a pre-judgment order of attachment.

43.    Instead, the Trustee received the Application and the exhibits from the attorneys for the Yandolis one week after the entry of the Order to Show Cause and temporary restraining order.

44.    The foregoing demonstrates that the Court issued the temporary restraining order despite a lack of due process.

45.     Consequently, the Trustee respectfully submits that this Court should dissolve the temporary restraining order and deny the relief requested by the Plaintiffs' Application.

**B.**     ***Trustee Has Superior Rights in the Richard Yandoli Assets***

46.     Pursuant to Section 544(a)(1) and (a)(2) of the Bankruptcy Code:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of an creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is avoidable by (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists. . . .

11 U.S.C. §544(a)(2).    In other words, the Trustee has the status as of the Petition Date of a hypothetical lien creditor with an execution against the Debtors that has been returned unsatisfied.    In sum, the Trustee has the rights and powers of a secured creditor of the Debtors as of July 21, 2006—the Petition Date.

47.     Section 348(a) of the Bankruptcy Code states:

> Conversion of a case from a case under one chapter of this title to a case under another chapter of this title, constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the ***date of filing of the petition, the commencement of the case***, or the order for relief.

11 U.S.C. § 348(a) (emphasis supplied).  *See also In re R & J Construction Co., Inc.*, 43 B.R. 29, 31 (Bankr. E.D. Mo. 1984).   Consequently, the fact that the case was converted on October 30, 2007 does not change the fact that the Trustee has the rights and powers of a hypothetical lien creditor as of July 21, 2006.

48.    The Plaintiffs are general unsecured creditors of one or more of the Debtors, whose claims are evidenced by Notes that did not mature until after the Petition Date.[5]

49.    In these Chapter 7 cases, the Trustee is charged with, among other things, the following statutory duties:  (a) to collect and reduce to money the property of the estates for which the Trustee serves, and close such estates as expeditiously as is compatible with the best interests of parties in interest; (b) to be accountable for all property received; (c) to investigate the financial affairs of the Debtors; (d) if a purpose would be served, to examine proofs of claim and object to the allowance of any claim that is improper; (e) unless the Bankruptcy Court orders otherwise, to furnish such information concerning the estates and the estates' administration as is requested by a party in interest; and (f) make a final report and file a final account of the administration of the estate with the court and with the United States Trustee.  11 U.S.C. § 704(a).  In sum, the Trustee acts as a fiduciary for all of the parties in interest involved in the Chapter 7 cases.

50.    When the Bankruptcy Court was considering the proper course of action between converting the cases to Chapter 7 and appointing a chapter 7 trustee or appointing a chapter 11 trustee to oversee the liquidation of the chapter 11 cases pursuant

---

[5] The Plaintiffs' complaint states that the First Note became fully due and payable on November 20, 2006 and that Foods failed to satisfy the First Note by November 20, 2006.  (Complaint ¶¶ 16 and 17).

to a Plan of Liquidation, Plaintiffs' counsel vehemently advocated in support of conversion and the appointment of a chapter 7 trustee. At the October 30, 2007 hearing, Plaintiffs' counsel argued as follows:

> MR. FLINT: . . . The real issue before the court today is this case has to start moving forward to its ultimate conclusion which is the investigation of the recovery actions, the collection of the funds and the distribution to creditors. And the best way to get there, what's in the best interest to [sic] creditors is the conversion to a Chapter 7.

(Tr. 10/30/07 Hrg., at 60). See excerpt of transcript annexed hereto as Exhibit 9. Consequently, it is evident that the Plaintiffs believed—and convinced most of the other creditors—that the primary function of any chapter 7 trustee that would be appointed would be to investigate the financial affairs of the Debtors, recover any unauthorized transfers for the benefit of the Chapter 7 estates, distribute the property of the estate according to priorities set forth in Section 726 of the Bankruptcy Code and to file a final report and account.

51.     In accordance with his fiduciary duties to **all** of the creditors of the Chapter 7 estates, the Trustee commenced the adversary proceeding against the Yandolis in order to recover for the benefit of the estates the unauthorized transfers of the Debtors' assets to Richard. The Trustee also obtained a consensual temporary restraining order and pre-judgment order of attachment, as evidenced by the January 7, 2008 Restraining Order, as modified on March 8, 2008.

52.     FRCP 64, made applicable in adversary proceedings by Bankruptcy Rule 7064, sets forth the conditions under which a plaintiff may obtain an order of attachment. It provides, in pertinent part:

At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the District Court is held, existing at the time the remedy is sought.... The remedies thus available include arrest, attachment, garnishment, replevin, sequestration and other corresponding or equivalent remedies, however designed and regardless of whether by state procedure the remedy is ancillary to an action or must be obtained by an independent action.

53.    In addition, CPLR § 6201 provides, in part:

An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more Defendants, when:

\* \* \*

3. The Defendants, with the intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts;

54.    In New York, a plaintiff is entitled to an order of attachment under an evidentiary showing that the Defendants have concealed or are about to conceal property in one of the ways enumerated in CPLR §6201(3) and that the Defendants have acted or will act with the intent to defraud his creditors or frustrate the enforcement of a judgment that might be obtained by such plaintiff.  See Paul Bongoni v. Claire Friedlander, 176 A.D.2d 527, 574 N.Y.S.2d 717 (1st Dep't 1991); Societe Generale Alsacienne de Banque, Zurich v. Flemingdon Development Corp., 118 A.D.2d 769, 500 N.Y.S.2d 278 (2d Dep't 1986); Mishkin v. Kenney & Branisel, Inc., 609 F.Supp. 1254 (S.D.N.Y.) aff'd, 779 F.2d

35 (2d Cir. 1985); <u>Al Finer Co. v. Premium Produce Corp.</u>, 1986 U.S. Dist. Lexis 26336 (S.D.N.Y. 1986).

55.    The January 7, 2008 Restraining Order, as modified, and the consensual turnover of the cash and deeds to the Six Waterbury Condos are tantamount to a pre-judgment order of attachment.

56.    A pre-judgment attachment acts as a placemarker, ensuring the Trustee's spot in the priority line until the Trustee can obtain a judgment in the adversary proceeding.  *See In re Robbins*, 310 B.R. 626, 629 (9th Cir. BAP 2004), *citing In re Southern California Plastics, Inc.*, 165 F.3d 1243, 1246 (9th Cir. 1999).

57.    In view of the foregoing, the Trustee has the status of a hypothetical lien creditor (i.e., secured creditor) of the Debtors as of the Petition Date and, as the holder of an attachment lien, has priority over any other creditor who may obtain a pre-judgment attachment against Richard Yandoli's personal assets after January 7, 2008.

58.    Consequently, the Plaintiffs cannot make an "end run" around the Trustee by obtaining the relief requested in the Application so as to receive preferred treatment to the detriment of the other creditors of the Chapter 7 estates.

C.    ***There May be a Distribution to Unsecured Creditors***

59.    The Trustee presently has approximately $4.4 million in his Trustee Escrow Account for distributions to creditors, and he is seeking $5,000,000 in damages in the adversary proceeding he commenced against the Yandolis.

60.    Richard has consented to the liquidation of his personal assets by the Trustee in order to reduce his debts to the Chapter 7 estates and their creditors.

61.    The Plaintiffs have asserted timely claims against Foods as well as each of the affiliated Debtors that operated McDonald's franchises and may be entitled to a distribution if the Trustee recovers sufficient assets to make distributions to the general unsecured creditors of the Chapter 7 estates.

## Relief Requested by Plaintiffs Should be Denied

62.    Based upon all of the above, it is respectfully requested that this Court deny the Plaintiffs' Application in its entirety, as the Trustee was appointed by the Bankruptcy Court to pursue the rights and interests of all of the creditors of the Chapter 7 estates as against Richard Yandoli and has obtained a prior lien of attachment vis-à-vis Richard Yandoli's personal assets which assures that the Trustee's rights are superior to the rights of the Plaintiffs in such personal assets.

**WHEREFORE**, it is respectfully requested that this Court deny the Plaintiffs' Application in its entirety, dissolve the temporary restraining order for lack of due process and grant such other, further and different relief in favor of the Trustee as this Court may deem just, proper and equitable.

Dated: East Meadow, New York
     March 19, 2008

                      **CERTILMAN BALIN ADLER & HYMAN, LLP**
                      Attorneys for Richard J. McCord, Esq., Trustee of the
                      Chapter 7 Estates of Yandoli Foods, Inc., et al.

                By

                      **JASPREET S. MAYALL, ESQ. (JSM 0615)**
                      90 Merrick Avenue
                      East Meadow, NY 11554
                      (516) 296-7000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:

GOLDEN MANAGERS ACCEPTANCE
CORP., and GOLDEN IMPROVEMENTS
CORPORATION,

                          Plaintiffs,

               -against-

RICHARD YANDOLI,
                    Defendant.
----------------------------------------------------------X

Chapter 7

Case No.:  08-CV 2007

AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                       ) ss.:
COUNTY OF NASSAU    )

## AFFIDAVIT OF SERVICE

Christine Follett, being duly sworn, says; I am not a party to the action, am over 18 years of age and reside in Glen Cove, New York.

On March 19, 2008, service of the **Affirmation in Opposition to the Application of Plaintiffs Golden Managers Acceptance Corp. and Golden Improvements Corporation for (A) Pre-Judgment Order of Attachment Pursuant to Rule 64 of the Federal Rules of Civil Procedure and CPLR §6201(3) and (B) An Order Granting A Preliminary Injunction Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure** upon:

Edward M. Flint, Esq.
Silverman Perlstein & Acampora, LLP.
Attorneys for Plaintiffs
100 Jericho Quadrangle, Ste. 300
Jericho, New York 11753
emf@SPALLP.com

Locke, Liddell & Sapp, PLLC
Attorneys for Plaintiffs
Thomas Grace
600 Travis, Suite 2600
Houston, Texas 77022

Harvey J. Cavayero, Esq.
Attorney for Defendant
57 Old Country Road
2nd Floor
Westbury, New York 11590
hcavayero@aol.com

1977619-1

by depositing a true copy thereof, enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to each of the above-named parties at the last known address set forth after each name and via electronic mail.

**Christine Follett**

Sworn to before me this
19th day of March, 2008

Notary Public

KAMINI FOX
Notary Public, State of New York
No. 02FO6093482
Qualified in Nassau County
Commission Expires October 15, 20___

1977619-1

FORM B10 (Official Form 10) (10/05)

| United States Bankruptcy Court **Eastern** District of **New York** | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>Yandoli Foods, Inc. | Case Number<br>06-42541 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>JP Morgan Chase, as Master Servicer and Administrator<br><br>Name and address where notices should be sent:<br>Thomas H. Grace<br>Locke Liddell & Sapp, LLP<br>600 Travis St. Ste 3400, Houston, Texas 77002<br>Telephone number: 713-226-1377 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☑ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|---|

| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends a previously filed claim, dated:_____ |
|---|---|

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☑ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☑ Other   See attached Exhibit A

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of your SS #: _____
  Unpaid compensation for services performed
  from _____ to_____
     (date)                       (date)

| **2. Date debt was incurred:**<br>06/2004 to 03/2006 | **3.** If court judgment, date obtained: |
|---|---|

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

Unsecured Nonpriority Claim s **See attached Ex.A**

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim**

☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority $_____

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim**

☐ Check this box if your claim is secured by collateral (including a right of setoff). **See attached Ex. A**

Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle   ☑ Other Equipment

Value of Collateral: $ unknown

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

| **5. Total Amount of Claim at Time Case Filed:** | $ See attached    Exhibit A<br>(unsecured)        (secured)        (priority)        (Total) |
|---|---|

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

CLAIM # 10

11|8|06

| Date<br>10/24/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Thomas H. Grace, Attorney for JP Morgan Chase as Master Servicer and Administrator |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit A

Between the dates of June 22, 2004 and March 14, 2006 Yandoli Foods, Inc. executed nine promissory notes pursuant to which Golden Managers Acceptance Corporation or Golden Improvements Corporation loaned Yandoli Foods, Inc. the following amounts on the dates indicated:

| | |
|---|---|
| June 22, 2004 | $    95,986.78 |
| June 22, 2004 | $ 265,737.63 |
| June 24, 2004 | $ 400,000.00 |
| October 29,2004 | $    93,086.88 |
| November 2, 2004 | $  150,000.00 |
| November 25,2004 | $  376,693.04 |
| November 30,2004 | $  731,546.96 |
| November 30,2004 | $  279,248.05 |
| March 14,2006 | $1,000,000.00 |

There remains principal and interest due and owing on each of the nine promissory notes. JP Morgan Chase acts as Master Servicer and Administrator for these loans.

Yandoli Foods, Inc. represented that it owned and operated certain McDonald's restaurants and that it had authority to grant a security interest in (a) the equipment, furnishings, fixtures and other personal property used now or in the future in the operations of the restaurants or (b) the site improvements at the various restaurants to serve as security for the above referenced loans. Upon information and belief: (1) Yandoli Foods, Inc. does not own and operate the McDonald's restaurants; (2) in fact, the restaurants are owned and operated by separate affiliated corporations of Yandoli Foods, Inc. (all of which are owned by Richard Yandoli); and (3) the affiliated corporations were the actual recipients of the proceeds of the above referenced loans. As of July 21, 2006 there remains a total of $ 17,130.97 in principal and $ 2,831,995.78 in accrued unpaid interest due on the nine loans. Accordingly, the debtor owes JP Morgan Chase, as Master Servicer and Administrator the sum of $ 2,849,126.75 .

The creditor understands that the Debtor has a complete copy of all the loan documents evidencing the above claim. Rather than file multiple and voluminous copies of those documents, any party in interest may request a copy by contacting:

Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400
Houston, TX 77002
(713) 226-1377

FORM B10 (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT **Eastern**    DISTRICT OF **New York** | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>Yandoli Foods, Inc. | Case Number<br>06-42541 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>Golden Improvement Corporation | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | RECEIVED<br>2006 NOV -6 A 11: | U.S. BANKRUPTCY COURT<br>EASTERN DISTRICT OF<br>NEW YORK |
|---|---|---|---|

| Name and address where notices should be sent:<br>Thomas H. Grace<br>Locke Liddell & Sapp, LLP<br>600 Travis St., Ste. 3400, Houston, Texas 77002<br>Telephone number: 713-226-1377 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☑ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|---|

| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends  a previously filed claim, dated:_____ |
|---|---|

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☑ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☑ Other  See attached Exhibit A

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of your SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
        (date)           (date)

**2. Date debt was incurred:** 11/30/2004

**3. If court judgment, date obtained:**

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

**Unsecured Nonpriority Claim** $ See attached Ex. A

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim**

☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority $_____

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim**

☐ Check this box if your claim is secured by collateral (including a right of setoff). **See attached Ex. A**

Brief Description of Collateral:
☐ Real Estate  ☐ Motor Vehicle  ☑ Other Equipment

Value of Collateral: $ unknown

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(_____).

*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5. Total Amount of Claim at Time Case Filed:**
    $ See attached    Exhibit A
    (unsecured)    (secured)    (priority)    (Total)

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

FIM #1
EuA
11/8/06

| Date<br>10/17/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Thomas H. Grace, Attorney for Golden Improvement Corporation<br><br>_[signature]_ |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit A

On or about November 30, 2004, Yanodli Foods, Inc. executed two promissory notes pursuant to which Golden Improvements Corporation loaned Yandoli Foods, Inc. the sums of $731,549.96 and $279,248.05 respectively. JP Morgan Chase acts as Master Servicer and Administrator for these loans.

Yandoli Foods, Inc. represented that it owned and operated certain McDonald's restaurants and that it had the authority to grant a security interest in certain improvements at the restaurant locations to serve as security for the above loans. Upon information and belief: (1) Yandoli Foods, Inc. does not own and operate the McDonald's restaurants; (2) in fact, the restaurants are owned and operated by separate affiliated corporations (all of which are owned by Richard Yandoli of Yandoli Foods, Inc.); and (3) the affiliated corporations were the actual recipients of the proceeds of the above referenced loans, As of July 21, 2006 there remains $965,874.40 in principal and $6,118.37 in accrued, unpaid interest due on said loans. Accordingly the Debtor owes Golden Improvements Corporation the sum of $971,992.77.

The creditor understands that the Debtor has a complete copy of all the loan documents evidencing the above claim. Rather than file multiple and voluminous copies of those documents, any party in interest may request a copy by contacting:

Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400
Houston, TX 77002
(713) 226-1377

HOUSTON: 040157.00486: 1119328v1

FORM B10 (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT **Eastern** DISTRICT OF **New York** | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>Yandoli Foods, Inc. | Case Number<br>06-42541 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>Golden Managers Acceptance Corporation<br><br>Name and address where notices should be sent:<br>Thomas H. Grace<br>Locke Liddell & Sapp, LLP<br>600 Travis St., Ste. 3400, Houston, Texas 77002<br><br>Telephone number: 713-226-1377 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☑ Check box if the address differs from the address on the envelope sent to you by the court. | RECEIVED<br>2006 NOV -6 A 11:<br>U.S. BANKRUPTCY COURT EASTERN DISTRICT NEW YORK<br>THIS SPACE IS FOR COURT USE |
|---|---|---|

| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends a previously filed claim, dated:_____ |
|---|---|

| **1. Basis for Claim**<br>☐ Goods sold<br>☐ Services performed<br>☑ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☑ Other _See attached Exhibit A_____ | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br>Last four digits of your SS #: _____<br>Unpaid compensation for services performed<br>from _____ to_____<br>(date) (date) |
|---|---|

| **2. Date debt was incurred:**<br>06/22/2004 to 03/14/2006 | **3. If court judgment, date obtained:** |
|---|---|

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

| Unsecured Nonpriority Claim $ **See attached Ex A**<br><br>☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.<br><br>**Unsecured Priority Claim**<br><br>☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.<br><br>Amount entitled to priority $_____<br><br>Specify the priority of the claim:<br><br>☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).<br><br>☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).<br><br>☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5). | **Secured Claim**<br><br>☐ Check this box if your claim is secured by collateral (including a right of setoff). **See attached Ex. A**<br><br>Brief Description of Collateral:<br>☐ Real Estate ☐ Motor Vehicle ☑ Other _Equipment_<br><br>Value of Collateral: $_unknown_____<br><br>Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____<br><br>☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).<br><br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br><br>☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).<br><br>*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |
|---|---|

| **5. Total Amount of Claim at Time Case Filed:** | $ See attached Exhibit A<br>(unsecured) (secured) (priority) (Total) |
|---|---|

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

| **6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.<br><br>**7. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.<br><br>**8. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | THIS SPACE IS FOR COURT USE ONLY<br><br>**CLAIM #12**<br>Ex A<br>11/8/06 |
|---|---|

| Date<br>10/4/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Thomas H. Grace, Attorney for Golden Managers Acceptance Corporation | |
|---|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit A

Between the dates of June 22, 2004 and March 14, 2006 Yandoli Foods, Inc. executed seven promissory notes pursuant to which Golden Managers Acceptance Corporation loaned Yandoli Foods, Inc. the following amounts on the dates indicated:

| | |
|---|---|
| June 22, 2004 | $     95,986.78 |
| June 22, 2004 | $   265,737.63 |
| June 24, 2004 | $   400,000.00 |
| October 29,2004 | $     93,086.88 |
| November 2,2004 | $   150,000.00 |
| November 25,2004 | $   376,693.04 |
| March 14,2006 | $1,000,000.00 |

There remains principal and interest due and owing on each of the seven promissory notes. JP Morgan Chase acts as Master Services and Administrator for these loans.

Yandoli Foods, Inc. represented that it owned and operated certain McDonald's restaurants and that it had authority to grant a security interest in the equipment, furnishings, fixtures and other personal property used now or in the future in the operations of the restaurants to serve as security for the above referenced loans. Upon information and belief: (1) Yandoli Foods, Inc. does not own and operate the McDonalds restaurant; (2) in fact, the restaurants are owned and operated by separate affiliated corporations of Yandoli Foods, Inc. (all of which are owned by Richard Yandoli); and (3) the affiliated corporations were the actual recipients of the proceeds of the above referenced loans. As of July 21, 2006 there remains a total of $1,866,121.38 in principal and $ 11,012.60 in accrued unpaid interest due on the seven loans. Accordingly the Debtor owes Golden Managers Acceptance Corporation $ 1,877,133.98.

The creditor understands that the Debtor has a complete copy of all the loan documents evidencing the above claim. Rather than file multiple and voluminous copies of those documents, any party in interest may request a copy by contacting:

Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400
Houston, TX 77002
(713) 226-1377

FORM B10 (Official Form 10) (10/05)

| United States Bankruptcy Court __Eastern__ District of __New York__ | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>Thurm-Lee Foods, Inc. | Case Number<br>06-42559 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>Golden Managers Acceptance Corporation | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|

Name and address where notices should be sent:
Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400, Houston, Texas 77002
Telephone number: 713-226-3717

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☑ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Last four digits of account or other number by which creditor identifies debtor:

Check here ☐ replaces
if this claim ☐ amends    a previously filed claim, dated: _____

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☑ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☑ Other __See attached Ex. A__

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of your SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
  (date)          (date)

**2. Date debt was incurred:**
06/22/2004 to 03/14/2006

**3. If court judgment, date obtained:**

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

**Unsecured Nonpriority Claim** $ __See attached Ex A__
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Secured Claim**
☐ Check this box if your claim is secured by collateral (including a right of setoff). __See attached Ex. A__

Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle   ☑ Other __Equipment__

Value of Collateral:   $ __unknown__

**Unsecured Priority Claim**
☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority   $ _____

Specify the priority of the claim:
- ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)
- ☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

Amount of arrearage and other charges at time case filed included in secured claim, if any:   $ _____

- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5. Total Amount of Claim at Time Case Filed:**

| $ See attached | Ex. A | | |
|---|---|---|---|
| (unsecured) | (secured) | (priority) | (Total) |

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date<br>10/14/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Thomas H. Grace, Attorney for Golden Managers Acceptance Corporation |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit A

Between the dates of June 22, 2004 and March 14, 2006 Yandoli Foods, Inc. executed seven promissory notes pursuant to which Golden Managers Acceptance Corporation loaned Yandoli Foods, Inc. the following amounts on the dates indicated:

| | |
|---|---|
| June 22, 2004 | $    95,986.78 |
| June 22, 2004 | $  265,737.63 |
| June 24, 2004 | $  400,000.00 |
| October 29,2004 | $    93,086.88 |
| November 2, 2004 | $  150,000.00 |
| November 25,2004 | $  376,693.04 |
| March 14,2006 | $1,000,000.00 |

There remains principal and interest due and owing on each of the seven promissory notes. JP Morgan Chase acts as Master Services and Administrator for these loans.

Yandoli Foods, Inc. represented that it owned and operated certain McDonald's restaurants and that it had authority to grant a security interest in the equipment, furnishings, fixtures and other personal property used now or in the future in the operations of the restaurants to serve as security for the above referenced loans. Upon information and belief: (1) Yandoli Foods, Inc. does not own and operate the McDonalds restaurant; (2) in fact, the restaurants are owned and operated by separate affiliated corporations of Yandoli Foods, Inc. (all of which are owned by Richard Yandoli); and (3) the affiliated corporations were the actual recipients of the proceeds of the above referenced loans. As of July 21, 2006 there remains a total of $1,866,121.38 in principal and $ 11,012.60 in accrued unpaid interest due on the seven loans.

The Debtor, as a recipient of part or all of the above referenced loan proceeds, has been unjustly enriched by the acts of Yandoli Foods, Inc. at the expense of Golden Managers Acceptance Corporation and therefore owes an amount up to the sum of $1,877,133.98 to Golden Managers Acceptance Corporation.

The creditor understands that the Debtor has a complete copy of all the loan documents evidencing the above claim. Rather than file multiple and voluminous copies of those documents, any party in interest may request a copy by contacting:

Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400
Houston, TX 77002
(713) 226-1377

FORM B10 (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT Eastern   DISTRICT OF New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>Thurm-Lee Foods, Inc. | Case Number<br>06-42559 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>JP Morgan Chase, as Master Servicer and Administrator<br><br>Name and address where notices should be sent:<br>Thomas H. Grace<br>Locke Liddell & Sapp, LLP<br>600 Travis St., Ste. 3400, Houston, Texas 77002<br>Telephone number: 713-226-1377 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☑ Check box if the address differs from the address on the envelope sent to you by the court. | RECEIVED<br>2006 NOV -6  A 11: 1<br>U. S. BANKRUPTCY COURT EASTERN DISTRICT OF NEW YORK<br>CLERK<br>THIS SPACE IS FOR COURT USE ONLY |
|---|---|---|

| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends  a previously filed claim, dated:_____ |
|---|---|

| 1.  **Basis for Claim**<br>☐ Goods sold<br>☐ Services performed<br>☑ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☑ Other  See attached Ex. A | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br>Last four digits of your SS #: _____<br>Unpaid compensation for services performed<br><br>from _____ to _____<br>     (date)            (date) |
|---|---|

| 2.  Date debt was incurred:<br>06/2004 to 03/2006 | 3.  If court judgment, date obtained: |
|---|---|

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

| **Unsecured Nonpriority Claim** $See attached Ex A<br><br>☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority. | **Secured Claim**<br>☐ Check this box if your claim is secured by collateral (including a right of setoff). See attached Ex. A<br><br>Brief Description of Collateral:<br>☐ Real Estate  ☐ Motor Vehicle  ☑ Other Equipment<br>Value of Collateral: $ unknown |
|---|---|
| **Unsecured Priority Claim**<br>☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.<br>Amount entitled to priority  $_____<br>Specify the priority of the claim:<br>☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).<br>☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).<br>☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5). | Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____<br><br>☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).<br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br>☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).<br>*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

| 5.  Total Amount of Claim at Time Case Filed: | $ See attached   Ex. A<br>(unsecured)      (secured)     (priority)     (Total) |
|---|---|

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

| 6.  **Credits:**  The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.<br><br>7.  **Supporting Documents:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. **DO NOT SEND ORIGINAL DOCUMENTS.** If the documents are not available, explain. If the documents are voluminous, attach a summary.<br><br>8.  **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|

| Date<br>10/5/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Thomas H. Grace, Attorney for JP Morgan Chase, as Master Servicer and Administrator |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit A

Between the dates of June 22, 2004 and March 14, 2006 Yandoli Foods, Inc. executed nine promissory notes pursuant to which Golden Managers Acceptance Corporation or Golden Improvements Corporation loaned Yandoli Foods, Inc. the following amounts on the dates indicated:

| | |
|---|---|
| June 22, 2004 | $    95,986.78 |
| June 22, 2004 | $  265,737.63 |
| June 24, 2004 | $  400,000.00 |
| October 29,2004 | $    93,086.88 |
| November 2, 2004 | $  150,000.00 |
| November 25,2004 | $  376,693.04 |
| November 30,2004 | $  731,546.96 |
| November 30,2004 | $  279,248.05 |
| March 14,2006 | $1,000,000.00 |

There remains principal and interest due and owing on each of the nine promissory notes. JP Morgan Chase acts as Master Servicer and Administrator for these loans.

Yandoli Foods, Inc. represented that it owned and operated certain McDonald's restaurants and that it had authority to grant a security interest in (a) the equipment, furnishings, fixtures and other personal property used now or in the future in the operations of the restaurants or (b) the site improvements at the various restaurants to serve as security for the above referenced loans. Upon information and belief: (1) Yandoli Foods, Inc. does not own and operate the McDonalds restaurants; (2) in fact, the restaurants are owned and operated by separate affiliated corporations of Yandoli Foods, Inc. (all of which are owned by Richard Yandoli); and (3) the affiliated corporations were the actual recipients of the proceeds of the above referenced loans. As of July 21, 2006 there remains a total of $ 2,831,995.78 in principal and $ 17,130.97 in accrued unpaid interest due on the nine loans.

The Debtor, as a recipient of part or all of the above referenced loan proceeds, has been unjustly enriched by the acts of Yandoli Foods, Inc. at the expense of JP Morgan Chase as Master Servicer and Administrator of the loans and therefore owes an amount up to the sum of $ 2,849,126.75 to JP Morgan Chase as Master Servicer and Administrator.

The creditor understands that the Debtor has a complete copy of all the loan documents evidencing the above claim. Rather than file multiple and voluminous copies of those documents, any party in interest may request a copy by contacting:

Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400
Houston, TX 77002
(713) 226-1377

**FORM B10** (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT **Eastern** | DISTRICT OF **New York** | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>Thurm-Lee Foods, Inc. | Case Number<br>06-42559 | |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>Golden Improvement Corporation<br><br>Name and address where notices should be sent:<br>Thomas H. Grace<br>Locke Liddell & Sapp, LLP<br>600 Travis St., Ste. 3400, Houston, Texas 77002<br><br>Telephone number: 713-226-1377 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☑ Check box if the address differs from the address on the envelope sent to you by the court. | RECEIVED<br>2006 NOV -6 A II: ??<br>U.S. BANKRUPTCY COURT<br>EASTERN DISTRICT<br>NEW YORK<br>CLERK<br><br>THIS SPACE IS FOR COURT USE ONLY |
|---|---|---|

| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends   a previously filed claim, dated: _____ | 33 |
|---|---|---|

| 1. **Basis for Claim**<br>☐ Goods sold<br>☐ Services performed<br>☑ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☑ Other _See attached Ex. A_ | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br>Last four digits of your SS #: _____<br>Unpaid compensation for services performed<br>from _____ to _____<br>(date)          (date) |
|---|---|

| 2. **Date debt was incurred:**<br>11/30/2004 | 3. **If court judgment, date obtained:** |
|---|---|

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

| Unsecured Nonpriority Claim $**See attached** Ex A<br><br>☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.<br><br>**Unsecured Priority Claim**<br><br>☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.<br><br>Amount entitled to priority $_____<br><br>Specify the priority of the claim:<br>☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)<br>☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).<br>☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5). | **Secured Claim**<br><br>☐ Check this box if your claim is secured by collateral (including a right of setoff). **See attached Ex. A**<br><br>Brief Description of Collateral:<br>☐ Real Estate  ☐ Motor Vehicle  ☑ Other Equipment<br>Value of Collateral: $ unknown<br><br>Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____<br><br>☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).<br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br>☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).<br>*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |
|---|---|

| 5. **Total Amount of Claim at Time Case Filed:** | $ See attached    Ex. A<br>(unsecured)    (secured)    (priority)    (Total)<br>☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges. | |
|---|---|---|

| 6. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.<br>7. **Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.<br>8. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | THIS SPACE IS FOR COURT USE ONLY<br><br>10 |
|---|---|

| Date<br>10/14/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Thomas H. Grace, Attorney for Golden Improvement Corporation | |
|---|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

Exhibit A

On or about November 30, 2004, Yanodli Foods, Inc. executed two promissory notes pursuant to which Golden Improvements Corporation loaned Yandoli Foods, Inc. the sums of $731,549.96 and $279,248.05 respectively. JP Morgan Chase acts as Master Servicer and Administrator for these loans.

Yandoli Foods, Inc. represented that it owned and operated certain McDonald's restaurants and that it had the authority to grant a security interest in certain improvements at the restaurant locations to serve as security for the above loans. Upon information and belief: (1) Yandoli Foods, Inc. does not own and operate the McDonald's restaurants; (2) in fact, the restaurants are owned and operated by separate affiliated corporations (all of which are owned by Richard Yandoli of Yandoli Foods, Inc.); and (3) the affiliated corporations were the actual recipients of the proceeds of the above referenced loans, As of July 21, 2006 there remains $ 965,874.40 in principal and $ 6,118.37 in accrued, unpaid interest due on said loans.

The Debtor, as a recipient of part or all of the above referenced loan proceeds has been unjustly enriched by the acts of Yandoli Foods, Inc. at the expense of Golden Improvement Corporation and therefore owes an amount up to the sum of $ 971,992.77 to Golden Improvement Corporation.

The creditor understands that the Debtor has a complete copy of all the loan documents evidencing the above claim. Rather than file multiple and voluminous copies of those documents, any party in interest may request a copy by contacting:

Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400
Houston, TX 77002
(713) 226-1377

FORM B10 (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT  Eastern     DISTRICT OF  New York | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>Flatlands Avenue Foods, Inc. | Case Number<br>06-42551 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

RECEIVED  2006 NOV -6  A 11: 20  CLERK BANKRUPTCY COURT EASTERN DISTRICT OF NEW YORK

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>Golden Managers Acceptance Corporation | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|

Name and address where notices should be sent:
Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St. Ste. 3400, Houston, Texas 77002

Telephone number  713-226-3717

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☑ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends  a previously filed claim, dated: _____ |
|---|---|

**1.  Basis for Claim**
☐ Goods sold
☐ Services performed
☑ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☑ Other   See attached Ex. A

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last four digits of your SS #: _____
Unpaid compensation for services performed
from _____ to _____
(date)                      (date)

**2.  Date debt was incurred:**
06/22/2004 to 03/14/2006

**3.  If court judgment, date obtained:**

**4.  Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

**Unsecured Nonpriority Claim** $See attached Ex A
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim**
☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority  $_____

Specify the priority of the claim:
☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)
☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim**
☐ Check this box if your claim is secured by collateral (including a right of setoff). See attached Ex. A

Brief Description of Collateral:
☐ Real Estate  ☐ Motor Vehicle  ☑ Other  Equipment

Value of Collateral:  $ unknown

Amount of arrearage and other charges at time case filed included in secured claim, if any:  $ _____

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5.  Total Amount of Claim at Time Case Filed:**
$ See attached  Ex. A
(unsecured)    (secured)    (priority)    (Total)
☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6.  Credits:**  The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**7.  Supporting Documents:**  Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8.  Date-Stamped Copy:**  To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

CLAIM #10  EUA  11/8/06

| Date<br>10/04/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Thomas H. Grace, Attorney for Golden Managers Acceptance Corporation |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit A

Between the dates of June 22, 2004 and March 14, 2006 Yandoli Foods, Inc. executed seven promissory notes pursuant to which Golden Managers Acceptance Corporation loaned Yandoli Foods, Inc. the following amounts on the dates indicated:

| | |
|---|---|
| June 22, 2004 | $    95,986.78 |
| June 22, 2004 | $  265,737.63 |
| June 24, 2004 | $  400,000.00 |
| October 29,2004 | $    93,086.88 |
| November 2, 2004 | $  150,000.00 |
| November 25,2004 | $  376,693.04 |
| March 14,2006 | $1,000,000.00 |

There remains principal and interest due and owing on each of the seven promissory notes. JP Morgan Chase acts as Master Services and Administrator for these loans.

Yandoli Foods, Inc. represented that it owned and operated certain McDonald's restaurants and that it had authority to grant a security interest in the equipment, furnishings, fixtures and other personal property used now or in the future in the operations of the restaurants to serve as security for the above referenced loans. Upon information and belief: (1) Yandoli Foods, Inc. does not own and operate the McDonalds restaurant; (2) in fact, the restaurants are owned and operated by separate affiliated corporations of Yandoli Foods, Inc. (all of which are owned by Richard Yandoli); and (3) the affiliated corporations were the actual recipients of the proceeds of the above referenced loans. As of July 21, 2006 there remains a total of $1,866,121.38 in principal and $ 11,012.60 in accrued unpaid interest due on the seven loans.

The Debtor, as a recipient of part or all of the above referenced loan proceeds, has been unjustly enriched by the acts of Yandoli Foods, Inc. at the expense of Golden Managers Acceptance Corporation and therefore owes an amount up to the sum of $1,877,133.98 to Golden Managers Acceptance Corporation.

The creditor understands that the Debtor has a complete copy of all the loan documents evidencing the above claim. Rather than file multiple and voluminous copies of those documents, any party in interest may request a copy by contacting:

Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400
Houston, TX 77002
(713) 226-1377

**FORM B10** (Official Form 10) (10/05)

| United States Bankruptcy Court **Eastern** | District of **New York** | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>Flatlands Avenue Foods, Inc. | Case Number<br>06-42551 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>JP Morgan Chase, as Master Servicer and Administrator | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | RECEIVED<br>2006 NOV -6 AM<br>THIS SPACE IS FOR COURT USE ONLY<br>U.S. BANKRUPTCY COURT<br>EASTERN DISTRICT OF<br>NEW YORK |
|---|---|---|
| Name and address where notices should be sent:<br>Thomas H. Grace<br>Locke Liddell & Sapp, LLP<br>600 Travis St., Ste. 3400, Houston, Texas 77002<br>Telephone number: 713-226-1377 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☑ Check box if the address differs from the address on the envelope sent to you by the court. | |
| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends a previously filed claim, dated: |

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☑ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☑ Other  See attached Ex. A

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of your SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
  (date)                         (date)

**2. Date debt was incurred:** 06/2004 to 03/2006

**3. If court judgment, date obtained:**

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

**Unsecured Nonpriority Claim** $ **See attached Ex A**
- ☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim**
- ☐ Check this box if you have an unsecured priority claim, all or part of which is entitled to priority.
Amount entitled to priority $_____

Specify the priority of the claim:
- ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)
- ☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim**
- ☐ Check this box if your claim is secured by collateral (including a right of setoff). See attached Ex. A
Brief Description of Collateral:
- ☐ Real Estate  ☐ Motor Vehicle  ☑ Other Equipment
Value of Collateral: $ unknown
Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5. Total Amount of Claim at Time Case Filed:** $ See attached Ex A
|  | (unsecured) | (secured) | (priority) | (Total) |

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date<br>10/14/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any).<br>Thomas H. Grace, Attorney for JP Morgan Chase, as Master Servicer and Administrator |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit A

Between the dates of June 22, 2004 and March 14, 2006 Yandoli Foods, Inc. executed nine promissory notes pursuant to which Golden Managers Acceptance Corporation or Golden Improvements Corporation loaned Yandoli Foods, Inc. the following amounts on the dates indicated:

| June 22, 2004 | $ 95,986.78 |
| June 22, 2004 | $ 265,737.63 |
| June 24, 2004 | $ 400,000.00 |
| October 29,2004 | $ 93,086.88 |
| November 2, 2004 | $ 150,000.00 |
| November 25,2004 | $ 376,693.04 |
| November 30,2004 | $ 731,546.96 |
| November 30,2004 | $ 279,248.05 |
| March 14,2006 | $1,000,000.00 |

There remains principal and interest due and owing on each of the nine promissory notes. JP Morgan Chase acts as Master Servicer and Administrator for these loans.

Yandoli Foods, Inc. represented that it owned and operated certain McDonald's restaurants and that it had authority to grant a security interest in (a) the equipment, furnishings, fixtures and other personal property used now or in the future in the operations of the restaurants or (b) the site improvements at the various restaurants to serve as security for the above referenced loans. Upon information and belief: (1) Yandoli Foods, Inc. does not own and operate the McDonalds restaurants; (2) in fact, the restaurants are owned and operated by separate affiliated corporations of Yandoli Foods, Inc. (all of which are owned by Richard Yandoli); and (3) the affiliated corporations were the actual recipients of the proceeds of the above referenced loans. As of July 21, 2006 there remains a total of $ 2,831,995.78 in principal and $ 17,130.97 in accrued unpaid interest due on the nine loans.

The Debtor, as a recipient of part or all of the above referenced loan proceeds, has been unjustly enriched by the acts of Yandoli Foods, Inc. at the expense of JP Morgan Chase as Master Servicer and Administrator of the loans and therefore owes an amount up to the sum of $ 2,849,126.75 to JP Morgan Chase as Master Servicer and Administrator.

The creditor understands that the Debtor has a complete copy of all the loan documents evidencing the above claim. Rather than file multiple and voluminous copies of those documents, any party in interest may request a copy by contacting:

Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400
Houston, TX 77002
(713) 226-1377

FORM B10 (Official Form 10) (10/05)

| United States Bankruptcy Court **Eastern** District of **New York** | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>Flatlands Avenue Foods, Inc. | Case Number<br>06-42551 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>Golden Improvement Corporation | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | |
|---|---|---|
| Name and address where notices should be sent:<br>Thomas H. Grace<br>Locke Liddell & Sapp, LLP<br>600 Travis St., Ste. 3400, Houston, Texas 77002<br>Telephone number: 713-226-1377 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☑ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY<br><br>RECEIVED<br>2006 NOV - 6 A<br><br>U.S. BANKRUPTCY COURT<br>EASTERN DISTRICT OF<br>NEW YORK |
| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends a previously filed claim, dated: | |

| 1. **Basis for Claim**<br>☐ Goods sold<br>☐ Services performed<br>☑ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☑ Other ___See attached Ex. A___ | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br>Last four digits of your SS #: _____<br>Unpaid compensation for services performed<br>from _____ to_____<br>(date)                    (date) |
|---|---|

| 2. **Date debt was incurred:**<br>11/30/2004 | 3. **If court judgment, date obtained:** |
|---|---|

4. **Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

| **Unsecured Nonpriority Claim** $ **See attached ex A**<br><br>☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.<br><br>**Unsecured Priority Claim**<br>☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.<br><br>Amount entitled to priority $_____<br><br>Specify the priority of the claim:<br>☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)<br>☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).<br>☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5). | **Secured Claim**<br>☐ Check this box if your claim is secured by collateral (including a right of setoff). **See attached Ex. A.**<br><br>Brief Description of Collateral:<br>☐ Real Estate   ☐ Motor Vehicle   ☑ Other Equipment<br><br>Value of Collateral: $ unknown<br><br>Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____<br><br>☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).<br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br>☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).<br>*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |
|---|---|

| 5. **Total Amount of Claim at Time Case Filed:**<br>☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges. | $ __See attached__ ___Ex. A___ _____ _____<br>(unsecured)   (secured)   (priority)   (Total) |
|---|---|

| 6. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.<br><br>7. **Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.<br><br>8. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|

| Date<br>10/14/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Thomas H. Grace, Attorney for Golden Improvement Corporation |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit A

On or about November 30, 2004, Yanodli Foods, Inc. executed two promissory notes pursuant to which Golden Improvements Corporation loaned Yandoli Foods, Inc. the sums of $731,549.96 and $279,248.05 respectively. JP Morgan Chase acts as Master Servicer and Administrator for these loans.

Yandoli Foods, Inc. represented that it owned and operated certain McDonald's restaurants and that it had the authority to grant a security interest in certain improvements at the restaurant locations to serve as security for the above loans. Upon information and belief: (1) Yandoli Foods, Inc. does not own and operate the McDonald's restaurants; (2) in fact, the restaurants are owned and operated by separate affiliated corporations (all of which are owned by Richard Yandoli of Yandoli Foods, Inc.); and (3) the affiliated corporations were the actual recipients of the proceeds of the above referenced loans, As of July 21, 2006 there remains $ 965,874.40 in principal and $ 6,118.37 in accrued, unpaid interest due on said loans.

The Debtor, as a recipient of part or all of the above referenced loan proceeds has been unjustly enriched by the acts of Yandoli Foods, Inc. at the expense of Golden Improvement Corporation and therefore owes an amount up to the sum of $ 971,992.77 to Golden Improvement Corporation.

The creditor understands that the Debtor has a complete copy of all the loan documents evidencing the above claim. Rather than file multiple and voluminous copies of those documents, any party in interest may request a copy by contacting:

> Thomas H. Grace
> Locke Liddell & Sapp, LLP
> 600 Travis St., Ste. 3400
> Houston, TX 77002
> (713) 226-1377

FORM B10 (Official Form 10) (10/05)

| United States Bankruptcy Court **Eastern** District of **New York** | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>Rockaway Parkway Foods, Inc. | Case Number<br>06-42556 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>Golden Managers Acceptance Corporation<br><br>Name and address where notices should be sent:<br>Thomas H. Grace<br>Locke Liddell & Sapp, LLP<br>600 Travis St., Ste. 3400, Houston, Texas 77002<br><br>Telephone number: 713-226-3717 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☑ Check box if the address differs from the address on the envelope sent to you by the court. | RECEIVED<br>US BANKRUPTCY COURT<br>EASTERN DISTRICT OF<br>NEW YORK<br>2006 NOV -1<br>THIS SPACE IS FOR COURT USE ONLY |
|---|---|---|

| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends    a previously filed claim, dated: |
|---|---|

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☑ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☑ Other    See attached Ex. A

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last four digits of your SS #: _____
Unpaid compensation for services performed
from _____ to _____
    (date)                (date)

**2. Date debt was incurred:**
06/22/2004 to 03/14/2006

**3.  If court judgment, date obtained:**

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

Unsecured Nonpriority Claim $ **See attached Ex A**

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim**

☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority $_____

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim**

☐ Check this box if your claim is secured by collateral (including a right of setoff). **See attached Ex. A**

Brief Description of Collateral:
☐ Real Estate    ☐ Motor Vehicle    ☑ Other  Equipment

Value of Collateral: $ unknown

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5.    Total Amount of Claim at Time Case Filed:**

$ See attached    Ex. A _____  _____  _____
        (unsecured)      (secured)      (priority)      (Total)

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:**  The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7.  Supporting Documents:**  *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. **DO NOT SEND ORIGINAL DOCUMENTS.** If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8.  Date-Stamped Copy:**  To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date<br>10/14/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Thomas H. Grace, Attorney for Golden Managers Acceptance Corporation | |
|---|---|---|

*Penalty for presenting fraudulent claim.* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit A

Between the dates of June 22, 2004 and March 14, 2006 Yandoli Foods, Inc. executed seven promissory notes pursuant to which Golden Managers Acceptance Corporation loaned Yandoli Foods, Inc. the following amounts on the dates indicated:

| | |
|---|---|
| June 22, 2004 | $ 95,986.78 |
| June 22, 2004 | $ 265,737.63 |
| June 24, 2004 | $ 400,000.00 |
| October 29,2004 | $ 93,086.88 |
| November 2, 2004 | $ 150,000.00 |
| November 25,2004 | $ 376,693.04 |
| March 14,2006 | $1,000,000.00 |

There remains principal and interest due and owing on each of the seven promissory notes. JP Morgan Chase acts as Master Services and Administrator for these loans.

Yandoli Foods, Inc. represented that it owned and operated certain McDonald's restaurants and that it had authority to grant a security interest in the equipment, furnishings, fixtures and other personal property used now or in the future in the operations of the restaurants to serve as security for the above referenced loans. Upon information and belief: (1) Yandoli Foods, Inc. does not own and operate the McDonalds restaurant; (2) in fact, the restaurants are owned and operated by separate affiliated corporations of Yandoli Foods, Inc. (all of which are owned by Richard Yandoli); and (3) the affiliated corporations were the actual recipients of the proceeds of the above referenced loans. As of July 21, 2006 there remains a total of $1,866,121.38 in principal and $ 11,012.60 in accrued unpaid interest due on the seven loans.

The Debtor, as a recipient of part or all of the above referenced loan proceeds, has been unjustly enriched by the acts of Yandoli Foods, Inc. at the expense of Golden Managers Acceptance Corporation and therefore owes an amount up to the sum of $1,877,133.98 to Golden Managers Acceptance Corporation.

The creditor understands that the Debtor has a complete copy of all the loan documents evidencing the above claim. Rather than file multiple and voluminous copies of those documents, any party in interest may request a copy by contacting:

Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400
Houston, TX 77002
(713) 226-1377

FORM B10 (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT **Eastern** DISTRICT OF **New York** | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>Rockaway Parkway Foods, Inc. | Case Number<br>06-42556 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| | |
|---|---|
| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>JP Morgan Chase, as Master Servicer and Administrator | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☑ Check box if the address differs from the address on the envelope sent to you by the court. |
| Name and address where notices should be sent:<br>Thomas H. Grace<br>Locke Liddell & Sapp, LLP<br>600 Travis St., Ste. 3400, Houston, Texas 77002<br><br>Telephone number: 713-226-1377 | |

RECEIVED 2006 NOV -6 A 11: 09 U.S. BANKRUPTCY COURT EASTERN DISTRICT OF NEW YORK

THIS SPACE IS FOR COURT USE ONLY

| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends   a previously filed claim, dated:_____ |
|---|---|

| **1.  Basis for Claim** | |
|---|---|
| ☐ Goods sold<br>☐ Services performed<br>☑ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☑ Other _See attached Ex. A_ | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br>Last four digits of your SS #: _____<br>Unpaid compensation for services performed<br>from _____ to_____<br>        (date)                    (date) |

| **2.  Date debt was incurred:**<br>06/2004 to 03/2006 | **3.  If court judgment, date obtained:** |
|---|---|

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

| Unsecured Nonpriority Claim $ _See attached Ex A_ | Secured Claim |
|---|---|
| ☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority. | ☐ Check this box if your claim is secured by collateral (including a right of setoff). **See attached Ex. A**<br>Brief Description of Collateral:<br>☐ Real Estate  ☐ Motor Vehicle  ☑ Other _Equipment_<br>Value of Collateral: $ _unknown_ |
| **Unsecured Priority Claim**<br>☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.<br>Amount entitled to priority  $_____<br>Specify the priority of the claim:<br>☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)<br>☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).<br>☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5). | Amount of arrearage and other charges _at time case filed_ included in secured claim, if any: $_____<br><br>☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).<br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br>☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).<br>*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| **5.  Total Amount of Claim at Time Case Filed:** | $ See attached     Ex. A<br>(unsecured)     (secured)     (priority)     (Total) |
|---|---|
| ☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges. | |

| **6.  Credits:**  The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| **7.  Supporting Documents:**  _Attach copies of supporting documents,_ such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.<br>**8.  Date-Stamped Copy:**  To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | 10 |

| Date<br>11/1/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Thomas H. Grace, Attorney for JP Morgan Chase, as Master Servicer and Administrator |
|---|---|

_Penalty for presenting fraudulent claim:_ Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit A

Between the dates of June 22, 2004 and March 14, 2006 Yandoli Foods, Inc. executed nine promissory notes pursuant to which Golden Managers Acceptance Corporation or Golden Improvements Corporation loaned Yandoli Foods, Inc. the following amounts on the dates indicated:

| | |
|---|---|
| June 22, 2004 | $    95,986.78 |
| June 22, 2004 | $  265,737.63 |
| June 24, 2004 | $  400,000.00 |
| October 29,2004 | $    93,086.88 |
| November 2, 2004 | $  150,000.00 |
| November 25,2004 | $  376,693.04 |
| November 30,2004 | $  731,546.96 |
| November 30,2004 | $  279,248.05 |
| March 14,2006 | $1,000,000.00 |

There remains principal and interest due and owing on each of the nine promissory notes. JP Morgan Chase acts as Master Servicer and Administrator for these loans.

Yandoli Foods, Inc. represented that it owned and operated certain McDonald's restaurants and that it had authority to grant a security interest in (a) the equipment, furnishings, fixtures and other personal property used now or in the future in the operations of the restaurants or (b) the site improvements at the various restaurants to serve as security for the above referenced loans. Upon information and belief: (1) Yandoli Foods, Inc. does not own and operate the McDonalds restaurants; (2) in fact, the restaurants are owned and operated by separate affiliated corporations of Yandoli Foods, Inc. (all of which are owned by Richard Yandoli); and (3) the affiliated corporations were the actual recipients of the proceeds of the above referenced loans. As of July 21, 2006 there remains a total of $ 2,831,995.78 in principal and $ 17,130.97 in accrued unpaid interest due on the nine loans.

The Debtor, as a recipient of part or all of the above referenced loan proceeds, has been unjustly enriched by the acts of Yandoli Foods, Inc. at the expense of JP Morgan Chase as Master Servicer and Administrator of the loans and therefore owes an amount up to the sum of $ 2,849,126.75 to JP Morgan Chase as Master Servicer and Administrator.

The creditor understands that the Debtor has a complete copy of all the loan documents evidencing the above claim. Rather than file multiple and voluminous copies of those documents, any party in interest may request a copy by contacting:

Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400
Houston, TX 77002
(713) 226-1377

HOUSTON: 040157.00486: 1119319v1

FORM B10 (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT **Eastern** DISTRICT OF **New York** | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>Rockaway Parkway Foods, Inc. | Case Number<br>06-42556 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>Golden Improvement Corporation | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|
| Name and address where notices should be sent:<br>Thomas H. Grace<br>Locke Liddell & Sapp, LLP<br>600 Travis St., Ste. 3400, Houston, Texas 77002<br>Telephone number: 713-226-1377 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☑ Check box if the address differs from the address on the envelope sent to you by the court. |

Last four digits of account or other number by which creditor identifies debtor:

Check here ☐ replaces ☐ amends a previously filed claim, dated:___

THIS SPACE IS FOR COURT USE ONLY
RECEIVED
2006 NOV 20 ...
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| 1. Basis for Claim | |
|---|---|
| ☐ Goods sold<br>☐ Services performed<br>☑ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☑ Other _See attached Ex. A_ | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br>Last four digits of your SS #: _____<br>Unpaid compensation for services performed<br>from _____ to _____<br>(date) (date) |

| 2. Date debt was incurred:<br>11/30/2004 | 3. If court judgment, date obtained: |
|---|---|

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

Unsecured Nonpriority Claim $ **See attached Ex A**

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim**

☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority $_____

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim**

☐ Check this box if your claim is secured by collateral (including a right of setoff). **See attached Ex. A**

Brief Description of Collateral:

☐ Real Estate  ☐ Motor Vehicle  ☑ Other Equipment

Value of Collateral: $ unknown

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| 5. Total Amount of Claim at Time Case Filed: | $ See attached _____ Ex. A |
|---|---|

(unsecured) (secured) (priority) (Total)

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date<br>10/17/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Thomas H. Grace, Attorney for Golden Improvement Corporation |
|---|---|

*Penalty for presenting fraudulent claim.* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit A

On or about November 30, 2004, Yanodli Foods, Inc. executed two promissory notes pursuant to which Golden Improvements Corporation loaned Yandoli Foods, Inc. the sums of $731,549.96 and $279,248.05 respectively. JP Morgan Chase acts as Master Servicer and Administrator for these loans.

Yandoli Foods, Inc. represented that it owned and operated certain McDonald's restaurants and that it had the authority to grant a security interest in certain improvements at the restaurant locations to serve as security for the above loans. Upon information and belief: (1) Yandoli Foods, Inc. does not own and operate the McDonald's restaurants; (2) in fact, the restaurants are owned and operated by separate affiliated corporations (all of which are owned by Richard Yandoli of Yandoli Foods, Inc.); and (3) the affiliated corporations were the actual recipients of the proceeds of the above referenced loans, As of July 21, 2006 there remains $ 965,874.40 in principal and $ 6,118.37 in accrued, unpaid interest due on said loans.

The Debtor, as a recipient of part or all of the above referenced loan proceeds has been unjustly enriched by the acts of Yandoli Foods, Inc. at the expense of Golden Improvement Corporation and therefore owes an amount up to the sum of $ 971,992.77 to Golden Improvement Corporation.

The creditor understands that the Debtor has a complete copy of all the loan documents evidencing the above claim. Rather than file multiple and voluminous copies of those documents, any party in interest may request a copy by contacting:

Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400
Houston, TX 77002
(713) 226-1377

FORM B10 (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT **Eastern** | DISTRICT OF **New York** | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>Seaview Avenue Foods, Inc. | Case Number<br>06-42558 | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>JP Morgan Chase, as Master Servicer and Administrator<br><br>Name and address where notices should be sent:<br>Thomas H. Grace<br>Locke Liddell & Sapp, LLP<br>600 Travis St. Ste. 3400, Houston, Texas 77002<br>Telephone number: 713-226-1377 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☑ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |

| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends  a previously filed claim, dated: |

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☑ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☑ Other  See attached Ex. A

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of your SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
  (date)        (date)

| **2.** Date debt was incurred:<br>06/2004 to 03/2006 | **3.** If court judgment, date obtained: |

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed.
See reverse side for important explanations.

**Unsecured Nonpriority Claim** $ **See attached  Ex A**
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim**
☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority  $_____

Specify the priority of the claim:
☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)
☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim**
☐ Check this box if your claim is secured by collateral (including a right of setoff). **See attached  Ex. A**

Brief Description of Collateral:
☐ Real Estate  ☐ Motor Vehicle  ☑ Other Equipment
Value of Collateral:  $ unknown

Amount of arrearage and other charges at time case filed included in secured claim, if any:  $_____

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

| **5.** Total Amount of Claim at Time Case Filed: | $ See attached    Ex. A | | | |
|---|---|---|---|---|
| | (unsecured) | (secured) | (priority) | (Total) |

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date<br>1 8/18/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Thomas H. Grace, Attorney for JP Morgan Chase, as Master Servicer and Administrator |

*Penalty for presenting fraudulent claim.* Fine of up to  $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit A

Between the dates of June 22, 2004 and March 14, 2006 Yandoli Foods, Inc. executed nine promissory notes pursuant to which Golden Managers Acceptance Corporation or Golden Improvements Corporation loaned Yandoli Foods, Inc. the following amounts on the dates indicated:

| | |
|---|---|
| June 22, 2004 | $    95,986.78 |
| June 22, 2004 | $  265,737.63 |
| June 24, 2004 | $  400,000.00 |
| October 29,2004 | $    93,086.88 |
| November 2, 2004 | $  150,000.00 |
| November 25,2004 | $  376,693.04 |
| November 30,2004 | $  731,546.96 |
| November 30,2004 | $  279,248.05 |
| March 14,2006 | $1,000,000.00 |

There remains principal and interest due and owing on each of the nine promissory notes. JP Morgan Chase acts as Master Servicer and Administrator for these loans.

Yandoli Foods, Inc. represented that it owned and operated certain McDonald's restaurants and that it had authority to grant a security interest in (a) the equipment, furnishings, fixtures and other personal property used now or in the future in the operations of the restaurants or (b) the site improvements at the various restaurants to serve as security for the above referenced loans. Upon information and belief: (1) Yandoli Foods, Inc. does not own and operate the McDonalds restaurants; (2) in fact, the restaurants are owned and operated by separate affiliated corporations of Yandoli Foods, Inc. (all of which are owned by Richard Yandoli); and (3) the affiliated corporations were the actual recipients of the proceeds of the above referenced loans. As of July 21, 2006 there remains a total of $ 2,831,995.78 in principal and $ 17,130.97 in accrued unpaid interest due on the nine loans.

The Debtor, as a recipient of part or all of the above referenced loan proceeds, has been unjustly enriched by the acts of Yandoli Foods, Inc. at the expense of JP Morgan Chase as Master Servicer and Administrator of the loans and therefore owes an amount up to the sum of $ 2,849,126.75 to JP Morgan Chase as Master Servicer and Administrator.

The creditor understands that the Debtor has a complete copy of all the loan documents evidencing the above claim. Rather than file multiple and voluminous copies of those documents, any party in interest may request a copy by contacting:

Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400
Houston, TX 77002
(713) 226-1377

**FORM B10** (Official Form 10) (10/05)

| United States Bankruptcy Court **Eastern** District of **New York** | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor<br>Seaview Avenue Foods, Inc. | Case Number<br>06-42558 | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| | |
|---|---|
| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>Golden Improvement Corporation | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| Name and address where notices should be sent:<br>Thomas H. Grace<br>Locke Liddell & Sapp, LLP<br>600 Travis St., Ste. 3400, Houston, Texas 77002<br>Telephone number  713-226-1377 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☑ Check box if the address differs from the address on the envelope sent to you by the court. |

RECEIVED 2006 NOV -6 A 11: 1  THIS SPACE IS FOR COURT USE ONLY

| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends  a previously filed claim, dated:_____ |
|---|---|

| | |
|---|---|
| **1.   Basis for Claim**<br>☐ Goods sold<br>☐ Services performed<br>☑ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☑ Other  See attached Ex. A | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br> Last four digits of your SS #: _____<br> Unpaid compensation for services performed<br> from _____ to _____<br>    (date)        (date) |
| **2.   Date debt was incurred:**<br>11/30/2004 | **3.   If court judgment, date obtained:** |

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

| **Unsecured Nonpriority Claim** ₅ **See attached Ex A** | **Secured Claim** |
|---|---|
| ☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority. | ☐ Check this box if your claim is secured by collateral (including a right of setoff). **See attached Ex. A**<br><br>Brief Description of Collateral:<br> ☐ Real Estate  ☐ Motor Vehicle  ☑ Other **Equipment**<br> Value of Collateral:  $ unknown |
| **Unsecured Priority Claim**<br>☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.<br>Amount entitled to priority  $_____ | Amount of arrearage and other charges at time case filed included in secured claim, if any:  $ _____ |
| Specify the priority of the claim: | ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7). |
| ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8). |
| ☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).<br>☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5). | ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).<br>*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

| **5.   Total Amount of Claim at Time Case Filed:** | $ See attached    Ex. A | | | |
|---|---|---|---|---|
| | (unsecured) | (secured) | (priority) | (Total) |

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

| | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| **6.   Credits:**   The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.<br><br>**7.   Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.<br><br>**8.   Date-Stamped Copy:**   To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | 9 |
| Date<br>11-1-06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Thomas H. Grace, Attorney for Golden Improvement Corporation | |

*Penalty for presenting fraudulent claim.* Fine of up to  $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit A

On or about November 30, 2004, Yanodli Foods, Inc. executed two promissory notes pursuant to which Golden Improvements Corporation loaned Yandoli Foods, Inc. the sums of $731,549.96 and $279,248.05 respectively. JP Morgan Chase acts as Master Servicer and Administrator for these loans.

Yandoli Foods, Inc. represented that it owned and operated certain McDonald's restaurants and that it had the authority to grant a security interest in certain improvements at the restaurant locations to serve as security for the above loans. Upon information and belief: (1) Yandoli Foods, Inc. does not own and operate the McDonald's restaurants; (2) in fact, the restaurants are owned and operated by separate affiliated corporations (all of which are owned by Richard Yandoli of Yandoli Foods, Inc.); and (3) the affiliated corporations were the actual recipients of the proceeds of the above referenced loans, As of July 21, 2006 there remains $ 965,874.40 in principal and $ 6,118.37 in accrued, unpaid interest due on said loans.

The Debtor, as a recipient of part or all of the above referenced loan proceeds has been unjustly enriched by the acts of Yandoli Foods, Inc. at the expense of Golden Improvement Corporation and therefore owes an amount up to the sum of $ 971,992.77 to Golden Improvement Corporation.

The creditor understands that the Debtor has a complete copy of all the loan documents evidencing the above claim. Rather than file multiple and voluminous copies of those documents, any party in interest may request a copy by contacting:

Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400
Houston, TX 77002
(713) 226-1377

**FORM B10** (Official Form 10) (10/05)

| United States Bankruptcy Court Eastern | District of New York | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>Seaview Avenue Foods, Inc. | Case Number<br>06-42558 | |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| | |
|---|---|
| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>Golden Managers Acceptance Corporation | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| Name and address where notices should be sent:<br>Thomas H. Grace<br>Locke Liddell & Sapp, LLP<br>600 Travis St., Ste. 3400, Houston, Texas 77002<br>Telephone number: 713-226-3717 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☑ Check box if the address differs from the address on the envelope sent to you by the court. |

THIS SPACE IS FOR COURT USE ONLY

| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends a previously filed claim, dated: |
|---|---|

| 1. **Basis for Claim** | |
|---|---|
| ☐ Goods sold<br>☐ Services performed<br>☑ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☑ Other See attached Ex. A | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br>Last four digits of your SS #: _____<br>Unpaid compensation for services performed<br>from _____ to _____<br>(date)        (date) |

| 2. Date debt was incurred:<br>06/22/2004 to 03/14/2006 | 3. If court judgment, date obtained: |
|---|---|

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

| Unsecured Nonpriority Claim $ See attached Ex A | Secured Claim |
|---|---|
| ☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority. | ☐ Check this box if your claim is secured by collateral (including a right of setoff).<br>See attached Ex. A<br>Brief Description of Collateral:<br>☐ Real Estate  ☐ Motor Vehicle  ☑ Other Equipment<br>Value of Collateral: $ unknown |
| **Unsecured Priority Claim** | |
| ☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority. | Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____ |
| Amount entitled to priority $ _____ | ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7). |
| Specify the priority of the claim: | |
| ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8). |
| ☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4). | ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).<br>*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |
| ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5). | |

| 5. Total Amount of Claim at Time Case Filed: | $ See attached    Ex A<br>(unsecured)    (secured)    (priority)    (Total) |
|---|---|
| ☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges. | |

| 6. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| 7. **Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. | |
| 8. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | |

| Date<br>10/14/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Thomas H. Grace, Attorney for Golden Managers Acceptance Corporation | 10 |
|---|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit A

Between the dates of June 22, 2004 and March 14, 2006 Yandoli Foods, Inc. executed seven promissory notes pursuant to which Golden Managers Acceptance Corporation loaned Yandoli Foods, Inc. the following amounts on the dates indicated:

| | |
|---|---|
| June 22, 2004 | $    95,986.78 |
| June 22, 2004 | $  265,737.63 |
| June 24, 2004 | $  400,000.00 |
| October 29,2004 | $    93,086.88 |
| November 2, 2004 | $  150,000.00 |
| November 25,2004 | $  376,693.04 |
| March 14,2006 | $1,000,000.00 |

There remains principal and interest due and owing on each of the seven promissory notes. JP Morgan Chase acts as Master Services and Administrator for these loans.

Yandoli Foods, Inc. represented that it owned and operated certain McDonald's restaurants and that it had authority to grant a security interest in the equipment, furnishings, fixtures and other personal property used now or in the future in the operations of the restaurants to serve as security for the above referenced loans. Upon information and belief: (1) Yandoli Foods, Inc. does not own and operate the McDonalds restaurant; (2) in fact, the restaurants are owned and operated by separate affiliated corporations of Yandoli Foods, Inc. (all of which are owned by Richard Yandoli); and (3) the affiliated corporations were the actual recipients of the proceeds of the above referenced loans. As of July 21, 2006 there remains a total of $1,866,121.38 in principal and $ 11,012.60 in accrued unpaid interest due on the seven loans.

The Debtor, as a recipient of part or all of the above referenced loan proceeds, has been unjustly enriched by the acts of Yandoli Foods, Inc. at the expense of Golden Managers Acceptance Corporation and therefore owes an amount up to the sum of $1,877,133.98 to Golden Managers Acceptance Corporation.

The creditor understands that the Debtor has a complete copy of all the loan documents evidencing the above claim. Rather than file multiple and voluminous copies of those documents, any party in interest may request a copy by contacting:

Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400
Houston, TX 77002
(713) 226-1377

FORM B10 (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT **Eastern** | DISTRICT OF **New York** | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>Avenue V Foods, Inc. | Case Number<br>06-42544 | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>Golden Managers Acceptance Corporation | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|
| Name and address where notices should be sent:<br>Thomas H. Grace<br>Locke Liddell & Sapp, LLP<br>600 Travis St., Ste. 3400, Houston, Texas 77002<br>Telephone number: 713-226-3717 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☑ Check box if the address differs from the address on the envelope sent to you by the court. |

THIS SPACE IS FOR COURT USE ONLY

Last four digits of account or other number by which creditor identifies debtor: ____

Check here ☐ replaces
if this claim ☐ amends   a previously filed claim, dated: ____

| 1. **Basis for Claim**<br>☐ Goods sold<br>☐ Services performed<br>☑ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☑ Other   See attached Ex. A | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br>Last four digits of your SS #: ____<br>Unpaid compensation for services performed<br>from ____ to ____<br>   (date)          (date) |
|---|---|

2. **Date debt was incurred:**  06/22/2004 to 03/14/2006   | 3. **If court judgment, date obtained:**

4. **Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

**Unsecured Nonpriority Claim** $ **See attached Ex A**
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim**
☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority $ ____

Specify the priority of the claim:
☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)
☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim**
☐ Check this box if your claim is secured by collateral (including a right of setoff).   **See attached Ex. A**

Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle   ☑ Other  Equipment
Value of Collateral: $ unknown

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ ____

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

5. **Total Amount of Claim at Time Case Filed:**   $ See attached   Ex. A
   (unsecured)   (secured)   (priority)   (Total)
☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

6. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

7. **Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

8. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date<br>10/14/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Thomas H. Grace, Attorney for Golden Managers Acceptance Corporation |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit A

Between the dates of June 22, 2004 and March 14, 2006 Yandoli Foods, Inc. executed seven promissory notes pursuant to which Golden Managers Acceptance Corporation loaned Yandoli Foods, Inc. the following amounts on the dates indicated:

| | |
|---|---|
| June 22, 2004 | $    95,986.78 |
| June 22, 2004 | $  265,737.63 |
| June 24, 2004 | $  400,000.00 |
| October 29,2004 | $    93,086.88 |
| November 2, 2004 | $  150,000.00 |
| November 25,2004 | $  376,693.04 |
| March 14,2006 | $1,000,000.00 |

There remains principal and interest due and owing on each of the seven promissory notes. JP Morgan Chase acts as Master Services and Administrator for these loans.

Yandoli Foods, Inc. represented that it owned and operated certain McDonald's restaurants and that it had authority to grant a security interest in the equipment, furnishings, fixtures and other personal property used now or in the future in the operations of the restaurants to serve as security for the above referenced loans. Upon information and belief: (1) Yandoli Foods, Inc. does not own and operate the McDonalds restaurant; (2) in fact, the restaurants are owned and operated by separate affiliated corporations of Yandoli Foods, Inc. (all of which are owned by Richard Yandoli); and (3) the affiliated corporations were the actual recipients of the proceeds of the above referenced loans. As of July 21, 2006 there remains a total of $1,866,121.38 in principal and $ 11,012.60 in accrued unpaid interest due on the seven loans.

The Debtor, as a recipient of part or all of the above referenced loan proceeds, has been unjustly enriched by the acts of Yandoli Foods, Inc. at the expense of Golden Managers Acceptance Corporation and therefore owes an amount up to the sum of $1,877,133.98 to Golden Managers Acceptance Corporation.

The creditor understands that the Debtor has a complete copy of all the loan documents evidencing the above claim. Rather than file multiple and voluminous copies of those documents, any party in interest may request a copy by contacting:

Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400
Houston, TX 77002
(713) 226-1377

FORM B10 (Official Form 10) (10/05)

| United States Bankruptcy Court **Eastern** District of **New York** | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>Avenue V Foods, Inc. | Case Number<br>06-42544 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>Golden Improvement Corporation | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|
| Name and address where notices should be sent:<br>Thomas H. Grace<br>Locke Liddell & Sapp, LLP<br>600 Travis St., Ste. 3400, Houston, Texas 77002<br>Telephone number: 713-226-1377 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☑ Check box if the address differs from the address on the envelope sent to you by the court. |
| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends a previously filed claim, dated: |

THIS SPACE IS FOR COURT USE ONLY

RECEIVED

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☑ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☑ Other __See attached Ex. A__

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of your SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
  (date)                    (date)

**2. Date debt was incurred:** 11/30/2004

**3. If court judgment, date obtained:**

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

**Unsecured Nonpriority Claim** $ **See attached Ex A**
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim**
☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.
Amount entitled to priority $_____

Specify the priority of your claim:
☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim**
☐ Check this box if your claim is secured by collateral (including a right of setoff). **See attached Ex. A.**

Brief Description of Collateral:
☐ Real Estate  ☐ Motor Vehicle  ☑ Other **Equipment**
Value of Collateral: $ **unknown**

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5. Total Amount of Claim at Time Case Filed:** $ **See attached Ex. A**
(unsecured)   (secured)   (priority)   (Total)
☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

CLAIM # 9
Ex. D
11/9/06

| Date<br>1/14/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Thomas H. Grace, Attorney for Golden Improvement Corporation |
|---|---|

Penalty for presenting fraudulent claim. Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit A

On or about November 30, 2004, Yanodli Foods, Inc. executed two promissory notes pursuant to which Golden Improvements Corporation loaned Yandoli Foods, Inc. the sums of $731,549.96 and $279,248.05 respectively. JP Morgan Chase acts as Master Servicer and Administrator for these loans.

Yandoli Foods, Inc. represented that it owned and operated certain McDonald's restaurants and that it had the authority to grant a security interest in certain improvements at the restaurant locations to serve as security for the above loans. Upon information and belief: (1) Yandoli Foods, Inc. does not own and operate the McDonald's restaurants; (2) in fact, the restaurants are owned and operated by separate affiliated corporations (all of which are owned by Richard Yandoli of Yandoli Foods, Inc.); and (3) the affiliated corporations were the actual recipients of the proceeds of the above referenced loans, As of July 21, 2006 there remains $ 965,874.40 in principal and $ 6,118.37 in accrued, unpaid interest due on said loans.

The Debtor, as a recipient of part or all of the above referenced loan proceeds has been unjustly enriched by the acts of Yandoli Foods, Inc. at the expense of Golden Improvement Corporation and therefore owes an amount up to the sum of $ 971,992.77 to Golden Improvement Corporation.

The creditor understands that the Debtor has a complete copy of all the loan documents evidencing the above claim. Rather than file multiple and voluminous copies of those documents, any party in interest may request a copy by contacting:

Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400
Houston, TX 77002
(713) 226-1377

**FORM B10** (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT **Eastern** | DISTRICT OF **New York** | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor: Nostrand - Hillel Foods, Inc. | Case Number 06-42555 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

*(Stamp: RECEIVED 2006 NOV -6 A 11: 20 U.S. BANKRUPTCY COURT EASTERN DISTRICT OF NEW YORK)*

Name of Creditor (The person or other entity to whom the debtor owes money or property):

JP Morgan Chase, as Master Servicer and Administrator

Name and address where notices should be sent:
Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400, Houston Texas 77002

Telephone number: 713-226-1377

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☑ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces if this claim ☐ amends a previously filed claim, dated:_____ |
|---|---|

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☑ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☑ Other    See attached Ex. A

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of your SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
       (date)              (date)

**2. Date debt was incurred:** 06/2004 to 03/2006

**3. If court judgment, date obtained:**

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

Unsecured Nonpriority Claim $ **See attached Ex A**

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Secured Claim**

☐ Check this box if your claim is secured by collateral (including a right of setoff). **See attached Ex. A**

Brief Description of Collateral:
- ☐ Real Estate   ☐ Motor Vehicle   ☑ Other Equipment

Value of Collateral:  $ unknown

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**Unsecured Priority Claim**

☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority   $_____

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**5. Total Amount of Claim at Time Case Filed:**

| $ See attached    Ex. A | | | |
|---|---|---|---|
| (unsecured) | (secured) | (priority) | (Total) |

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

CLAIM # 11

AC

| Date 10/14/01 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): Thomas H. Grace, Attorney for JP Morgan Chase, as Master Servicer and Administrator *(signature)* |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit A

Between the dates of June 22, 2004 and March 14, 2006 Yandoli Foods, Inc. executed nine promissory notes pursuant to which Golden Managers Acceptance Corporation or Golden Improvements Corporation loaned Yandoli Foods, Inc. the following amounts on the dates indicated:

| | |
|---|---|
| June 22, 2004 | $   95,986.78 |
| June 22, 2004 | $ 265,737.63 |
| June 24, 2004 | $ 400,000.00 |
| October 29,2004 | $   93,086.88 |
| November 2, 2004 | $ 150,000.00 |
| November 25,2004 | $ 376,693.04 |
| November 30,2004 | $ 731,546.96 |
| November 30,2004 | $ 279,248.05 |
| March 14,2006 | $1,000,000.00 |

There remains principal and interest due and owing on each of the nine promissory notes. JP Morgan Chase acts as Master Servicer and Administrator for these loans.

Yandoli Foods, Inc. represented that it owned and operated certain McDonald's restaurants and that it had authority to grant a security interest in (a) the equipment, furnishings, fixtures and other personal property used now or in the future in the operations of the restaurants or (b) the site improvements at the various restaurants to serve as security for the above referenced loans. Upon information and belief: (1) Yandoli Foods, Inc. does not own and operate the McDonalds restaurants; (2) in fact, the restaurants are owned and operated by separate affiliated corporations of Yandoli Foods, Inc. (all of which are owned by Richard Yandoli); and (3) the affiliated corporations were the actual recipients of the proceeds of the above referenced loans. As of July 21, 2006 there remains a total of $ 2,831,995.78 in principal and $ 17,130.97 in accrued unpaid interest due on the nine loans.

The Debtor, as a recipient of part or all of the above referenced loan proceeds, has been unjustly enriched by the acts of Yandoli Foods, Inc. at the expense of JP Morgan Chase as Master Servicer and Administrator of the loans and therefore owes an amount up to the sum of $ 2,849,126.75 to JP Morgan Chase as Master Servicer and Administrator.

The creditor understands that the Debtor has a complete copy of all the loan documents evidencing the above claim. Rather than file multiple and voluminous copies of those documents, any party in interest may request a copy by contacting:

Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400
Houston, TX 77002
(713) 226-1377

**FORM B10** (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT Eastern | DISTRICT OF New York | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>Nostrand-Hillel Foods, Inc. | Case Number<br>06-42555 | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

RECEIVED

2006 NOV -6 A 11: 20

U.S. BANKRUPTCY COURT EASTERN DISTRICT OF NEW YORK

Name of Creditor (The person or other entity to whom the debtor owes money or property):

Golden Improvement Corporation

Name and address where notices should be sent:
Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400, Houston, Texas 77002

Telephone number: 713-226-1377

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☑ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends   a previously filed claim, dated:_____ |
|---|---|

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☑ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☑ Other  See attached Ex. A

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last four digits of your SS #: _____
Unpaid compensation for services performed
from _____ to_____
        (date)            (date)

| **2.** Date debt was incurred:<br>11/30/2004 | **3.** If court judgment, date obtained: |
|---|---|

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

**Unsecured Nonpriority Claim $See attached Ex A**

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim**

☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority   $_____

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,000).* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim**

☐ Check this box if your claim is secured by collateral (including a right of setoff). See attached Ex. A

Brief Description of Collateral:
☐ Real Estate  ☐ Motor Vehicle  ☑ Other Equipment

Value of Collateral:  $ unknown

Amount of arrearage and other charges at time case filed included in secured claim, if any:  $_____

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5. Total Amount of Claim at Time Case Filed:** | $ See attached     Ex. A
(unsecured)     (secured)     (priority)     (Total)

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. Supporting Documents:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

CLAIM #

9

AC

| Date<br>10/14/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Thomas H. Grace, Attorney for Golden Improvement Corporation | |
|---|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit A

On or about November 30, 2004, Yanodli Foods, Inc. executed two promissory notes pursuant to which Golden Improvements Corporation loaned Yandoli Foods, Inc. the sums of $731,549.96 and $279,248.05 respectively. JP Morgan Chase acts as Master Servicer and Administrator for these loans.

Yandoli Foods, Inc. represented that it owned and operated certain McDonald's restaurants and that it had the authority to grant a security interest in certain improvements at the restaurant locations to serve as security for the above loans. Upon information and belief: (1) Yandoli Foods, Inc. does not own and operate the McDonald's restaurants; (2) in fact, the restaurants are owned and operated by separate affiliated corporations (all of which are owned by Richard Yandoli of Yandoli Foods, Inc.); and (3) the affiliated corporations were the actual recipients of the proceeds of the above referenced loans, As of July 21, 2006 there remains $ 965,874.40 in principal and $ 6,118.37 in accrued, unpaid interest due on said loans.

The Debtor, as a recipient of part or all of the above referenced loan proceeds has been unjustly enriched by the acts of Yandoli Foods, Inc. at the expense of Golden Improvement Corporation and therefore owes an amount up to the sum of $ 971,992.77 to Golden Improvement Corporation.

The creditor understands that the Debtor has a complete copy of all the loan documents evidencing the above claim. Rather than file multiple and voluminous copies of those documents, any party in interest may request a copy by contacting:

Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400
Houston, TX 77002
(713) 226-1377

FORM B10 (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT __Eastern__ DISTRICT OF __New York__ | PROOF OF CLAIM |

| Name of Debtor<br>Avenue V Foods, Inc. | Case Number<br>06-42544 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>JP Morgan Chase, as Master Servicer and Administrator | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |

Name and address where notices should be sent:
Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400, Houston, Texas 77002

Telephone number: 713-226-1377

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☑ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

RECEIVED
2006 NOV -6 A 11:19
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF
NEW YORK
CLERK

Last four digits of account or other number by which creditor identifies debtor:

Check here ☐ replaces ☐ amends a previously filed claim, dated:_____
if this claim

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☑ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☑ Other __See attached Ex. A__

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of your SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
     (date)       (date)

**2. Date debt was incurred:**
06/2004 to 03/2006

**3. If court judgment, date obtained:**

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

**Unsecured Nonpriority Claim s __See attached Ex A__**

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Secured Claim**

☐ Check this box if your claim is secured by collateral (including a right of setoff). **See attached Ex. A**

Brief Description of Collateral:
☐ Real Estate ☐ Motor Vehicle ☑ Other __Equipment__

Value of Collateral: $ __unknown__

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

**Unsecured Priority Claim**

☐ Check this box if you have an unsecured priority claim, all or part of which is entitled to priority.

Amount entitled to priority $_____

Specify the priority of the claim:
- ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
- ☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5. Total Amount of Claim at Time Case Filed:**

$ __See attached__ __Ex A__
(unsecured)  (secured)  (priority)  (Total)

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

CLAIM #10
Oct
10/9/06

| Date<br>10/14/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Thomas H. Grace, Attorney for JP Morgan Chase, as Master Servicer and Administrator |

Penalty for presenting fraudulent claim. Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit A

Between the dates of June 22, 2004 and March 14, 2006 Yandoli Foods, Inc. executed nine promissory notes pursuant to which Golden Managers Acceptance Corporation or Golden Improvements Corporation loaned Yandoli Foods, Inc. the following amounts on the dates indicated:

| | |
|---|---|
| June 22, 2004 | $    95,986.78 |
| June 22, 2004 | $  265,737.63 |
| June 24, 2004 | $  400,000.00 |
| October 29,2004 | $    93,086.88 |
| November 2, 2004 | $  150,000.00 |
| November 25,2004 | $  376,693.04 |
| November 30,2004 | $  731,546.96 |
| November 30,2004 | $  279,248.05 |
| March 14,2006 | $1,000,000.00 |

There remains principal and interest due and owing on each of the nine promissory notes. JP Morgan Chase acts as Master Servicer and Administrator for these loans.

Yandoli Foods, Inc. represented that it owned and operated certain McDonald's restaurants and that it had authority to grant a security interest in (a) the equipment, furnishings, fixtures and other personal property used now or in the future in the operations of the restaurants or (b) the site improvements at the various restaurants to serve as security for the above referenced loans. Upon information and belief: (1) Yandoli Foods, Inc. does not own and operate the McDonalds restaurants; (2) in fact, the restaurants are owned and operated by separate affiliated corporations of Yandoli Foods, Inc. (all of which are owned by Richard Yandoli); and (3) the affiliated corporations were the actual recipients of the proceeds of the above referenced loans. As of July 21, 2006 there remains a total of $ 2,831,995.78 in principal and $ 17,130.97 in accrued unpaid interest due on the nine loans.

The Debtor, as a recipient of part or all of the above referenced loan proceeds, has been unjustly enriched by the acts of Yandoli Foods, Inc. at the expense of JP Morgan Chase as Master Servicer and Administrator of the loans and therefore owes an amount up to the sum of $ 2,849,126.75 to JP Morgan Chase as Master Servicer and Administrator.

The creditor understands that the Debtor has a complete copy of all the loan documents evidencing the above claim. Rather than file multiple and voluminous copies of those documents, any party in interest may request a copy by contacting:

Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400
Houston, TX 77002
(713) 226-1377

HOUSTON: 040157.00486: 1119319v1

**FORM B10** (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT **Eastern** DISTRICT OF **New York** | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>Nostrand-Hillel Foods, Inc. | Case Number<br>06-42555 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**RECEIVED** 2006 NOV -6 A 11: 19

CLERK U.S. BANKRUPTCY COURT EASTERN DISTRICT OF NEW YORK

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>Golden Managers Acceptance Corporation | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|
| Name and address where notices should be sent:<br>Thomas H. Grace<br>Locke Liddell & Sapp, LLP<br>600 Travis St., Ste. 3400, Houston, Texas 77002<br><br>Telephone number: 713-226-3717 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☑ Check box if the address differs from the address on the envelope sent to you by the court. |

THIS SPACE IS FOR COURT USE ONLY

| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends a previously filed claim, dated:_____ |
|---|---|

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☑ Money loaned
- ☐ Personal injury/wrongful death
- ☑ Taxes
- ☑ Other  See attached Ex. A

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last four digits of your SS #: _____
Unpaid compensation for services performed
from _____ to _____
        (date)                    (date)

**2. Date debt was incurred:**
06/22/2004 to 03/14/2006

**3. If court judgment, date obtained:**

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

**Unsecured Nonpriority Claim** $ **See attached Ex A**
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim**
☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority $_____

Specify the priority of the claim:
☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim**
☐ Check this box if your claim is secured by collateral (including a right of setoff). **See attached Ex. A**

Brief Description of Collateral:
☐ Real Estate  ☐ Motor Vehicle  ☑ Other Equipment

Value of Collateral: $ unknown

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5. Total Amount of Claim at Time Case Filed:**
$ See attached    Ex. A
   (unsecured)        (secured)        (priority)        (Total)
☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

CLAIM # 10

AC

| Date<br>11/14/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Thomas H. Grace, Attorney for Golden Managers Acceptance Corporation |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit A

Between the dates of June 22, 2004 and March 14, 2006 Yandoli Foods, Inc. executed seven promissory notes pursuant to which Golden Managers Acceptance Corporation loaned Yandoli Foods, Inc. the following amounts on the dates indicated:

| | |
|---|---|
| June 22, 2004 | $    95,986.78 |
| June 22, 2004 | $  265,737.63 |
| June 24, 2004 | $  400,000.00 |
| October 29,2004 | $    93,086.88 |
| November 2, 2004 | $  150,000.00 |
| November 25,2004 | $  376,693.04 |
| March 14,2006 | $1,000,000.00 |

There remains principal and interest due and owing on each of the seven promissory notes. JP Morgan Chase acts as Master Services and Administrator for these loans.

Yandoli Foods, Inc. represented that it owned and operated certain McDonald's restaurants and that it had authority to grant a security interest in the equipment, furnishings, fixtures and other personal property used now or in the future in the operations of the restaurants to serve as security for the above referenced loans. Upon information and belief: (1) Yandoli Foods, Inc. does not own and operate the McDonalds restaurant; (2) in fact, the restaurants are owned and operated by separate affiliated corporations of Yandoli Foods, Inc. (all of which are owned by Richard Yandoli); and (3) the affiliated corporations were the actual recipients of the proceeds of the above referenced loans. As of July 21, 2006 there remains a total of $1,866,121.38 in principal and $ 11,012.60 in accrued unpaid interest due on the seven loans.

The Debtor, as a recipient of part or all of the above referenced loan proceeds, has been unjustly enriched by the acts of Yandoli Foods, Inc. at the expense of Golden Managers Acceptance Corporation and therefore owes an amount up to the sum of $1,877,133.98 to Golden Managers Acceptance Corporation.

The creditor understands that the Debtor has a complete copy of all the loan documents evidencing the above claim. Rather than file multiple and voluminous copies of those documents, any party in interest may request a copy by contacting:

Thomas H. Grace
Locke Liddell & Sapp, LLP
600 Travis St., Ste. 3400
Houston, TX 77002
(713) 226-1377

LOCKE LIDDELL & SAPP PLLC
Thomas H. Grace
Texas Bar No. 00785483
Federal I.D. No. 12618
600 Travis, Suite 2600
Houston, Texas 77002
(713) 226-1377
-and-
SILVERMAN PERLSTEIN & ACAMPORA LLP
Edward M. Flint (EMF #7001)
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300

Hearing Date/Time: October 2, 2007 at 3:00 p.m. (EDT)
Objection Deadline: September 27, 2007 at 5:00 p.m. (EDT)

Attorneys for JPMorgan Chase Bank, Master Servicer and Administrator,
Golden Improvement Company and Golden Management Acceptance Company

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| YANDOLI FOODS, INC., et al., | § | CASE NO: 06-42541 |
| | § | CASE NO. 06-42559 |
| | § | CASE NO. 06-42558 |
| Debtors. | § | CASE NO. 06-42556 |
| | § | CASE NO. 06-42555 |
| | § | CASE NO. 06-42552 |
| | § | CASE NO. 06-42551 |
| | § | CASE NO. 06-42544 |
| | § | |
| | § | Jointly Administered |
| | § | |

**FIRST AMENDED MOTION TO CONVERT DEBTORS' CHAPTER 11 BANKRUPTCY
CASES TO CASES UNDER CHAPTER 7, TO DISQUALIFY DEBTORS' BANKRUPTCY
COUNSEL, AND TO DISGORGE INTERIM ATTORNEYS' FEES PREVIOUSLY PAID**

TO THE HONORABLE ELIZABETH S. STONG,
UNITED STATES BANKRUPTCY JUDGE:

COME NOW JPMORGAN CHASE BANK, N.A. ("Chase"), as Master Servicer and

Administrator, GOLDEN IMPROVEMENT COMPANY ("Impco"), and GOLDEN

MANAGEMENT ACCEPTANCE COMPANY ("Golden Mac"), and file this their First Amended

Motion to Convert Debtors' Chapter 11 Bankruptcy Cases to Cases Under Chapter 7, to Disqualify

1

Debtor's Bankruptcy Counsel, and to Disgorge Interim Attorneys' Fees Previously Paid (the "Motion") and would show the Court as follows:

## JURISDICTION

1.      Chase, Impco and Golden Mac (collectively, the "Chase Entities") bring this Motion under §§ 1112(b), 327 & 331 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 1017, 2014, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2) and 1334.

2.      This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

## BACKGROUND FACTS

**I.      INTRODUCTION.**

3.      Between June 22, 2004 and March 14, 2006, YANDOLI FOODS, INC. ("Yandoli") executed nine promissory notes (collectively, the "Notes") in favor of Impco and/or Golden Mac in the following amounts and on the dates indicated:

| | |
|---|---|
| June 22, 2004 | $    95,986.78 |
| June 22, 2004 | $  265,737.63 |
| June 24, 2004 | $  400,000.00 |
| October 29,2004 | $    93,086.88 |
| November 2, 2004 | $  150,000.00 |
| November 25, 2004 | $  376,693.04 |
| November 30, 2004 | $  731,546.96 |
| November 30, 2004 | $  279,248.05 |
| March 14, 2006 | $1,000,000.00 |

As of July 21, 2006 (the "Petition Date"), a total of $2,831,995.78 in principal and $17,130.97 in accrued unpaid interest was due on the Notes to both Golden Mac and Impco. The total amount owed to Golden Mac and Impco is $2,849,126.75. The Notes remain unpaid. Chase is the Master Servicer and Administrator for these Notes on Impco's and Golden Mac's behalf. Chase acts solely as servicing agent and administrator for the claims of Golden Mac and Impco. The Chase Entities

are parties-in-interest in the above-styled jointly administered bankruptcy cases (the "Bankruptcy Cases").

4.      On the Petition Date, Yandoli and certain of its affiliates (collectively, the "Debtors") commenced the Bankruptcy Cases. No official committee of unsecured creditors has been appointed in these cases. Since the Petition Date, the Debtors have acted as debtors and debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. In March and April 2007, the Debtors sold substantially all their assets to the following parties: 1) the McDonald's® Corporation, a Delaware corporation that owns the national McDonald's® restaurant system and the McDonald's® franchise, and 2) Marianne, Patrick and Brian Spillane, existing McDonald's® franchisees. The Bankruptcy Court approved these asset sales, and the Debtors closed them pursuant to the Bankruptcy Court's orders. The Debtors are no longer doing business.

## II.    THE DEBTORS AND THEIR BANKRUPTCY COUNSEL HAVE COMMITTED NUMEROUS ABUSES DURING THESE BANKRUPTCY CASES.

5.      As creditors and parties in interest, the Chase Entities bring this Motion to convert these cases because the Debtors have violated their duties as debtors-in-possession under Bankruptcy Code §§ 1107-1108, have not complied with the Bankruptcy Code, and cannot confirm a Chapter 11 plan. The Debtors' law firm, Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn, LLP ("Forchelli Curto"), represented the Debtors while these abuses were occurring and continues to do so. This Background Facts Section sets forth the Debtors' and Forchelli Curto's egregious post-petition conduct.

### A.    The Debtors Have Made Unauthorized Post-Petition Transfers to Insiders.

6.      First, the Debtors have made numerous unauthorized, post-petition transfers to and

3

for the benefit of non-debtor insiders such as Boardwalk Foods, Inc. ("Boardwalk")[1] and Mr. Richard Yandoli ("Mr. Yandoli")—transfers reflected in the Debtors' Monthly Operating Reports (the "Operating Reports"). For example, the Chase Entities have identified the following post-petition transfers from various Debtors to Boardwalk:[2] 1) $29,994.45 in thirteen separate checks during August 2006 from Thurm Lee Foods, Inc. ("Thurm Lee"); 2) $20,860.34 in ten separate checks during September 2006 from Thurm Lee; 3) $2,825.54 in two separate checks during October 2006 from Nostrand-Hillel Foods, Inc. ("Nostrand-Hillel"); 4) $11,882.49 in six separate checks during October 2006 from Thurm Lee; 5) $1,425.10 in one check during October 2006 from Seaview Avenue Foods, Inc. ("Seaview"); 6) $9,681.07 in five separate checks during October 2006 from Rockaway Parkway Foods, Inc. ("Rockaway"); 7) $8,125 in twelve separate checks during November 2006 from Thurm Lee; 8) $18,546.53 in twenty-four separate checks during December 2006 from Thurm Lee; 9) $1,320.86 in two separate checks during December 2006 from Seaview; 10) $23,319.21 in thirty-two separate checks during January 2007 from Thurm Lee; and 11) $1,300 in two separate checks during February 2007 from Thurm Lee. <u>The total for all the Debtors' transfers to Boardwalk from July 2006 through April 2007 is **$129,280.59**</u>.

7.      In exchange for these transfers, the Debtors do not appear to have received anything of value—which is not surprising considering that the Debtors themselves described Boardwalk as "closed" in the Cash Management Motion. Interestingly, when confronted with these transfers by attorneys for the Office of the United States Trustee (the "U.S. Trustee"), the Debtors, on August 20, 2007, filed a First Amended Disclosure Statement in Respect to Debtors' Plan of Liquidation [Dkt

---

[1]Upon information and belief, Boardwalk is a non-operating corporation wholly owned and controlled by Mr. Yandoli. On the Petition Date, the Debtors' Motion for Order Authorizing Debtors to (I) Continue to Use Existing Cash Management System and Bank Accounts; (II) Continue Intercompany Transactions and Provide Administrative Priority Status to Postpetition Intercompany Claims and; (III) Continue to Use Existing Checks and Business Forms [Dkt. No. 8] (the "Cash Management Motion") asserted that Boardwalk was a satellite McDonald's® location "operated at 1025 Boardwalk West, Brooklyn, New York from January 1, 1994 through April 26, 2006", but that it had "closed" before the Petition Date. (Cash Mgmt. Mtn. p. 18 n.1).

[2]All information is obtained from the respective Debtor's Operating Report for the month in question.

No. 213] (the "Disclosure Statement").[3] In this Disclosure Statement, the Debtors speculated that the $130,000 in transfers to Boardwalk must be for "gas and car expenses", "restaurant equipment", "service and repair items" and other "sundry business expenses". (Dis. Stmt. p. 45) The Debtors promised to go "through the general ledger to determine the specific payments made to Boardwalk" to find out what, if anything, Boardwalk may have transferred to the Debtors in exchange for these payments. (Id.). The Disclosure Statement provided no concrete explanation for the transfers.[4]

8.     Besides making payments to Boardwalk, the Debtors apparently let Mr. Yandoli hitch a ride on this gravy train as well. The Operating Reports reveal that the Debtors transferred no less than $389,126 directly to Mr. Yandoli by name during these Bankruptcy Cases. Mr. Yandoli received approximately $24,000 in July 2006, $105,000 in August 2006, $73,000 in September 2006, $66,000 in October 2006, $4,900 in November 2006, $13,000 in December 2006, $13,700 in January 2007, $20,800 in February 2007, $27,600 in March 2007 and $41,500 in April 2007. (The Debtors' asset sales closed in April.) Nothing in the Court's order granting the Cash Management Motion or in any other filings in the Bankruptcy Cases appears to authorize these transfers. Worse yet, the Operating Reports also identify another $490,620 transferred as "Owner's Draw" and $112,781 as "Loans to Officers". These payments—which one can presume benefit Mr. Yandoli, the Debtors' sole owner, president and principal control person—were not adequately explained in the Disclosure Statement and cannot be reconciled with other checks paid to Mr. Yandoli.

9.     The size, number and frequency of the payments to Mr. Yandoli are suspicious. The direct transfers were ordinarily made via large numbers of small checks—most no bigger than

---

[3] On August 27, 2007, the Chase Entities filed their **Objection to First Amended Disclosure Statement in Respect to Debtors' Plan of Liquidation** [Dkt No. 215] (the "Objection") and a **Memorandum of Law in Support of this Objection** [Dkt. No. 216] (the "Objection Memorandum"). The Objection requests that the Court deny approval of the Disclosure Statement. The Disclosure Statement is referenced herein as "Dis. Stmt." A hearing was held on the Disclosure Statement on August 30, 2007.

[4] At the Disclosure Statement hearing on August 30, 2007, the Debtors agreed to confer with the JPMC Entities to draft a second amended Disclosure Statement that would provide extensive information about these post-petition insider transactions and be acceptable both to the Debtors and the JPMC Entities.

$5,000 and many less than $1000. These transfers do not square with the amounts allocated to insider compensation in the Operating Reports' Income Statements. For instance, during October 2006, each of the Debtors except for Yandoli Foods, Inc. allocated $4429 for insider compensation (which presumably includes Mr. Yandoli's salary.) (E.g., Oct. 2006 MORs, p. 15). Thus, the total insider compensation paid by all the Debtors in October 2006 should have been $31,003. Yet, Mr. Yandoli received direct payments of approximately $66,000 in that month via a series of small checks—more than twice the insider compensation allocated. Similar discrepancies appear in other months.

10.     Responding to the U.S. Trustee's inquiries about these insider transactions, the Debtors stated in the Disclosure Statement that Mr. Yandoli did indeed receive unauthorized payments from the Debtors after the Petition Date. Yet, the Debtors saw no cause for alarm. Instead, the Disclosure Statement asserted that the Debtors have a cause of action against Mr. Yandoli worth $354,902.05 for these transfers and that Forchelli Curto has "commenced negotiations with separate counsel for Richard Yandoli to discuss an agreement which provides for the repayment of the funds" within four months after the Debtor's Plan of Liquidation (the "Plan") is confirmed.  (Dis. Stmt. p. 44). The Debtors did not explain how or why these transfers occurred, from whom Forchelli Curto is receiving its instructions during these "negotiations", what the Debtors intended to do if they could not reach an accommodation with Mr. Yandoli (who, in any event, still controls the Debtors), and how the Debtors could prevent these transfers from occurring in the future.

11.     For its part, Forchelli Curto represented the Debtors while these unauthorized transfers were occurring. Mr. Gary Kushner, a member of Forchelli Curto, filed the Operating Reports with this Court. Mr. Kushner also filed the Disclosure Statement in which the Debtors suggested that they (through Forchelli Curto) would "negotiate" with Mr. Yandoli (who still owns

and controls the Debtors) to return at least a portion of the funds he received. (Dis. Stmt. p. 44).

12.     Forchelli Curto seems unaware of the extraordinary conflict of interest it now faces. It has allowed the Debtors' sole shareholder to receive unauthorized transfers from the Debtors and then filed Operating Reports with this Court reflecting those very same transfers. These unauthorized transactions happened on its watch. It did not inform the Court when they occurred, and it did not seek to withdraw or take any other definitive action to remedy these abuses. Forchelli Curto can hardly expect the Debtors' creditors to believe that it can vigorously pursue the Debtors' right to recover these transfers. Considering the circumstances, the nonchalance regarding this situation exhibited in the Disclosure Statement—a document presumably drafted by Forchelli Curto—further demonstrates that neither Forchelli Curto nor the Debtors can be trusted to litigate this issue.

**B.    The Debtors Have Obtained Unauthorized Post-Petition Credit from Insiders.**

13.     Besides making unauthorized post-petition transfers, the Debtors have also obtained unauthorized post-petition credit from insiders after the Petition Date without seeking this Court's approval to obtain credit pursuant to Bankruptcy Code § 364. For example, in its July 2006 Operating Report, Thurm Lee reported as income a $60,000 post-petition "Loan from Officer". (Thurm Lee July 2006 MOR, p. 13). Thurm Lee reported a similar post-petition "Loan from Officer" of $105,000 in its October 2006 Operating Report. (Thurm Lee Oct. 2006 MOR, p. 13). In neither case did Thurm Lee nor any other Debtor file a motion with this Court to obtain post-petition credit from an insider under Bankruptcy Code § 364. The "officer" who made these loans is not identified.

14.     On their face, these post-petition loans violate § 364(b), which prohibits debtors from obtaining credit outside the ordinary course of business without first obtaining bankruptcy-court approval. 11 U.S.C. § 364(b). The Chase Entities have reviewed the court docket in these jointly administered Bankruptcy Cases and found no motion to approve a post-petition loan from any

"officer" of the Debtors. The Debtors have suggested in their Debtors' Reply to Chase Entities

Objection to First Amended Disclosure Statement (the "Debtors' Reply"), filed on August 30, 2007

in these Bankruptcy Cases that these post-petition loans represented a repayment by Mr. Yandoli of

pre-petition loans previously made that were posted incorrectly. However, the Debtors' provide no

real proof of their assertion. In any event, any failure by the Debtors' to obtain authority for post-

petition loans to their estates can be attributed to Forchelli Curto as well as to the Debtors. Assuming

that Forchelli Curto reviewed Thurm Lee's July 2006 and October 2006 Operating Reports,

Forchelli Curto should have become aware of these loans when those reports were being prepared.

Yet, it has never filed a motion seeking *nunc pro tunc* approval of this "Loan from Officer" or taken

any other action to redress the Debtors' violation of § 364(b).

### C.    The Debtors Have Employed Professionals Without This Court's Approval.

15.    Third, the Debtors have employed professionals without first obtaining this Court's

approval of their retention and compensation under Bankruptcy Code §§ 327, 330 and 331. For

example, in December 2006, Thurm Lee paid $13,750 to "Kramer & Shapiro", a party identified in

Thurm Lee's check register as "attorneys". (Thurm Lee Dec. 2006 MOR). Thurm Lee's December

2006 Operating Report does not identify the reason for these payments or provide any additional

information about "Kramer & Shapiro". The Debtors' suggest in the Debtors' Reply that this

payment was really a settlement of certain obligations the Debtors allegedly owed to a post-petition

equipment lessor. If this is true, then the Chase Entities can hardly be faulted for demanding that the

Debtors prove it—especially when the Debtors' story does not, on it face, square with Thurm Lee's

own Operating Reports.

16.    In any event, though the Chase Entities hardly need to mention it, the Debtors never

applied to this Court to retain "Kramer & Shapiro" as attorneys for their bankruptcy estates pursuant

to 11 U.S.C. § 327. The Debtors have also not sought this Court's approval of this $13,750 in payments to "Kramer & Shapiro" either as interim or as final compensation for services rendered pursuant to 11 U.S.C. §§ 330 & 331. In short, this Court has never had the opportunity to review either the appropriateness of that retention or the fees "Kramer & Shapiro" may have charged. For its part, Forchelli Curto should have filed a motion to retain "Kramer & Shapiro" *nunc pro tunc* once it became aware that Thurm Lee had made these payments. No such motion was ever filed.

        **D.**     **The Debtors Have Not Complied With Their DIP Reporting Duties.**

      17.    Fourth, the Debtors have filed their Operating Reports late throughout these Bankruptcy Cases, are currently three months behind, and appear to have back-dated or otherwise fraudulently completed some of the Operating Reports they did file. For example, in 2006 the Debtors' Operating Reports were at least two months' late on a regular basis. The Debtors filed their August 2006 reports on October 31, 2006, their September 2006 reports on December 22, 2006, their October 2006 reports on January 16, 2007, their November 2006 reports on February 1, 2007 and their December 2006 reports on February 27, 2007.

      18.    The Debtors' performance in 2007 was even worse. They did not file their Operating Reports for January 2007, February 2007, March 2007 and April 2007 until <u>May 22, 2007.</u> On that date, they dumped all these reports on their respective dockets at once—which imposed, at the very least, a considerable inconvenience on the U.S. Trustee and the other parties in interest who have been trying to monitor these cases. And, the Debtors have not filed a single operating report since May, leaving them three months' behind as of the date of this Motion.

      19.    Worse yet, besides filing their Operating Reports late, the Debtors also appear to have fraudulently back-dated at least some of them. For example, Yandoli's November 2006 Operating Report is dated December 22, 2006—less than one month after the last day of the November period.

(Yandoli Nov. 2006 MOR, p. 2). On its face, this date is unremarkable. However, the fax-transmission line at the top of the report indicates that Yandoli faxed it to Forchelli Curto at fax number (516) 248-1729 nearly a month later on January 18, 2007. Forchelli Curto then waited another two weeks to file it, finally doing so on February 1, 2007. Hence, the November 2006 report apparently shows that Yandoli did not send it to Forchelli Curto for nearly a month after it was prepared. A similar discrepancy appears in Yandoli's October 2006 Operating Report. (Yandoli Oct. MOR, p.2). Though Mr. Yandoli's signature on the October 2006 report is dated November 22, 2006, the fax transmission line at the top of the report shows January 12, 2007—nearly two months later. In this case, Forchelli Curto did not wait as long to file it. The October 2006 Operating Report was docketed on January 16, 2007—only four days after Forchelli Curto received it.

20.    The long time-periods between the dates Mr. Yandoli supposedly executed the October 2006 and November 2006 Operating Reports and the dates those reports were transmitted to the Debtor's counsel suggest one of two things. First, either the reports were backdated (because they were prepared at approximately the same time as they were faxed), or else they sat around Yandoli's offices for months before anyone bothered to send them to Forchelli Curto. If the first scenario is true, then the Debtors committed bankruptcy fraud. If the second is, then they ignored their statutory duty as debtors-in-possession to file their operating reports on time. In either case, the Debtors have not met their reporting obligations as debtors-in-possession under Bankruptcy Code §§ 1106 and 1107.

21.    Lastly, during the entire time that the Debtors were preparing these late and suspicious-looking Operating Reports, Forchelli Curto appears not to have questioned them. Forchelli Curto just filed them—warts and all.

10

**E.**    **The Debtors Have Failed to Pay Post-Petition Taxes Owed by their Estates and Have Employed Unacceptably Loose Financial Controls.**

22.    Fifth, the Debtors have not timely paid their post-petition state sales and use taxes or their federal employment taxes under I.R.C. § 941 and have otherwise employed unacceptably loose financial controls throughout these Bankruptcy Cases. For example, in its Joinder [Dkt. No. 192] ("Joinder") to the Motion to Dismiss of the United States Trustee [Dkt. No. 94], the New York State Department of Taxation and Finance ("New York Taxation Department") asserted that the Debtors owed **$546,212.68** in unpaid post-petition sales and use taxes as of May 25, 2007. The New York Taxation Department supported its position with a sworn affidavit from one of its attorneys. Even the Debtors admit in their Disclosure Statement that they owe $49,522.66 in post-petition sales taxes to both New York City and New York State. (Dis. Stmt. pp. 47-50). Worse yet, the Disclosure Statement also revealed that the Debtors owe—post-petition—federal employer withholding taxes (i.e., "941 taxes") totaling $331,752.25. (Id.) The Disclosure Statement did not explain why the Debtors could not pay their post-petition taxes—especially when insiders like Boardwalk and Mr. Yandoli were receiving more than $1 million dollars in unauthorized transfers during this same time period. The Debtors' failure to pay its post-petition taxes represents a clear violation of their duties as debtors-in-possession.

23.    Besides their tax problems, the Debtors have also exhibited extraordinary fecklessness in their financial accounting throughout these Bankruptcy Cases. Setting aside for a moment all the unauthorized post-petition transactions, the Debtors' Operating Reports also reveal large and unexplained fluctuations in their intercompany accounts. For example, Thurm Lee's intercompany receivable fluctuates by hundreds of thousands of dollars a month for no apparent reason. It listed its intercompany receivable as $2,710,865 in July 2006, as $2,653,098 in September 2006, as $2,736,336 in November 2006, as $2,519,400 in January 2007, and as $2,270,280 in March

11

2007—the last month in which Thurm Lee had significant operations. (Thurm Lee MORs July-Mar., p. 18). The Operating Reports offer no credible explanation for these variations.

24.    Despite these tax and financial-control issues, Forchelli Curto has continued to pursue confirmation of a Plan that has now become impossible. As outlined in greater detail in the Objection and the Objection Memorandum, the Debtors' decision not to pay its post-petition taxes has, among other things, rendered the Plan unconfirmable on its face. As the Disclosure Statement explains, the bankruptcy estates of Thurm Lee, Flatlands Avenue Foods, Inc. ("Flatlands") and Seaview are "administratively insolvent and Allowed Administrative Claims will either receive no distribution, or at best, only a pro-rata distribution." (Dis. Stmt., p. 50). Forchelli Curto, as the Debtors' bankruptcy counsel, surely knows that this Court cannot confirm the Plan as drafted if these three Debtors cannot pay their administrative claims in cash on the effective date as required by Bankruptcy Code § 1129(a)(9)(A) or the Debtors cannot reach a definitive agreement with the administrative claimants to receive less than one hundred percent (100%) of their claims. Still, Forchelli Curto presses on with the Plan undeterred. The Chase Entities see no other reason for such a decision except that Forchelli Curto has decided to keep these cases in Chapter 11 (and itself in place as Debtors' counsel) no matter what happens.

25.    In conclusion, the facts reveal that the Debtors, with the assistance of their counsel Forchelli Curto, have violated the Bankruptcy Code many times over during these Bankruptcy Cases. As explained in detail below, the Debtors' actions (and those of their attorneys) demand that these cases be converted to cases under Chapter 7, that Forchelli Curto be disqualified as counsel to the Debtors, and that Forchelli Curto disgorge the interim fees it has received.

## ARGUMENT AND RELIEF REQUESTED

**I.**    **THE BANKRUPTCY CASES SHOULD BE CONVERTED TO CASES UNDER CHAPTER 7 OF THE BANKRUPTCY CODE FOR CAUSE PURSUANT TO 11 U.S.C. § 1112(b).**

26.     Bankruptcy Code § 1112(b) permits this Court to convert these Bankruptcy Cases to cases under Chapter 7 of the Bankruptcy Code or to dismiss these cases entirely for "cause" either upon its own motion or that of the U.S. Trustee or a party-in-interest such as the Chase Entities. 11 U.S.C. § 1112(b); *see also In re Hampton Hotel Investors, L.P.*, 270 B.R. 346, 357-58 (Bankr. S.D.N.Y. 2001); *In re 266 Washington Assocs.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992), *aff'd* 147 B.R. 827 (E.D.N.Y. 1992). In light of the Debtors' egregious behavior in these cases, conversion to Chapter 7 is the most appropriate remedy. Only an unaffiliated third party like a Chapter 7 trustee has the independence necessary to conduct the full and complete investigation of the Debtors' finances and business operations that the circumstances now demand.

27.     Section 1112(b) states in pertinent part as follows:

> Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under [Chapter 11] to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes *cause*.

11 U.S.C. § 1112(b)(1) (emphasis added). Examples of "cause" are listed at § 1112(b)(4). *Id.* § 1112(b)(4). Among these are the following: 1) "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation", 2) "gross mismanagement of the estate", 3) unauthorized use of cash collateral "substantially harmful to 1 or more creditors", 4) unexcused failure to satisfy timely "any filing or reporting requirement" required of a debtor-in-possession, 5) failure to timely pay "taxes owed after the date of the order for relief", and 6) failure to "file or confirm a plan" within the time required by the bankruptcy court or the Bankruptcy Code. *Id.* The examples of "cause" set forth in § 1112(b)(4) are illustrative and not exhaustive, and a

13

bankruptcy court may consider other circumstances as they arise. *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1311 n.5 (2d Cir. 1997).

28.    As described in detail in the Background Facts, the Debtors' outrageous conduct qualifies as "cause" to convert these cases to cases under Chapter 7. The first example of "cause" to which the Chase Entities draw this Court's attention is the most egregious: the unauthorized post-petition transfers to both Boardwalk and Mr. Yandoli <u>and</u> the Debtors' poor internal financial controls. There can be no doubt that these acts qualify as "a substantial or continuing loss to or diminution of the estate", "gross mismanagement of the estate" and "unauthorized use of cash collateral" that have substantially harmed the Debtors' creditors. *See* 11 U.S.C. § 1112(b)(4). Added together, the Chase Entities calculate that Boardwalk and Mr. Yandoli (either directly or under "Loans to Officers" or "Owner's Draw") received nearly **$1,124,000** in unauthorized post-petition payments during these Bankruptcy Cases—a tidy sum from Debtors who are now either administratively insolvent or unable to pay anything to their unsecured creditors. (Dis. Stmt. pp. 47-65) (describing proposed plan treatment for Debtors' creditors). This behavior represents the worst sort of self-dealing in direct contravention of the Debtors' fiduciary duties and has long qualified as "cause" to convert a Chapter 11 case to Chapter 7. *See, e.g., Hampton Hotel*, 270 B.R. at 352-53 (holding that unauthorized payments to a limited partnership's general partner constituted cause to convert case to Chapter 7).

29.    Indeed, if these unauthorized transactions and mismanagement do not constitute "unauthorized use of cash collateral", "gross mismanagement of the estate" and a "substantial loss" to the Debtors' estates, then nothing does. As one court put it, "[t]he premise that insiders may simply take what they need or want of the estate's assets is contrary to the Bankruptcy Code and the fiduciary duty owed the estate and its creditors. *There is universal agreement among the courts that*

*using estate property to pay personal expenses of the debtor's principals is a misuse of estate property.*" *In re Nugelt, Inc.*, 142 B.R. 661, 666 (Bankr. D. Del. 1992) (emphasis added). Simply put, the Debtors' shameless misappropriation of estate property for the benefit of insiders like Boardwalk and Mr. Yandoli—as well as their generally poor financial controls— exemplify "cause" to convert these cases to Chapter 7.

30.      Second, the Debtors' unauthorized retention of "Kramer & Shapiro" as attorneys for the Debtors' estate and Thurm Lee's $60,000 post-petition "Loan from Officer" are also grounds for converting these cases to Chapter 11. (*See* Thurm Lee July 2006 MOR, p. 13; Thurm Lee Dec. 2006 MOR). Neither Thurm Lee nor any other Debtor ever sought—much less obtained—approval from this Court for these transactions as required under the Bankruptcy Code. Apparently, Thurm Lee decided that it could operate as if it had never commenced a Chapter 11 case. Its decision constitutes "cause" to convert these Bankruptcy Cases to cases under Chapter 7. *See Hampton Hotel*, 270 B.R. at 353 (holding that unauthorized retentions of professionals and unauthorized loans from insiders qualified as "cause" to convert the debtor's Chapter 11 case to Chapter 7).

31.      Third, the Debtors' continuing failure in these Bankruptcy Cases to file its Operating Reports on time, the fact that the Debtors are currently three months' late on their reports, and the very real possibility that these Operating Reports were backdated or otherwise fraudulently prepared also constitutes cause to convert these cases to Chapter 7. *See* 11 U.S.C. § 1112(b)(4)(F). The local Rules in this District require that the Debtors timely file accurate operating reports each month. LOCAL R. 2015-1. Accurate and complete operating reports are critical to any Chapter 11 case because they enable the creditors of a debtor-in-possession to " monitor a debtor's post-petition operations." *Nugelt*, 142 B.R. at 668. Courts have long recognized that the failure to file accurate operating reports on time "in itself constitutes 'cause' for dismissal." *E.g., In re McClure*, 69 B.R.

282, 289 (Bankr. N.D. Ind. 1987). The Debtors' demonstrated inability (or unwillingness) to meet these basic obligations of a debtor-in-possession demands conversion of these cases. *See id.*

32.    Fourth, the Debtors' decision not to pay their post-petition taxes also constitutes "cause" to convert these Bankruptcy Cases to Chapter 7. 11 U.S.C. § 1112(b)(4)(I). Not paying one's post-petition taxes is a statutory example of "cause" and has for years been a principal consideration for many courts when deciding whether to convert or dismiss. *See, e.g., In re Berryhill*, 189 B.R. 463, 466 (Bankr. N.D. Ind. 1995) ("The failure of a Chapter 11 debtor-in-possession to pay post-petition taxes has been held to constitute cause for conversion or dismissal under § 1112(b)."). As explained above, the Debtors appear to owe, as of May 25, 2007, $546,212.68 in unpaid post-petition sales and use taxes to the State of New York, according to a sworn affidavit from an attorney with the New York Taxation Department. Even worse, the Debtors admit in their own Disclosure Statement that they owe the I.R.S. $331,752.25 in unpaid, post-petition 941 taxes. (Dis. Stmt. pp. 47-50). The Disclosure Statement offers no explanation for the Debtors' conduct in this regard. Such a clear repudiation by the Debtors of their duties as debtors-in-possession constitute "cause" to convert or dismiss these cases.

33.    Finally, cause exists to convert these cases to Chapter 7 because the Debtors' have not—and cannot—confirm a Chapter 11 plan of reorganization. 11 U.S.C. § 1112(b)(4)(J). When a debtor-in-possession cannot effectuate a confirmable plan or has created an unreasonable delay prejudicial to its creditors, the bankruptcy court may dismiss or convert the Chapter 11 case. *266 Washington Assocs.*, 141 B.R. at 288. As explained in detail in the Chase Entities' Objection and accompanying Objection Memorandum, the Plan as proposed by the Debtors is fatally flawed and cannot be confirmed. In particular, at least three Debtors are administratively insolvent and cannot confirm a Chapter 11 plan because they cannot meet § 1129(a)(9)(A), which requires payment of all

post-petition administrative claims in full on the effective date. 11 U.S.C. 1129(a)(9)(A). By the same token, the Debtors' failure to comply with their continuing obligations as debtors-in-possession prevents the Debtors from satisfying Bankruptcy Code § 1129(a)(2).

34.    In conclusion, if any Chapter 11 cases ever deserved conversion to Chapter 7, these cases do. The Debtors have misappropriated estate assets, retained professionals and obtained loans without this Court's approval, and failed to meet their statutory duties as debtors-in-possession (by, *inter alia*, filing late and possibly fraudulent Operating Reports and not paying their post-petition taxes). There is also no hope that these Debtors will ever confirm a plan. This Court should therefore convert these Bankruptcy Cases to cases under Chapter 7 immediately.

**II.    FORCHELLI CURTO SHOULD BE DISQUALIFIED AS DEBTORS' COUNSEL AND REQUIRED TO DISGORGE THE INTERIM FEES THEY HAVE RECEIVED IN THESE CASES.**

35.    As extraordinary as the Debtors' abuses of the Bankruptcy Code have been, the actions of the Debtors' bankruptcy counsel, Forchelli Curto, are arguably worse. Though its attorneys are officers of this Court, Forchelli Curto has nevertheless turned a blind eye to the Debtors' shenanigans in these Bankruptcy Cases and is, even now, both making excuses for the Debtors in the Disclosure Statement and continuing to pursue confirmation of cases that have become hopelessly compromised. This behavior demands Forchelli Curto's disqualification as Debtors' counsel as well as the disgorgement by that firm of some or all of the interim fees it has already received.

**A.    This Court Should Disqualify Forchelli Curto as Counsel to the Debtors.**

36.    The authority of federal courts to disqualify attorneys derives from their inherent power to "preserve the integrity of the adversary process". *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005) (quoting *Board of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). Courts need to maintain the highest standards of the legal

profession even while they balance that consideration with a client's right to choose his own counsel. *Id.* When unethical conduct has occurred in a case in federal court, the court (in this case, this Court) should take measures to redress that conduct. *In Re American Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992). A motion to disqualify counsel is the proper method for a party-litigant to bring such issues as conflict of interest or breach of an attorneys' ethical duties to the attention of the court. *Id.*

37.    A federal court in the Second Circuit will ordinarily disqualify an attorney practicing before it only if it finds that "the presence of a particular counsel will taint the trial by affecting his or her presentation of a case". *The European Community v. RJR Nabisco, Inc.*, 134 F.Supp.2d 297, 303 (E.D.N.Y. 2001) (citing the standard articulated in *Nyquist*, 590 F.2d at 1246). An attorney's conduct may "taint the underlying trial" when a conflict of interest or the use of privileged information obtained in a prior representation may "disturb the balance of presentations" in a case. *Id.* The decision regarding whether such a "taint" exists is one "best considered in the context of the particular facts presented by each case." *United States Football League v. National Football League*, 605 F.Supp. 1448, 1464 (S.D.N.Y. 1985).

38.    In the bankruptcy context, however, attorneys seeking to qualify for employment as counsel to a Chapter 11 debtor must also satisfy the requirements of Bankruptcy Code § 327(a). 11 U.S.C. § 327(a); *see also In re Angelika Films 57th Inc.*, 227 B.R. 29, 38 (Bankr. S.D.N.Y. 1998) (outlining requirements of § 327(a)), *aff'd* 246 B.R. 176 (S.D.N.Y. 2000). Section 327(a) provides that an attorney for the debtor-in-possession: 1) may not hold or represent an interest adverse to the bankruptcy estate and 2) must be a "disinterested person". 11 U.S.C. § 327(a). The Bankruptcy Code defines "disinterested person" at U.S.C. § 101(14) as a person who is not "a creditor, equity security holder, or an insider", and who "does not have an interest materially adverse to the interest of the estate or of any class of creditors…by reason of direct or indirect relationship to, connection with, or

18

interest in, the debtor or for any other reason." *Id.; see also Angelika Films*, 227 B.R. at 38. In applying this definition, New York bankruptcy courts have held that "whether an attorney is disinterested depends on whether that attorney has 'either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors—an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one.'" *Angelika Films*, 227 B.R. at 38 (citing *In re Martin*, 817 F.2d 175, 180-81 (1st Cir. 1987)); *In re Leslie Fay Cos., Inc.*, 175 B.R. 525, 533-34 (Bankr. S.D.N.Y. 1994).

39.     When one evaluates the facts in these Bankruptcy Cases, one comes to the regrettable conclusion that Forchelli Curto's continued representation of the Debtors would taint any future proceedings in these Bankruptcy Cases and that Forchelli Curto is no longer a "disinterested person" under Bankruptcy Code § 327. *See United States Football League*, 605 F.Supp. at 1464; *Angelika Films*, 227 B.R. at 38. In a bankruptcy case involving a corporate debtor-in-possession, the debtor's corporate officers are considered officers of the court with fiduciary obligations both to the estate as a whole and to the debtor's creditors. *Continental Illinois Nat'l Bank & Trust Co. v. Wooten (In re Evangeline Ref. Co.),* 890 F.2d 1312, 1322-23 (5th Cir. 1989) (stating that those who perform duties in administration of bankruptcy estate are officers of the court); *In re Intermagnetics Am., Inc.*, 926 F.2d 912 (9th Cir. 1991). These fiduciary duties and obligations also extend to the debtor-in-possession's counsel, who owes allegiance to the debtors' estate and not to a particular stockholder, officer, or director of the entity. *In re JLM, Inc. (Zeisler & Zeisler, P.C. v. Prudential Ins. Co. of Am.),* 210 B.R. 19, 25-26 (B.A.P. 2d Cir. 1997) (noting that the attorney to the debtor-in-possession "is a fiduciary of the estate and an officer of the Court"); *In re Bellevue Place Assocs.*, 171 BR 615 (Bank. N.D. Ill. 1994). In this regard, counsel for the debtor-in-possession must balance the role of counselor to the estate with the role of officer of the court and estate fiduciary. *In re Rivers*, 167 BR

288 (Bankr. N.D. Ga. 1994).

40.    In these cases, Forchelli Curto has ignored its fiduciary duties to the Debtors' estates

and to their creditors. It now seems principally interested in keeping these cases in Chapter 11 so that

it can retain a post-confirmation role for itself (since one of its members, Mr. Gary Kushner, would

be Disbursing Agent in the Debtors' current Plan). For example, when the Operating Reports filed

by Forchelli Curto reflected more than $1 million dollars in unauthorized, post-petition payments to,

or for the benefit, of Boardwalk and Mr. Yandoli, Forchelli Curto simply filed the reports. It did not

inform the Court that these transfers had occurred, and it did not seek to withdraw or take any other

affirmative action to correct the abuses. In truth, Forchelli Curto may not have even reviewed the

reports before filing them. As counsel to the debtor-in-possession, Forchelli Curto had a duty to

review the Operating Reports, to disclose to this Court that these unauthorized transfers had

occurred, and to take immediate action to redress these violations. *JLM, Inc.*, 210 B.R. at 26 (noting

that counsel to the debtor-in-possession must inform the bankruptcy court of any derogation by the

debtor of its fiduciary duties).

41.    Even worse, when the U.S. Trustee brought these transfers to its attention, Forchelli

Curto responded by filing a Disclosure Statement in which it asserted that it was somehow

negotiating on the Debtors' behalf with Mr. Yandoli's personal counsel to return these unauthorized

transfers (even though Mr. Yandoli remains in sole control of the Debtors, who can, in turn, tell

Forchelli Curto what to do). Though Mr. Yandoli's malfeasance in operating the Debtors is now

clear for all the world to see, Forchelli Curto has done virtually nothing to protect the Debtors' and

their creditors' interests. Its refusal to act to protect the true interests of the Debtors' bankruptcy

estates can under no circumstances satisfy its obligation as counsel to the debtor-in-possession to

only pursue a course of action that "complies with the Bankruptcy Code and serves the best interests

of the estate." *JLM, Inc.*, 210 B.R. at 26.

42.    As an ethical matter, Forchelli Curto's actions also appear to violate Rule DR 5-109 of the New York Lawyer's Code of Professional Responsibility, which governs the obligations of a lawyer who represents an organization. Under DR 5-109, Forchelli Curto must take action—up to and including withdrawal as counsel—when it becomes aware that an officer, employee or other person (such as Mr. Yandoli) is or has taken action that would violate the law, would cause the organization to violate the law, or that would result in "substantial injury" to the organization.[5] N.Y. LAWYER'S CODE OF PROF'L RESPONSIBILITY DR 5-109(B)-(C) (2007). Having compromised its legal ethics, Forchelli Curto can no longer claim to be a disinterested person under § 327(a).

43.    Additional examples of Forchelli Curto's unwillingness to protect the Debtors' and their creditors' interests abound. For instance, Forchelli Curto has never filed a motion to retain (even *nunc pro tunc*) "Kramer & Shapiro"—Thurm Lee's mystery attorneys—nor sought this Court's approval of the insider loans Thurm Lee obtained. It filed the Debtors' Operating Reports late and apparently never questioned what may well be fraudulent back-dating of these reports by Mr. Yandoli. And Forchelli Curto continues to pursue confirmation of a Plan that is unconfirmable on its face because of, *inter alia*, the administrative insolvency of three of the Debtors and the Debtors' failure to comply with the Bankruptcy Code during these cases. In truth, it looks as if Forchelli Curto's main reason for keeping these cases in Chapter 11 is to preserve a post-

---

[5] DR 5-109(B)-(C) states as follows:

B.    If a lawyer for an organization knows that an officer, employee or other person associated with the organization is engaged in action, intends to act or refuses to act in a matter related to the representation that is a violation of a legal obligation to the organization, or a violation of law that reasonably might be imputed to the organization, and is likely to result in substantial injury to the organization, the lawyer shall proceed as is reasonably necessary in the best interest of the organization.

...

C.    If, despite the lawyer's efforts in accordance with DR 5-109, the highest authority that can act on behalf of the organization insists upon action, or a refusal to act, that is clearly a violation of law and is likely to result in substantial injury to the organization, the lawyer may resign in accordance with DR 2-110.

LAWYER'S CODE OF PROF'L RESPONSIBILITY DR 5-109.

confirmation role for Mr. Kushner, one of its members, as the Disbursing Agent.

44.    Taken together, these facts and circumstances all suggest that Forchelli Curto's representation of the Debtors has become so hopelessly compromised that its continued presence in these Bankruptcy Cases as Debtors' counsel will taint any future proceedings because Forchelli Curto can no longer be trusted to represent the Debtors' and their creditors' interests. *See The European Community*, 134 F.Supp.2d at 303. As a result, the circumstances in these cases satisfy even the non-bankruptcy standard in the Second Circuit for disqualifying Forchelli Curto as the Debtors' counsel. *See id*. More importantly, it is also crystal-clear that Forchelli Curto is no longer a "disinterested person" under Bankruptcy Code § 327 able to represent the debtors in these cases. 11 U.S.C. § 327(a). Forchelli Curto's actions demonstrate that it has a "meaningful incentive" to act contrary to the interests of the Debtors' estate and the Debtors' creditors and that its continued representation of the Debtors puts both the Debtors and their creditors at more than an acceptable level of risk. *See Angelika Films*, 227 B.R. at 38. By its actions (and failures to act) in these cases, Forchelli Curto has shown that it holds an interest adverse to the Debtors' estate and should be disqualified. *Id*. at 39. The Chase Entities therefore request that this Court immediately disqualify Forchelli Curto as Debtor's counsel.

**B.    This Court Should Require Forchelli Curto To Disgorge the Interim Fees Paid in these Bankruptcy Cases.**

45.    Forchelli Curto's flagrant decision in these Bankruptcy Cases to ignore its fiduciary duties to the Debtors as debtors-in-possession and to the Debtors' creditors demands that Forchelli Curto disgorge some, or all, of the interim fees it has received in these Bankruptcy Cases. As this Court is well aware, Forchelli Curto has received and been paid hundreds of thousands of dollars in interim compensation for its representation of the Debtors during these cases. Forchelli Curto should have to return these funds to the Debtors' estates.

22

46.    This Court has broad authority stemming from Bankruptcy Code §§ 105, 330, 327(a), 328(c) and 331 to order disgorgement of interim fees paid in the event of, *inter alia*, an estate's administrative insolvency, misconduct by an estate professional, or such professional's failure to qualify as a "disinterested person" under § 327(a). *See Angelika Films*, 227 B.R. at 42-43; *Matz v. Hoseman*, 197 B.R. 635, 640 (N.D. Ill. 1996) ("[I]t is without cavil that the bankruptcy court has the power to disgorge interim professional fees."). An award of interim professionals' fees is always tentative—and therefore revisable—at the end of a case. *In re Taxman Clothing Co.*, 49 F.3d 310, 314 (7th Cir. 1995). Moreover—and especially pertinent in these cases, Bankruptcy Code § 328(c) permits a bankruptcy court to deny compensation to any professional employed under § 327(a) who, at any time during the course of its employment, fails to meet § 327(a)'s requirement of disinterestedness. 11 U.S.C. § 328(c); *Angelika Films*, 227 B.R. at 42-43. A court has broad discretion to assess the facts of a given representation and to deny compensation received both before and after the point at which a professional employed by the bankruptcy estate is no longer a "disinterested person". *Angelika Films*, 227 B.R at 43. Indeed, a court should "lean strongly" toward denial of compensation and/or the disgorgement of compensation previously paid when an estate professional ceases to be disinterested. *Id.*

47.    In light of the behavior identified in this Motion, this Court should reassess the interim compensation Forchelli Curto has received in these cases to determine whether, and to what extent, Forchelli Curto is still entitled to these fees. Forchelli Curto's apparent decision to flout its fiduciary duties demands that Forchelli Curto be required to disgorge some, or all, of the compensation it has received in these cases. Forchelli Curto's behavior has been—and continues to be—egregious. While Forchelli Curto has profited handsomely from these cases so far, the Debtors' creditors face the prospect that three debtors will be administratively insolvent and that none of them

23

will pay anything to their unsecured creditors. These creditors deserve some redress for Forchelli Curto's behavior and should not have to suffer any further injury as a result of Forchelli Curto's failure to meet its fiduciary obligations.

48.    For these reasons, the Chase Entities' conclude that this Court should exercise its discretion to deny Forchelli Curto any further compensation in these cases <u>and</u> to require it to disgorge the compensation it has already received. *Angelika Films*, 227 B.R. at 42-43. Only disgorgement of fees constitutes an adequate remedy for the Debtors' creditors in these cases.

### III.    THIS COURT SHOULD REFER THIS MATTER TO THE UNITED STATES ATTORNEY'S OFFICE FOR THE EASTERN DISTRICT OF NEW YORK TO DETERMINE WHETHER ANY BANKRUPTCY CRIMES HAVE BEEN COMMITTED.

49.    Finally, the Chase Entities request that the Court notify the United States Attorney's Office for the Eastern District of New York (the "U.S. Attorney") that potential bankruptcy crimes may have been committed during these Bankruptcy Cases. A criminal investigation of Mr. Yandoli's activities in particular seems appropriate. At first blush, it appears to the Chase Entities that the following criminal statutes may have been violated:

a.    18 U.S.C. § 152—Concealment of assets, false oaths and claims, bribery;
b.    18 U.S.C. § 153—Embezzlement against the estate; and
c.    18 U.S.C. § 157—Bankruptcy Fraud.

Among other things, the unauthorized asset transfers to Mr. Yandoli from the Debtors may qualify as "concealment of assets" under 18 U.S.C. § 152 and "embezzlement against the estate" under 18 U.S.C. § 153. These transfers appear to have had no legitimate business purpose. As the Debtors themselves admit, they made unauthorized transfers of estate property to Mr. Yandoli, the Debtors' sole shareholder and president. It is reasonable to presume that Mr. Yandoli authorized and effected these transfers. As such, these transfers may well qualify as bankruptcy crimes under either 18 U.S.C. § 152 or § 153 depending on, among other things, Mr. Yandoli's mental state and intentions

regarding the transfers. By the same token, the U.S. Attorney should also review the Operating Reports and other documents filed in these Bankruptcy Cases to determine whether any of the sworn statements set forth in these filings constituted "false oaths" under 18 U.S.C. § 152 or outright bankruptcy fraud punishable under 18 U.S.C. § 157.

50.     In truth, only a thorough and complete investigation by the U.S. Attorney of the unfortunate events that have transpired in these Bankruptcy Cases is likely to uncover whether any crimes were committed. For these reasons, the Chase Entities request that this Court refer this matter to the U.S. Attorney for her further review and investigation.

## NOTICE

51.     As required under FRBP 1017, 9013 & 9014 and Local Rules 2002-2 & 9013-1, notice of this Motion has been given by ECF and/or regular United States mail to all the parties receiving service in these Bankruptcy Cases via ECF and on the Service List attached to this Motion. The Chase Entities submit that no other notice need be given.

## WAIVER OF MEMORANDUM OF LAW

52.     Pursuant to Local Bankruptcy Rule 9013-1(b), the Chase Entities respectfully request that the requirement that they file a memorandum of law in support of this Motion be deemed satisfied because this Motion presents no novel issues of law.

WHEREFORE PREMISES CONSIDERED JPMORGAN CHASE BANK, N.A., as Master Servicer and Administrator, GOLDEN IMPROVEMENT COMPANY, and GOLDEN MANAGEMENT ACCEPTANCE COMPANY request that: 1) these Bankruptcy Cases be converted to cases under Chapter 7 of the Bankruptcy Code, 2) Forchelli Curto be disqualified as counsel to the Debtors in these Bankruptcy Cases, 3) Forchelli Curto be required to disgorge some or all of the interim fees it has received in these Bankruptcy Cases, 4) this Court notify the U.S.

Attorney that federal bankruptcy crimes may have been committed in these cases, and 5) this Court

grant the Chase Entities any other relief to which they may be entitled at law or equity.

Dated:      September 7, 2007.

LOCKE LIDDELL & SAPP PLLC

By:   */s/ Thomas H. Grace*
      Thomas H. Grace
      Texas Bar No. 00785453
      Federal I.D. No. 12618
      W. Steven Bryant
      Texas Bar No. 24027413
      Federal ID No. 32913
      600 Travis Street, Suite 3400
      Houston, Texas 77002-3095
      Phone: (713) 226-1200
      Fax: (713) 223-3717

-and-

SILVERMAN PERLSTEIN & ACAMPORA LLP

By:   */s/ Edward M. Flint*

      Edward M. Flint (EMF #7001)
      A Member of the Firm
      100 Jericho Quadrangle, Suite 300
      Jericho, New York 11753
      Phone: (516) 479-6300
      Fax: (516) 945-6366

      ATTORNEYS FOR JPMORGAN CHASE BANK,
      N.A., as Master Servicer and Administrator,
      GOLDEN IMPROVEMENT COMPANY, and
      GOLDEN MANAGEMENT ACCEPTANCE
      COMPANY

26

Forchelli, Curto, Schwartz,
Mineo, Carlino & Cohn, LLP
330 Old Country Road, P.O. Box 31
Mineola, New York 11501
(516) 248-1700
Attorneys for Debtors
By Gary M. Kushner, Esq. (GMK-9441)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 Case No. 06-42541 |
| | Chapter 11 Case No. 06-42559 |
| YANDOLI FOODS, INC. | Chapter 11 Case No. 06-42558 |
| | Chapter 11 Case No. 06-42556 |
| | Chapter 11 Case No. 06-42555 |
| | Chapter 11 Case No. 06-42551 |
| | Chapter 11 Case No. 06-42544 |
| | Chapter 11 Case No. 06-42552 |

Jointly Administered

**DEBTORS' RESPONSE TO
MOTION TO CONVERT**

Debtors,
------------------------------------------------------------X

To the Honorable Elizabeth S. Stong,
United States Bankruptcy Judge:

Yandoli Foods, Inc., Rockaway Parkway Foods, Inc., Seaview Avenue Foods,

Inc., Flatlands Avenue Foods, Inc., Avenue V. Foods, Inc., Neptune Avenue Foods, Inc.,

Nostrand-Hillel Foods, Inc. and Thurm-Lee Foods, Inc. (collectively the "Debtors"), by their

counsel, Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn, LLP, respectfully represent as

follows:

## **Preliminary Statement**

1.    JP Morgan Chase Bank, N.A. ("Chase"), as Master Servicer and Administrator, Golden Improvement Company ("Impco") and Golden Management Acceptance Company ("Golden Mac", and collectively with Chase and Impco, hereinafter referred to as the "Chase Entities") have filed an application to convert the Debtors' Chapter 11 cases to cases under chapter 7, to disqualify Debtors' bankruptcy counsel and to disgorge interim attorneys' fees previously paid to Debtors' counsel ( the "Motion")[1].

2.    In support of the Motion, the Chase Entities argue that conversion of the Chapter 11 cases is warranted because:

(a)    the Debtors have made unauthorized post-petition transfer to insiders;

(b)    the Debtors have obtained unauthorized post-petition credit from insiders;

(c)    the Debtors have employed professionals without this Court's approval;

(d)    the Debtors have not complied with their Debtor-in-possession reporting duties; and

(e)    the Debtors have failed to pay post-petition taxes and generally employed unacceptable financial controls.

3.    As developed below, the technical grounds raised in the Motion - many of which describe matters with factual accuracy - nevertheless do not warrant the conversion

---

[1] By letter filed on October 12, 2007, the Chase Entities have withdrawn, without prejudice, that aspect of the Motion which seeks (i) to disqualify Debtors' counsel and (ii) entry of an order disgorging interim fees previously paid to Debtors' counsel.

of these cases at this juncture.

4.    The Debtors are not operating their businesses which have been sold pursuant to orders of this Court.  Moreover, several creditors with substantial claims, including the Internal Revenue Service, do not believe that a conversion is in their best interests or in the best interest of other creditors. Rather, these creditors favor the appointment of a responsible party designated under a plan who would pursue claims, including avoidance actions, to the extent deemed economical and justified. Simply stated, the Chase Entities' request for conversion does not serve or promote the best interests of the estates or creditors as is required under §1112(b) of the Bankruptcy Code.  A conversion to chapter 7 or the appointment of a chapter 11 trustee would only delay distributions to creditors and dilute the final payout in favor of unnecessary administrative expenses.

5.    For the reasons that follow, the Court should approve the appointment of a responsible party and deny the relief sought in the Motion.

### Background Facts

6.    On July 21, 2006 (the "Petition Date"), the Debtors filed their respective chapter 11 petitions.  Each of the Debtors is owned by Richard Yandoli.

7.    On July 26, 2006, the Court entered an order authorizing the joint administration of the Debtor estates.

8.    Yandoli Foods was the administrative arm of the Debtors.  Each of the remaining Debtors operated a single McDonald's franchise.

-3-

9.    By order of the Court dated July 27, 2006, the Debtors were authorized to continue to pay compensation to their employees, including Richard Yandoli and Charles Melnick, an in-house accountant employed by Yandoli Foods. As was disclosed at the inception of the case, without objection from any party in interest, Mr. Melnick was permitted to continue in his employment with the Debtors to, *inter alia*, prepare and file the monthly operating reports required in this case. As set forth in the foregoing order, and on the record of the hearing which preceded it, the Debtors were authorized to pay Mr. Yandoli compensation in the amount of $500,000.00 per annum.

10.    In December 2006, the UST had filed and then adjourned a motion to convert the Debtors' cases on account of failing to timely file operating reports. Adjournments of the motion to convert were consented to by the UST in order to complete the sales of the Debtors' franchises. The Chase Entities eventually joined in the motion to convert.

11.    In March and April 2007, the Debtors sold substantially all of their assets pursuant to orders of this Court. The last of the closings occurred on April 27, 2007. The proceeds of each sale have been deposited into separate interest bearing escrow accounts (the "Sale Escrow Accounts"). The Debtors have not been operating since April 27, 2007.

12.    Neither Richard Yandoli nor Charles Melnick have access to the Sale Escrow Accounts. The Sale Escrow Accounts have at all times been maintained by Forchelli, Curto, counsel for the Debtors, in accordance with prior orders of this Court.

-4-

13.     During the time the Debtors were operating, by mid-March, 2006, it became patently obvious that the completion of operating reports would linger without the assistance of an outside accounting firm.  At the insistence of Forchelli Curto, the Debtors interviewed several firms and ultimately selected Lazar Sanders Thaler & Associates ("Lazar Sanders") as their accountant.

14.     The Court authorized the retention of Lazar Sanders by order dated April 4, 2007.

15.     Upon the retention of Lazar Sanders, the Debtors negotiated with the UST and the Chase Entities towards a resolution of the motion to convert.  In consideration for the Debtors' commitment to file all delinquent operating reports by a negotiated date certain, as well as the completion and filing of a disclosure statement by a date certain, the UST, without objection from the Chase Entities, agreed to withdraw the motion to convert.

16.     The Debtors timely met their deadlines under their agreement with the UST and the Chase Entities, a feat which was only accomplished with the valuable assistance of Lazar Sanders.  All delinquent operating reports were timely filed by May 22, 2007 and the original disclosure statement was timely filed on June 14, 2007.

17.     Upon the completion of the operating reports, discussions with Richard Yandoli and Forchelli Curto ensued, primarily initiated by Lazar Sanders, about its observation of a significant number of transfers and/or payments which were made to or for the benefit of Richard Yandoli including, numerous payments to "petty cash", credit card

payments and payments to individuals or entities which seemingly were not part of the normal creditor body of the Debtors. In addition to his compensation package approved by the Court, it appeared to Lazar Sanders that Richard Yandoli was making payments in reduction of his shareholders' loan.

18.    At the time of the filing of the original disclosure statement on June 14, 2007, however, the full extent of any unauthorized transfers to or for the benefit of Richard Yandoli were not known. As such, for purposes of disclosure, the original disclosure statement accurately provided that an investigation into the nature and extent of unauthorized transfers to Richard Yandoli was ongoing.

19.    The original hearing on the adequacy of the disclosure statement was scheduled for July 17, 2007. Prior to the hearing date, counsel for the Debtors' and Brian Hufnagel, Esq. of the UST, had a lengthy telephone conference in which the UST requested that additional disclosures be made by the Debtors.

20.    In summary fashion, the UST asked Forchelli Curto to provide additional disclosures in a number of areas. The UST was particularly concerned about the extraordinary frequency and amount of payments made to Mr. Yandoli which were reflected on the operating reports and requested disclosure about the nature of these transactions. The UST was advised that Lazar Sanders had already been requisitioned by Forchelli Curto to prepare an analysis of transfers made to or for the benefit of Richard Yandoli. The UST was also advised that Forchelli Curto instructed Lazar Sanders to thoroughly review the Debtors'

books and records to investigate whether there were any other unusual transactions.

21.    In or about early July, Lazar Sanders had finished its review.  Forchelli Curto conferenced with Richard Yandoli and Lazar Sanders about the results of the investigation.   As a result of these discussion, certain adjustments became necessary and further investigation into the Debtors' books and records was required by Lazar Sanders.

22.    In order to provide the information requested by the UST, Lazar Sanders reviewed the Debtors' payroll records to determine Mr. Yandoli's compensation.  Lazar Sanders also reviewed backup documentation including credit card bills to determine whether payments were made to or for Richard Yandoli's  benefit or whether the payments were for legitimate business expenses.  Likewise, a similar investigation was performed in connection with any transactions between the Debtors and Boardwalk Foods, an entity that is repeatedly targeted in the Motion.  Lazar Sanders dedicated a senior accountant and several other personnel to the Debtors' offices in Port Chester on a daily basis until the project was completed.

23.    Thereafter, Forchelli Curto had extensive discussions with Mr. Yandoli, Mr. Melnick and Terry Lazar regarding the results of the accounting firm's investigation to insure that it was accurate and complete.  The results of these efforts, insofar as it concerned the potential actions against insiders, were then incorporated into an amended disclosure statement which was timely filed on August 20th.

24.    The amended disclosure statement revealed that Richard Yandoli had

wrongfully overpaid himself approximately $354,000 from assets of the estates.  The amended disclosure statement further indicated that Forchelli, Curto had already spoken with Richard Yandoli's personal counsel to discuss how the funds were going to be repaid to the estate. Last, but no less important, the amended disclosure statement further indicated that Lazar Sanders' investigation was still ongoing with respect to the discovery of potential avoidance actions against other persons or entities, and the extent of same.

25.    Following the filing of the amended disclosure statement, the Chase Entities filed an opposition to the adequacy of the amended disclosure statement (the "Chase Objection").

26.    It was in the Chase Objection that many of the same allegations which support the Motion first appeared.  Indeed, the claims of wrongdoing by the Debtors which the Chase Entities now assert, and previously were asserted in the Chase Objection, are drawn expressly from facts disclosed by the Debtors in both the original disclosure statement, the amended disclosure statement and the operating reports.

27.    The Motion has been constructed for its facial appearance rather than its substance.  As set forth in their reply to the Chase Objection, it was the Debtors contention that the Chase Entities were pursing a self-serving agenda, rather than fostering the interests of disclosure.[2]  The amended disclosure statement revealed the same information about wrongful transfers in a manner that provided creditors with sufficient information to make

_____

[2] Indeed, as set forth in the Motion, one of the objections in the Chase Entities Motion is to refer matters to the United States Attorney's office for investigation.

-8-

an informed decision whether to accept or reject the Debtors' liquidating plan. The current Motion unnecessarily asserts, in an inflammatory fashion, the very same information provided by the Debtors.

28.    True to their word as indicated in the amended disclosure statement, the Debtors have completed their analysis of post-petition transfers made to Richard Yandoli and other persons or entities. Annexed hereto as Exhibit "1" is an analysis prepared by Lazar Sanders which identifies, with specific detail, the post-petition payments made to Richard Yandoli which exceed his authorized compensation and the existence of potential avoidance actions against other persons or entities (the "Analysis").

29.    In summary fashion, the Analysis identifies that transfers were made to or for the benefit of Richard Yandoli in excess of his allowed compensation in the amount of $358,223.29. The Analysis further identifies that, aside from potential vendor actions, the Debtors have actions under §549 of the Bankruptcy Code in the amount of $178,739.01 against American Express, Joann Leon (a former bookkeeper of the Debtors) and various individuals who were wrongfully paid estate funds during the chapter 11 case.[3]

30.    The Chase Entities and the Debtors agree that the existence of wrongful transfers must be remedied. However, the Chase Entities and the Debtors vastly differ on

_____

[3] Lazar Sanders is presently engaged in a similar analysis of pre-petition transfers which would also give rise to avoidance actions in favor of the Debtors.

the remedy which must be implemented.[4]

31.    In an effort to reach a resolution of the Motion, counsel for the Chase
Entities, Ed Flint, Esq. and the undersigned counsel have had several meaningful discussions
regarding the best way to proceed.  The Chase Entities' concern was accountability for
Richard Yandoli's actions. There is little doubt, as gleaned from the Motion, that the Chase
Entities primary concern is to pursue Richard Yandoli civilly and criminally. Forchelli
Curto's concern is what is in the best interests of creditors and the estate.  It was pointed out
to Mr. Flint that the most significant creditor of these estates, the IRS, was not in favor of
conversion.

32.    In order to verify the IRS' position, on October 12, 2007, Mr. Flint
engaged in a telephone conference with Forchelli Curto and Bernard Karoff, Esq. of the
Internal Revenue Service.  Mr. Flint was advised that it was not the IRS' preference to
convert the chapter 11 cases for several reasons, including the fact that, typically, a
conversion resulted in (I) unnecessary administrative expenditures which served to dilute
distributions to taxing authorities and (ii) unnecessary delays in receiving distributions.  Mr.
Karoff emphasized that the IRS' preference to appoint a responsible party was due to the fact
that the Debtors were no longer operating and the case was at a stage where a liquidating
plan could be confirmed in a rather short time period.

---

[4] The Debtors, Forchelli Curto and Richard Yandoli are all in agreement that under no
circumstance can Richard Yandoli continue in any capacity with the management of the Debtors
or the final administration of these estates. As such, Richard Yandoli has agreed to immediately
tender his resignation in favor of the appointment of an independent responsible party.

33.    Mr. Karoff favored the appointment of a responsible party and even endorsed the recommendation by the Chase Entities of Brian Sirota, who had been appointed as a responsible party in several other cases known to Mr. Flint.[5]  Notably, Mr. Sirota indicated to Forchelli Curto that if selected, he would be amenable to negotiate a fixed rate fee for his services.

34.    Similarly, Forchelli Curto was also informed that New York State, as a result of a separate conversation between Mr. Flint and Neal Mann, Esq., counsel for the New York State Department of Taxation and Finance, also shared the same view as the Internal Revenue Service - - opposing conversion in favor of the appointment of a responsible party.

35.    As Mr. Flint well knows, a responsible party is more than capable of independently winding down the affairs of the Debtors.  The Chase Entities are also aware that a final version of an amended disclosure statement can now be filed - a document which will contain substantially all of the additional disclosures requested in the Chase Objection.

36.    A capable responsible party can make final changes to the disclosure statement and liquidating plan as he or she sees fit, including a clear statement as to what the intentions of the Debtors are with respect to the prosecution or settlement of all avoidance

---

[5] Mr. Karoff specifically provided his consent to Mr. Flint and Debtors' counsel to relay the position of the IRS to the Court in the absence of his formal appearance.

actions, including claims against Richard Yandoli.[6]

      37.    Thus, although the factual complaints raised by the Chase Entities are not inaccurate, they are, in a real sense, "old news", having been substantially addressed in a significant and tangible way previously, as noted above, which work continues to date - - to the benefit of all creditors and the estates. The Chase Entities' Motion merely recycles the previous Chase Objection, but now seeking conversion. However, since the basis for the Chase Objection has been substantially addressed the current basis for the Chase Motion is severely attenuated.

      38.    As noted by the agreement of substantial independent creditors - - the IRS and the New York State Department of Taxation and Finance - - with the concept that the Chase Motion should be denied in favor of the appointment of a responsible party, the Chase Motion should be denied because it does not serve the interests of creditors or the estates. Moreover, there is no showing that denial of the Chase Entities' Motion will prejudice the Chase Entities. Instead, the Chase Entities - - and all other creditors and the estates - - will be protected and stand to benefit from denial of the Chase Entities' Motion

_____

[6] It should come as no surprise to this Court that there are already ongoing negotiations with Richard Yandoli's personal lawyer regarding a resolution of the post-petition avoidance claims of the Debtors. Obviously, until the Court issues an order determining how these cases will proceed, no application to settle the claim has been submitted. However, preliminarily, Richard Yandoli has deposited a check with his counsel, Harvey Cavayero, Esq. in the amount of $50,000 and has delivered to Mr. Cavayero deeds to six (6) unencumbered condominiums in Waterbury, Connecticut which are titled to KKR Properties LLC, an entity owned by Mr. Yandoli. The equity in these condominiums exceeds $200,000.00. Mr. Cavayero has made it clear that Mr. Yandoli intends to fully repay the estates and cooperate in any further investigations which become necessary.

and the appointment of a responsible party.

        39.    In the interest of brevity, the Debtors incorporate by reference their reply to the Chase Objection to the extent necessary to dispel some of the other wrongful assertions upon which the Motion is based.  As such, they will not be repeated herein except to note that the appointment of a trustee, operating or otherwise, cannot remedy the Debtors' failure in paying post-petition taxes, filing operating reports and other issues which are referred to by the Chase Entities throughout the Motion.

Dated: Mineola, New York
       October 15, 2007

                              Forchelli, Curto, Schwartz,
                              Mineo, Carlino & Cohn, LLP
                              Attorneys for Debtors

                   By:    /s/Gary M. Kushner
                            Gary M. Kushner (GMK-9441)
                            A Partner of the Firm
                            330 Old Country Road
                            P.O. Box 31
                            Mineola, New York 11501
                            (516) 248-1700

Jaspreet S. Mayall, Esq. (JSM 0615)                                    **11-6188872**
Richard J. McCord, Esq. (RJM 3290)
CERTILMAN BALIN ADLER & HYMAN, LLP
Counsel to the Chapter 7 Trustee, Richard J. McCord, Esq.
90 Merrick Avenue
East Meadow, NY 11554
(516) 296-7000

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X          Chapter 7
In re:                                                                      Case Nos.:    06-42541-ess
                                                                                          06-42544-ess
YANDOLI FOODS, INC., AVENUE V. FOODS, INC.,                                                06-42551-ess
FLATLANDS AVENUE FOODS, INC., NEPTUNE                                                      06-42552-ess
AVE. FOODS, INC., NOSTRAND-HILLEL FOODS,                                                   06-42555-ess
INC., ROCKAWAY PARKWAY FOODS, INC.,                                                        06-42556-ess
SEAVIEW AVENUE FOODS, INC. and THURM-LEE                                                   06-42558-ess
FOODS, INC.,                                                                              06-42559-ess

                                          Debtors.                          (Jointly Administered)
-----------------------------------------------------------------X
RICHARD J. McCord, ESQ., As Chapter 7 Trustee of the
estates of Yandoli Foods, Inc., *et. al.*

                                          Plaintiff,                        **COMPLAINT**

             - against -

RICHARD YANDOLI and JUDITH YANDOLI,                                         Adv. Proc. No.:

                                          Defendant.
-----------------------------------------------------------------X

          Plaintiff, Richard J. McCord, Esq., the Chapter 7 Trustee (the "Trustee") of the

bankruptcy estates of Yandoli Foods, Inc.; Thurm-Lee Foods, Inc.; Neptune Ave. Foods, Inc.;

Flatalands Avenue Foods, Inc.; Rockaway Parkway Foods, Inc.; Seaview Avenue Foods, Inc.;

Avenue U Foods, Inc.; and Nostrand-Hillel Foods, Inc. (collectively the "Debtors"), by and

through his attorneys, Certilman Balin Adler & Hyman, LLP, complaining of the defendants,

Richard Yandoli and Judith Yandoli ("Defendants"), respectfully alleges and sets forth to this

Court as follows:

## Nature of the Adversary Proceeding

1.      This Adversary Proceeding is brought against the Defendants seeking an Order pursuant to 11 U.S.C. §105(a) of the Bankruptcy Code ("11 U.S.C. §101 *et. seq.*") and Rules 64 and 65 of Federal Rules of Civil Procedure ("Fed.R.Civ.P."), as made applicable herein by Rules 7064 and 7065 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P."): (a) granting the Trustee a pre-judgment order of attachment attaching all of the assets of the defendants Richard Yandoli and Judith Yandoli ("Defendants"); (b) granting the Trustee an *ex parte* temporary restraining order and pending the hearing and a determination of this Motion, restraining and enjoining the Defendants, their relatives, agents, servants, employees, former employees, or any other person or entity acting on their behalf, or purportedly acting on their behalf, from using, dissipating, assigning, encumbering, hypothecating, transferring, disposing of, distributing, commingling, the Defendants' assets, either individually held or jointly held with other individuals or entities, wherever located, including, but not limited to, real property, cash, accounts receivable, notes, chattel paper, corporate books and records whether physically maintained, electronically maintained or maintained on paper, and all other property of the Defendants; (c) granting the Trustee a preliminary injunction enjoining the Defendants, their relatives, agents, servants, employees, former employees, or any other person or entity acting on his behalf, or purportedly   acting on their behalf, from using, dissipating, assigning, encumbering, hypothecating, transferring, disposing of, distributing, commingling, or exercising control over the Defendants' assets, either individually held or jointly held, with other individuals or entities, wherever located including, but not limited, to real property, cash, accounts receivable, notes chattel paper, corporate books and records whether physically maintained, electronically maintained or maintained on paper, and all other property of the

Defendants; and (d) for such other and further relief as this Court deems just and proper to protect and preserve the Debtor's estate; and after due deliberation and sufficient cause appearing therefore and no other notice being necessary or required, except as set forth herein, and upon all prior proceedings heretofore had herein.

2.     This action arises out of the fraudulent diversion of the Debtors' assets to or for the benefit of the Defendants.

3.     The Defendants have diverted and transferred millions of dollars from the Debtors, in an exact amount to be determined at trial.

4.     The funds were used by the Defendants to pay for unauthorized, non-business related expenses, including, but not limited to, personal mortgage expenses; personal car payments; personal credit card payments; and other personal living expenses.

## Jurisdiction and Venue

5.     The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§157 and 1334.

6.     Venue of this case and of this Adversary Proceeding is proper pursuant to 27 U.S.C. §§1408 and 1409.

7.     This Adversary Proceeding is a core proceeding as defined in 28 U.S.C. §§157(b)(1), 157(b)(2)(A), 157(b)(2)(E) and 157(b)(2)(O).

## Parties

8.     The Plaintiff, Richard J. McCord, Esq., is the Chapter 7 Trustee of the estates of the Debtors.

1956362-1
1956362.1

9.      Richard Yandoli ("Richard"), upon information and belief, was and at all times is a 100% shareholder and the President of the Debtors and resides at 54 Indian Field Road, Greenwich, Connecticut.

10.     The defendant Judith Yandoli ("Judith"), upon information and belief, resides at 54 Indian Field Road, Greenwich, Connecticut.

### Background Facts

11.     On July 21, 2006, (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of title 11 of the United States Code.  Pursuant to Court Order dated July 26, 2006, the Chapter 11 cases were jointly administered.

12.     On October 30, 2007 the cases were converted to ones under chapter 7 of the Bankruptcy Code ("Conversion Date").

13.     On October 31, 2007, Plaintiff was appointed as the Chapter 7 Trustee of the estates pursuant to 11 U.S.C. §702(d).

14.     Upon information and belief, Richard was at all times the 100% shareholder and president of the Debtors.

15.     Richard is the owner of each of the Debtors which, in turn, owned and operated a single McDonald's franchise.

16.     Richard also owned and operated the debtor Yandoli Foods, Inc., which did not own a store but provided valuable general and administrative services to each of the other seven (7) Debtors.

17.     The Debtors did not pay and have significant obligations to taxing authorities in excess of $6,109,195.17.

18.     Both the Internal Revenue Service and the New York State Department of Taxation and Finance filed liens and/or warrants and thereafter escalated collection efforts against the Debtors.

19.     Upon information and belief, to the detriment of the Debtors, the estates and their creditors, Richard, a 100% shareholder of the Debtors, willfully and knowingly failed to pay taxing authorities.

20.     During the times relevant herein, Richard was an officer and director of the Debtors and by acting in such capacity, upon information and belief, claims are being asserted against Richard.

21.     That upon information and belief, Richard is a responsible person as such term is defined in the relevant tax laws and regulations including, but not limited to Regulation §301.6672-1 and 28 U.S.C. §1133 and has been designated as a responsible party by the Court pursuant to Court Order dated December 13, 2007.

22.     Upon information and belief, Richard made a decision to pay himself and other creditors and vendors at the expense and detriment of the Debtors, the estates and their creditors.

23.     Upon information and belief, subsequent to the Petition Date, Richard has transferred or authorized the transfer in excess of $1,086,000.00 to himself and for the benefit of Judith in addition to the salary he withdrew in the sum of $328,000.00 to the detriment of the Debtors, the estates and their creditors.

24.     There is no documentary proof establishing that Richard gave fair consideration for these transfers.

25.     Richard admitted in the Debtors' first amended disclosure statement that Richard received the unauthorized post-petition transfers in the approximate amount of $354,902.05.

26.    However, as set forth above, the Trustee's accountants have reviewed the Debtors' books and records which reveal that Richard received transfers in excess of $1,086,000.00, not including his salary.

27.    Upon information and belief, in addition to the above, Richard authorized post-petition withdrawals of in excess of $200,000.00 in the form of petty cash , to the detriment of the Debtors, the estates and their creditors for which the Defendants did not give fair consideration.

28.    Upon information and belief, Richard authorized the pre-petition withdrawal of monies in the form petty cash, in an amount to be determined, to the detriment of the Debtors, the estates and their creditors for which he did not give fair consideration.

29.    Upon information and belief, in addition to the above, Richard authorized both pre-petition and post-petition, unauthorized payments from the Debtors' funds to pay his and Judith's personal mortgages, credit cards and car payments and other personal expenses all to the detriment of the Debtors, the estates and their creditors for which Defendants did not give fair consideration.

30.    Upon information and belief Judith received a gross salary of $44,000.00 from the Debtors estates and did not provide any services to the Debtors and did not give fair consideration.

31.    Upon information and belief, Judith received the benefit of both pre-petition and post-petition unauthorized transfers for her mortgage payments, credit card statements and the use of the petty cash for which she did not give fair consideration. All of the payments set forth in paragraph "22" through "31" are referred to as "Transfers".

32.    Upon information and belief, Richard authorized the improper post-petition transfer of over $132,000.00 to the Defendant's entity Boardwalk Foods, Inc., a non-debtor.

33.    Upon information and belief, Boardwalk Foods, Inc. is an entity solely owned by Richard and Richard is the 100% shareholder and president of Boardwalk Foods, Inc.

34.    According to the Debtors' books and records, Boardwalk Foods, Inc. owes the sum of $451,415.00 to six (6) of the seven (7) Debtors.

35.    Upon information and belief, Richard allowed the transfers to Boardwalk Foods, Inc. with the full intent that Boardwalk Foods, Inc. would not repay said sums.

36.    That Richard allowed the sum to remain uncollected by the Debtors.

37.    Upon information and belief, Richard withdrew or allowed said sums to be withdrawn out of Boardwalk Foods, Inc. for his benefit.

## AS AND FOR A FIRST CLAIM AGAINST RICHARD

38.    The Trustee repeats and realleges each and every allegation as set forth in paragraphs "1" through "37" as more fully set forth word for word herein.

39.    Richard owned 100% of the shares of the Debtors and as such, the Debtors were closely held corporations.

40.    As closely held corporations, Richard as a shareholder owed a fiduciary duty to the Debtor corporations.

41.    Upon information and belief, Richard breached his fiduciary duty to the Debtors, by taking steps which undermined the business, the Debtors and the reorganization efforts of the Debtors by transferring the Debtors' monies and assets for his own benefit.

1956362-1
1956362 1

42.    Based upon the foregoing, judgment should be entered against Richard in an amount to be determined at trial but in no event less than the sum of Five Million ($5,000,000.00) Dollars, which is representative of any damage, money and/or value of any property which he has acquired for himself, or transferred to others or lost or wasted, by the aforesaid violations of his fiduciary duty.

## AS AND FOR A SECOND CLAIM AGAINST RICHARD

43.    The Trustee repeats and realleges each and every allegation as set forth in paragraphs "1" through "42" as more fully set forth word for word herein.

44.    That upon information and belief, Richard, as the President of the Debtors, failed to make tax payments to all taxing authorities.

45.    Upon information and belief, Richard at all relevant times was a signatory on all of the Debtors' checking accounts and Debtors' tax returns and taxing authority forms.

46.    Upon information and belief, Richard failed to make all payments.

47.    Upon information and belief, as a result of the Defendant's failure to remit said taxes, the Debtors have been damaged in an amount in excess of Six Million One Hundred Thousand ($6,100,000.00) Dollars, plus interest, penalties and costs thereon that is due and owing to the taxing authorities.

48.    Richard, as a signatory and responsible party on the tax returns is personally liable for any unpaid taxes due and owing by the Debtors to the taxing authorities.

49.    Based upon the foregoing, Plaintiff is entitled to judgment against Richard in an amount to be determined at trial but in no event less than the sum of Six Million One Hundred Thousand ($6,100,000.00) Dollars, plus appropriate interest, penalties and costs.

## AS AND FOR A THIRD CLAIM AGAINST RICHARD

50.    The Trustee repeats and realleges each and every allegation as set forth in paragraphs "1" through "49" as more fully set forth word for word herein.

51.    Pursuant to New York's Business Corporation Law ("BCL") §§715 and 717, Richard, as president of the Debtors, owed the Debtors the highest duty of care and loyalty.

52.    In failing to make the payment of taxes on behalf of the Debtors, Richard breached his duty of care to the Debtors.

53.    Pursuant to BCL §720, Richard is liable for any breach as to his fiduciary duties and must account to the Trustee; and is liable for any damages resulting therefrom.

54.    Richard's conduct has caused the Debtors to suffer damages in excess of Six Million One Hundred Thousand ($6,100,000.00) Dollars, plus interest, penalties and costs.

55.    Based upon the foregoing, Plaintiff is entitled to judgment against Richard in an amount to be determined at trial but in no event less than the sum of Six Million One Hundred Thousand ($6,100,000.00) Dollars, plus appropriate interest, penalties and costs.

## AS AND FOR FOURTH CLAIM AGAINST RICHARD

56.    The Trustee repeats and realleges each and every allegation as set forth in paragraphs "1" through "55" as more fully set forth word for word herein.

57.    Upon information and belief, Richard converted to his own benefit cash receipts of the Debtors from on or about the inception of the first entity Thurm-Lee Foods in September 1990 through and subsequent to the petition date which is property of the Debtors' estates, and he has converted and retained them for his own use and benefit.

58.    Richard has wrongfully, willfully and without authorization or legal justification, withheld such sums.

59.    By reason of the foregoing, Richard has converted those cash receipts to his own use, and the Trustee is entitled to judgment and recovery in an amount to be determined at trial, together with interest thereon.

## AS AND FOR A FIFTH CLAIM AGAINST RICHARD

60.    The Trustee repeats and realleges each and every allegation as set forth in paragraphs "1" through "59" as more fully set forth word for word herein.

61.    Pursuant to BCL §§715 and 717, Richard, as the president and an officer of the Debtors, owed the Debtors the highest care and loyalty.

62.    In converting funds for his own benefit, Richard had his own self-interest above that of the Debtors.

63.    In placing his own interest above those of the Debtors, Richard breached his fiduciary duty of care and loyalty which obligated him to act in the best interest of the Debtors at all times.

64.    Pursuant to BCL §720, Richard is liable to the estates for the breach of his fiduciary duties and any damages resulting therefrom.

65.    Upon information and belief, the Defendant's conduct has caused the Debtors to suffer damages in an amount to be determined at trial but in no event less than Five Million ($5,000,000.00) Dollars.

66.    Based upon the foregoing, Plaintiff is entitled to judgment against Richard in a sum to be determined at trial, but in no event less than Five Million ($5,000,000.00) Dollars, plus interest.

1956362-1
1956362.1

## AS AND FOR A SIXTH CLAIM AGAINST THE DEFENDANTS

67.     The Trustee repeats and realleges each and every allegation as set forth in paragraphs "1" through "66" as more fully set forth word for word herein.

68.     Upon information and behalf, all monies diverted by Richard to himself and Judith for the unauthorized, non-business related expenses and cash, constitute property of the Debtors' estates under 11 U.S.C. §541(a).

69.     Based upon the foregoing, under 11 U.S.C. §§541 and 542, the Trustee's entitled to judgment against the Defendants in an amount to be determined at trial, but in no event less then five million ($5,000,000.00) dollars plus appropriate interest thereon.

## AS AND FOR A SEVENTH CLAIM AGAINST THE DEFENDANTS

70.     The Trustee repeats and realleges each and every allegation as set forth in paragraphs "1" through "69" as more fully set forth word for word herein.

71.     The Debtors' assets have been wrongfully diverted.

72.     Plaintiff has no adequate remedy at all.

73.     Based upon the foregoing, Plaintiff is entitled to an order directing the Defendants to account for and return all monetary benefits received by them from or on behalf of the Debtors.

## AS AND FOR A EIGHTH CLAIM AGAINST THE DEFENDANTS

74.     The Trustee repeats and realleges each and every allegation as set forth in paragraphs "1" through "73" as more fully set forth word for word herein.

75.     In committing the wrongful acts alleged herein, Defendants acted fraudulently, willfully, maliciously, and with callous and intentional disregard for the Debtors' and their creditors' interests.

1956362-1
1956362.1

76.     Based upon the foregoing, Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial.

## AS AND FOR A NINTH CLAIM AGAINST THE DEFENDANTS

77.     The Trustee repeats and realleges each and every allegation as set forth in paragraphs "1" through "76" as more fully set forth word for word herein.

78.     Upon information and belief, any pre-petition transfers to the Defendants for unauthorized, non-business related and personal expenses were without fair consideration.

79.     Based upon the foregoing, the transfers are fraudulent conveyances under the Law and the Trustee is entitled to a judgment: (a) avoiding all of the transfers pursuant to New York State Debtor and Creditor Law §274, 278 and 279; (b) setting aside the transfer; and (c) in an amount to be determined at trial but in no event less than Five Million ($5,000,000.00) Dollars plus appropriate interest thereon.

## AS AND FOR AN TENTH CLAIM AGAINST DEFENDANTS

80.     Trustee repeats and realleges each and every allegation as set forth in paragraphs "1" through "79" as more fully set forth word for word herein.

81.     Upon information and belief, the Debtors did not receive fair consideration for the Transfers.

82.     Upon information and belief, at the time the Defendants, on behalf of the Debtors, accomplished the Transfers, they did so with the intent to hinder, delay and defraud the Debtors and their creditors.

83.     The Transfers constitute fraudulent conveyances pursuant to New York State Debtor and Creditor Law §276.

84.    By reason of the foregoing, Trustee is entitled to a judgment (a) avoiding the transfers pursuant to New York State Debtor and Creditor Law §§276, 278 and 279 and pursuant to 11 U.S.C. §§550(a) and 551; (b) setting aside the transfers; and (c) in an amount as yet undetermined but which in no event is less than Five Million ($5,000,000.00) Dollars plus appropriate interest thereon.

### AS AND FOR AN ELEVENTH CLAIM AGAINST THE DEFENDANTS

85.    The Trustee repeats and realleges each and every allegation as set forth in paragraphs "1" through "84" a more fully set forth word for word herein.

86.    Upon information and belief, the Debtors did not receive any consideration for the Transfers.

87.    Upon information and belief, at the time of the Transfers, the Debtors had incurred, were intending to incur or believed to incur debts beyond their ability to pay them as they incurred.

88.    The Transfers constituted a fraudulent conveyance in violation of New York's Debtor and Creditor Law §275.

89.    Based upon the foregoing, under 11 U.S.C. §544(b), Plaintiff is entitled to a judgment (a) awarding the transfers pursuant to New York's debtors and Creditor Law §275 and pursuant to 11 U.S.C. §§550(a) and 551; (b) setting aside the transfers; and (c) in an amount to be delivered at trial but in no event less that Five Million ($5,000,000.00) Dollars plus appropriate interest thereon.

### AS AND FOR AN TWELFTH CLAIM AGAINST THE DEFENDANTS

90.    The Trustee repeats and realleges each and every allegation as set forth in paragraphs "1" through "89" as more fully set forth word for word herein.

1956362-1
1956362 1

91.     Upon information and belief, at all times relevant, the Defendants may have diverted and/or secreted the Debtors' assets for their personal use and benefit, to the detriment of the Debtors, and the Debtors' creditors and the overall administration of the estates.

92.     Upon information and belief, the Defendants intended to defraud the Debtors' creditors and frustrate the enforcement of any judgment that may be entered against them or the Debtors.

93.     By reason of the foregoing, the Trustee is entitled to an Order of Attachment against the Defendants pursuant to 11 U.S.C. §105(a), Fed.R.Bankr.P. 7065 and CPLR §6201.

## AS AND FOR AN THIRTEENTH CLAIM AGAINST THE DEFENDANTS

94.     The Trustee repeats and realleges each and every allegation as set forth in paragraphs "1" through "93" as more fully set forth word for word herein.

95.     Many of the Defendants' actions were undertaken in defiance of the automatic stay and without the knowledge or authorization of either the court or the creditors.

96.     That Plaintiff enjoys a likelihood of success on the merits.

97.     On balance, the equities in this action favor Plaintiff as the harm to the estates far outweighs any harm to the Defendants.

98.     That pursuant to Fed.R.Bankr.P. 7001(7) and 7065, this Court has the power to issue an injunction.

99.     That, additionally, 11 U.S.C. §105(a) provides that "[t]he Court may issue an order, process a judgment that is necessary or appropriate to carry out the provisions of this title."

100.    That if an injunction is not issued, the estates will be irreparably harmed.

1956362-1
1956362.1

101.   That an injunction is necessary to preserve the assets of Richard for the estates and ensure an orderly liquidation of the Debtors' estates.

102.   That an injunction furthers the public interest and policies of the Bankruptcy Code, which is to protect and preserve assets of the estates and to ensure an orderly and equitable distribution to the creditors of the estates.

103.   Plaintiff does not possess an adequate remedy at law.

104.   Based upon the above, the Trustee seeks a permanent injunction pursuant to 11 U.S.C. §105(a) and Fed.R.Bankr. P. 7065 and enjoining the Defendants their relatives, agents, servants, employees, former employees, or any other person or entity acting on their behalf, or purportedly acting on their behalf, from using, dissipating, assigning, encumbering, hypothecating, transferring, disposing of, distributing, commingling, the Defendants' assets, either individually held or jointly held with other individuals or entities, wherever located, including, but not limited to, real property, cash, accounts receivable, notes, chattel paper, corporate books and records whether physically maintained, electronically maintained or maintained on paper, and all other property of the Defendants.

**WHEREFORE**, it is respectfully requested that judgment be entered in favor of the Plaintiff and against Richard, as follows:

(a)   On the First Claim for relief, Plaintiff is entitled to judgment against Richard Yandoli in an amount to be determined at trial but in no event less than the sum of Five Million ($5,000,000.00) Dollars.

(b)   On the Second Claim Against Richard Yandoli, Plaintiff is entitled to judgment against Richard Yandoli in an amount to be determined at trial but in no event less than the sum of Six Million One Hundred Thousand ($6,100,000.00) Dollars, plus appropriate interest, costs and penalties;

(c)     On the Third Claim Against Richard Yandoli, Plaintiff is entitled to judgment against Richard Yandoli in an amount to be determined at trial but in no event less than the sum of Six Million One Hundred Thousand ($6,100,000.00) Dollars, plus appropriate interest, costs and penalties;

(d)     On the Fourth Claim Against Richard Yandoli, Plaintiff is entitled to judgment against Richard Yandoli in an amount to be determined at trial, together with interest thereon;

(e)     On the Fifth Claim Against Richard Yandoli, Plaintiff is entitled to judgment against Richard Yandoli in an amount to be determined at trial, but in no event less than Five Million ($5,000,000.00) Dollars together with interest thereon;

(f)     On the Sixth Claim Against the Defendants, pursuant to 11 U.S.C. §§541 and 542(a), the turnover of property of the estate from the Defendants in an amount to be determined at trial but in no less than $5,000,000.00 plus appropriate interest thereon;

(g)     On the Seventh Claim Against Defendants, Plaintiff is entitled to a full accounting and return of all monetary benefits from Defendants;

(h)     On the Eighth Claim Against Defendants, Plaintiff is entitled to judgment against Defendants for an award of punitive damages in an amount to be determined at trial;

(i)     On the Ninth Claim Against the Defendants, judgment (a) avoiding all of the transfers pursuant to New York State Debtor and Creditor Law §274, 278 and 279; (b) setting aside the transfer; (c) in an amount to be determined at trial but in no event less than Five Million ($5,000,000.00) Dollars plus appropriate interest thereon;

1956362-1
1956362.1

(j)    On the Tenth Claim Against Defendants, Plaintiff is entitled to judgment (a) avoiding the transfers pursuant to New York State Debtor and Creditor Law §§276, 278 and 279 and pursuant to 11 U.S.C. §§550(a) and 551; (b) setting aside the transfers; and (c) in an amount as yet undetermined but which in no event is less than Five Million ($5,000,000.00) Dollars plus appropriate interest thereon;

(k)    On the Eleventh Claim Against Defendants, (a) awarding the transfers pursuant to New York's debtors and Creditor Law §275 and pursuant to 11 U.S.C. §§550(a) and 551; (b) setting aside the transfers; and (c) in an amount to be delivered at trial but in no event less that Five Million ($5,000,000.00) Dollars plus appropriate interest thereon;

(l)    On the Twelfth Claim Against Defendants, Plaintiff is entitled to judgment against Defendants for an Order of Attachment pursuant to §105(a) of Title 11 of the United States Code, Fed.R.Bankr.P. 7065 and CPLR §6201;

(m)    On the Thirteenth Claim Against Defendants, the Trustee seeks a permanent injunction pursuant to 11 U.S.C. §105(a) and Fed. R. Bankr. P. 7065 and enjoining the Defendants, their relatives, agents, servants, employees, former employees, or any other person or entity acting on their behalf, or purportedly acting on their behalf, from using, dissipating, assigning, encumbering, hypothecating, transferring, disposing of, distributing, commingling, the Defendants' assets, either individually held or jointly held with other individuals or entities, wherever located, including, but not limited to, real property, cash, accounts receivable, notes, chattel paper, corporate books and records whether physically maintained, electronically maintained or maintained on paper, and all other property of Defendants; and

(n)     for such other, further and different relief as this
Court may deem just, property and equitable.

Dated: East Meadow, New York
January 4, 2008

**CERTILMAN BALIN ADLER & HYMAN, LLP**
Attorneys for Richard J. McCord, Esq., the Chapter 7 Trustee

BY:     _____/s/ Jaspreet S. Mayall_____
**JASPREET S. MAYALL, ESQ. (JSM 0615)**
90 Merrick Avenue
East Meadow, New York 11554
(516) 296-7000

1956362-1
1956362 1

Jaspreet S. Mayall, Esq. (JSM 0615)
Richard J. McCord, Esq.(RJM 3290)
CERTILMAN BALIN ADLER & HYMAN, LLP
Counsel to Chapter 7 Trustee, Richard J. McCord, Esq.
90 Merrick Avenue
East Meadow, NY 11554
(516) 296-7000

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X      Chapter 7
In re:                                                                                Case Nos.:    06-42541-ess
                                                                                                          06-42544-ess
YANDOLI FOODS, INC., AVENUE V. FOODS, INC.,                          06-42551-ess
FLATLANDS AVENUE FOODS, INC., NEPTUNE                               06-42552-ess
AVE. FOODS, INC., NOSTRAND-HILLEL FOODS,                            06-42555-ess
INC., ROCKAWAY PARKWAY FOODS, INC.,                                  06-42556-ess
SEAVIEW AVENUE FOODS, INC. and THURM-LEE                         06-42558-ess
FOODS, INC.,                                                                       06-42559-ess
                                                  Debtors.                    (Jointly Administered)
-------------------------------------------------------------------X
RICHARD J. McCORD, ESQ., As Chapter 7 Trustee of the
estates of Yandoli Foods, Inc., *et. al.*

                                            Plaintiff,

               - against -

RICHARD YANDOLI and JUDITH YANDOLI,                               Adv. Proc. No.:
                                                  Defendants.               ***08-01005***
-------------------------------------------------------------------X

### ORDER TO SHOW CAUSE FOR AN *EX PARTE* TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PRE-JUDGMENT ORDER OF ATTACHMENT

        **UPON** the application (the "Application") of Richard J. McCord, Esq., as Chapter 7

Trustee (the "Trustee") of Yandoli Foods, Inc.; Thurm-Lee Foods, Inc.; Neptune Avenue Foods,

Inc., Flatlands Avenue Foods, Inc.; Rockaway Parkway Foods, Inc., Seaview Avenue Foods,

Inc.; Avenue U Foods, Inc. and Nostrand-Hillel Foods, Inc. (collectively the "Debtors"), by his

attorneys, Certilman Balin Adler & Hyman, LLP, dated January 4, 2008; the Affidavit of

1 of 6

1956295.1

Richard J. McCord, Esq., dated the 4th day of January, 2008; together with the annexed

Complaint dated January 4, 2008; and the accompanying Memorandum of Law, seeking an

Order pursuant to Section 105(a) of the Bankruptcy Code and Rules 64 and 65 of the Federal

Rules of Civil Procedure, made applicable herein by Rules 7064 and 7065 of the Federal Rules

of Bankruptcy Procedure: (a) granting the Trustee a pre-judgment order of attachment attaching

all of the assets of the defendants Richard Yandoli and Judith Yandoli ("Defendants"); (b)

granting the Trustee an *ex parte* temporary restraining order and pending the hearing and a

determination of this Motion, restraining and enjoining the Defendants, their relatives, agents,

servants, employees, former employees, or any other person or entity acting on their behalf, or

purportedly acting on their behalf, from using, dissipating, assigning, encumbering,

hypothecating, transferring, disposing of, distributing, commingling, the Defendants' assets,

either individually held or jointly held with other individuals or entities, wherever located,

including, but not limited to, real property, cash, accounts receivable, notes, chattel paper,

corporate books and records whether physically maintained, electronically maintained or

maintained on paper, and all other property of the Defendants; (c) granting the Trustee a

preliminary injunction enjoining the Defendants, their relatives, agents, servants, employees,

former employees, or any other person or entity acting on their behalf, or purportedly  acting on

their behalf, from using, dissipating, assigning, encumbering, hypothecating, transferring,

disposing of, distributing, commingling, or exercising control over the Defendants' assets, either

individually held or jointly held, with other individuals or entities, wherever located including,

but not limited, to real property, cash, accounts receivable, notes chattel paper, corporate books

and records whether physically maintained, electronically maintained or maintained on paper,

and all other property of the Defendants; and (d) for such other and further relief as this Court

deems just and proper to protect and preserve the Debtors' estate; and after due deliberation and sufficient cause appearing therefore and no other notice being necessary or required, except as set forth herein, and upon all prior proceedings heretofore had herein,

**NOW,** upon the Application of Certilman Balin Adler & Hyman, LLP, attorneys for the Trustee, it is hereby

**ORDERED,** that the Defendants show cause before this Court on the **_7th_** day of January, 2008, at **_2:00 p_**.m. or as soon thereafter as counsel can be heard, at the United States Bankruptcy Court, at Brooklyn, New York, before the Honorable Bankruptcy Judge Elizabeth J. Stong located at the United States Courthouse, 271 Cadman Plaza East, Brooklyn, New York 11201, why an order should not be entered, (a) granting the Trustee a pre-judgment order of attachment attaching all assets of the Defendants; (b) granting the Trustee an _ex parte_ restraining order restraining and enjoining the Defendants, their relatives, agents, servants, employees, former employees or any other person or entity acting on their behalf, or purportedly acting on their behalf, from using, dissipating, assigning, encumbering, hypothecating, transferring, disposing of, distributing, commingling or exercising any control over any and all of the Defendants' property and assets, either individually or jointly held with other individuals or entities, wherever located, including, but not limited to, real property owned by the Defendants cash, accounts receivable, notes, chattel paper, corporate books and records, whether physically maintained, electronically maintained or maintained on paper, and all other property of the Defendants; and (c) granting the Trustee a preliminary injunction enjoining the Defendants, their relatives, agents, servants, employees, former employees, or any other person or entity acting on their behalf, or purportedly acting on their behalf, from using, dissipating, assigning, encumbering, hypothecating, transferring, disposing of, distributing commingling, or exercising control over

1956295.1

the Defendants' assets, either individually held or jointly held, with other individuals or entities, wherever located including, but not limited to, real property, cash, accounts receivable, notes chattel paper, corporate books and records whether physically maintained, electronically maintained or maintained on paper, and all other property of the Defendants; and (d) for such other and further relief as this Court deems just and proper to protect and preserve the Debtors' estate; and, it is further

~~**ORDERED,** that based upon the demonstrating by the Trustee as set forth in the annexed moving application and Affidavit of Richard J. McCord, Esq., a pre-judgment order of attachment and/or an *ex parte* temporary restraining order is mandated because it appears that the Defendants either individually, or in concert with other individuals or entities, has caused immediate and irreparable injury, loss or damage to the Debtors, the Debtors' estates, and the Debtors' unsecured creditors by potentially secreting, transferring and dissipating their individual assets, to the further detriment of the Debtors' estate, and because there is a substantial likelihood that the Trustee will prove the allegations contained in the Complaint simultaneously filed herewith, entitling the Trustee to recover for the Debtors' estate substantial damages against Defendants and because Trustee has no adequate remedy at law, and because the granting of an *ex parte* temporary restraining order will not prejudice the Defendants in any manner, or cause any harm or inconvenience for any party involved; and, it is further~~

**ORDERED,** that **_on consent of the Defendants,_** the Defendants, their relatives, agents, servants, employees, former employees or any other person acting on their behalf, or purportedly acting on their behalf, are hereby temporarily enjoined and restrained from ~~using,~~ dissipating, disbursing, assigning, encumbering, hypothecating, transferring, disposing of, distributing, commingling, or exercising any control over the Defendants' assets, either individually held, or

1956295.1

jointly held with other individuals or entities, wherever located and including, but not limited to, Defendants' real property and cash, accounts receivable, notes, chattel paper, corporate books and records, whether physically maintained, electronically maintained or maintained on paper and all other property of the Defendants pending the hearing and determination of the Trustee's application*, except in the ordinary course of business*; and, it is further

**ORDERED**, that a hearing shall take place before the Court on  January *31*, 2008, *at 2:00 p.m.,* concerning the Trustee's Application for a preliminary injunction and pre-judgment order of attachment (the "Hearing") unless otherwise extended or ordered by this Court; and, it is further

**ORDERED,** that pending the Hearing, or any adjourned date thereof, the Trustee is authorized, empowered, and directed to do such things, execute such documents, and expend such funds as are necessary to implement the terms of his appointment and the conditions of this order; and, it is further

**ORDERED**, that, pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure, the requirement to file an undertaking be, and hereby is waived; and, it is further

**ORDERED**, that disobedience of this Order may be punishable as contempt of Court; and, it is further

**ORDERED**, that service of a conformed copy of this Order to Show Cause, together with all papers upon which it is made upon the Defendants and their ~~known~~ counsel, Harvey J. Cavayero, Esq., of Harvey Cavayero & Associates, 57 Old Country Road (Suite L), Westbury, New York 11590; upon the Debtors' counsel Gary M. Kushner, Esq., of Forchelli, Curto, Schwartz, Mineo, *et al.,* 330 Old Country Road, P.O. Box 31, Mineola, New York 11501; upon counsel for Golden Improvement Co. and Golden Management Acceptance Co., Edward M.

1956295.1

Flint, Esq. of Silverman Perlstein Acampora, LLP, 100 Jericho Quadrangle, Jericho, New York 11753; upon counsel for Sterling National Bank, Thomas R. Slome, Esq. of Rosen Slome Marder, LLP, 333 Earle Ovington Boulevard, Suite 901, Uniondale, New York 11553 all via *first class mail* ~~overnight delivery~~ on or before ~~the ____ day of~~ January *9*, 2008; service by *first class mail* ~~facsimile~~ of this temporary restraining order and Order only upon Harvey J. Cavayero, Esq., counsel for Defendant, ~~via facsimile to (516) 478-5817~~ and Gary M. Kushner, Esq., counsel for Debtors, ~~via facsimile to (516) 248-1729 by 5:00 p.m.~~ on *or before* ~~the ____ day of~~ January *9*, 2008; and upon the U.S. Trustee Diana G. Adams, Office of the United States Trustee – EDNY, 271 Cadman Plaza East, Suite 4529, Brooklyn, New York 11201 *by first class mail* ~~via overnight delivery~~ on or before ~~the ____ day of~~ January *9*, 2008, be deemed good and sufficient service of this Order and the Hearing and all other notices are hereby dispensed with and waived; and, it is further

**ORDERED**, that proof of service in accordance with the above shall be filed with the Court prior to or at the Hearing; and, it is further

**ORDERED**, that answering papers, if any, shall be served personally or by overnight delivery upon Certilman Balin Adler & Hyman, LLP, attorneys for the Trustee, 90 Merrick Avenue, East Meadow, New York, 11554, attention: Jaspreet S. Mayall, Esq., and filed with the Court so as to be received no later than *January 28, 2008,* at *12:00* noon.

Dated: Brooklyn, New York
       January *7*, 2008

                                    *s/Elizabeth S. Stong*
                                    HONORABLE ELIZABETH J. STONG
                                    UNITED STATES BANKRUPTCY JUDGE

1956295.1

**HARVEY J. CAVAYERO & ASSOCIATES**
**HARVEY J. CAVAYERO**
ATTORNEY AT LAW
57 OLD COUNTRY ROAD (SUITE L)
WESTBURY, NY 11590
(516) 478-5818
TOLL FREE: 1-866-HARVCAV
FAX: (516) 478-5817
E-MAIL: *hcavayero@aol.com*

February 18, 2008

<u>VIA UPS DELIVERY</u>
Richard J. McCord, Esq.
Bankruptcy Trustee
Certilman Balin Adler& Hyman, LLP
90 Merrick Avenue
East Meadow, NY 11554

RE:   YANDOLI FOODS, INC., et al;
        Chapter 7 Case No. 06-4241-663;
        Adv. Pro. No. 08—1005-663

Dear Mr. McCord:

        Pursuant to your letter dated February 14, 2008, enclosed please find the following:

        1.      My Attorney's Trust and Escrow Account Check No. 1955 in the amount of $50,000.00 payable to your order as Chapter 7 Trustee, towards settlement of the above action against Richard and Judith Yandoli. These funds are to be held in your Trustee's account and shall not be dispersed until such time as the Court authorizing the release of same.

        2.      Six (6) original Quit Claim Deeds to the following Condominium Units owned by Richard Yandoli through his real estate holding company, KKR Properties, LLC:

        (i)      511 Scott Road (Unit No. 42 of East Park Condominium), Waterbury, CT;
        (ii)     388 Perkins Hill (Unit No. 6, Bldg. 2 of Perkins Hill), Waterbury, CT;
        (iii)    222 Bradley Avenue (Unit No. 4A,Building 4) Villa Sol d'Or Condominium), Waterbury, CT;
        (iv)     222 Bradley Avenue (Unit No. B10, Bldg. 4) Villa Sol d'Or Condominium), Waterbury, CT;
        (v)      222 Bradley Avenue (Unit No. 9A, Bldg. 2) Villa Sol d'Or Condominium), Waterbury, CT; and

Richard J. McCord, Esq.
Bankruptcy Trustee
February 18, 2008
Page 2


      (vi)    114 Bucks Hill Road (Unit No. 7, Fawn Terrace Condominium), Waterbury, CT;


In addition, please also find enclosed listed estimated values of each condominium unit as of December 2007 totaling $273,000 and copies of Residential Lease/Rental Agreements for each.

Last, this shall confirm that depositions of Richard Yandoli and Judith Yandoli shall take place in your office on March 13, 2008 commencing at 9:30 AM.

Should you have any questions, please feel free to call me.


                                       Very truly yours,

                                       Harvey J. Cavayero

Encs.

# FAX TRANSMISSION

## HARVEY J. CAVAYERO & ASSOCIATES

**Harvey J. Cavayero, Esq.**
57 Old Country Road (Suite L)
Westbury, NY 11590
(516) 478-5818
Fax: (516) 478-5817
E-Mail: *hcavayero@aol.com*

TO:          Richard J. McCord, Esq.
             Chapter 7 Trustee

FAX NO.:     1-516- 296-7111
             **ATTN: Andrea**

FROM:        Harvey J. Cavayero, Esq.

DATE:        February 19, 2008

SUBJECT:     YANDOLI FOODS, INC., et al

**NUMBER OF PAGES INCLUDING COVER SHEET: 5**

**IF YOU DO NOT RECEIVE ALL PAGES CALL (516) 478-5818.**

COMMENTS:

Following our telephone conference of this morning, please see attached letter.

Should you have any questions or need any further information, please feel free to call me.

Harvey Cavayero

HARD COPY ___√__ (WILL) _____ WILL NOT FOLLOW

THE INFORMATION CONTAINED IN THIS FAX MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE RECIPIENT(S) NAMED ABOVE. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR AN AGENT RESPONSIBLE FOR THE DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU HAVE RECEIVED THIS DOCUMENT IN ERROR AND THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US BY MAIL. THANK YOU.

**HARVEY J. CAVAYERO & ASSOCIATES**

**HARVEY J. CAVAYERO**

ATTORNEY AT LAW

57 OLD COUNTRY ROAD (SUITE L)

WESTBURY, NY 11590

(516) 478-5818

TOLL FREE: 1-866-HARVCAV

FAX: (516) 478-5817

E-MAIL: hcavayero@aol.com

February 19, 2008

Richard J. McCord, Esq.
Bankruptcy Trustee
Certilman Balin Adler& Hyman, LLP
90 Merrick Avenue
East Meadow, NY 11554

RE:    YANDOLI FOODS, INC., et al;
       Chapter 7 Case No. 06-4241-663;
       Adv. Pro. No. 08—1005-663

Dear Mr. McCord:

        Follwing my letter to you dated February 18, 2008, enclosed please find my Attorney's Trust and Escrow Account Check No. 1956, in replacement of Check No. 1955 in the amount of $50,000.00 payable to your order as Chapter 7 Trustee, towards settlement of the above action against Richard and Judith Yandoli. These funds are to be held in your Trustee's account and shall not be dispersed until such time as the Court authorizing the release of same.

Should you have any questions, please feel free to call me.

Very truly yours,

Harvey J. Cavayero

Enc.



HARVEY J. CAVAVERO, ESQ.
ATTORNEY TRUST & ESCROW ACCOUNT
57 OLD COUNTRY ROAD
WESTBURY, NY 11590

1956

DATE February 19, 2008    1-2 142
                                  210

PAY TO THE ORDER OF _Richard J. Meloni, Chap 7 Trustee_ | $50,000.00/100

_Fifty Thousand and 00/100_ DOLLARS

CHASE
JPMorgan Chase Bank
2631 Merrick Road
Bellmore, NY 11718

Pay Yanelli Foods
For Payment on Account Case No. 06-40244/463
Richard Judy Yanelli: UP-1085-463
Yanelli to Settlement Fund

⑆00⑆1956⑆  ⑆021000021⑆  140702160651⑆

# Chase Online

**Finished!** Please read the confirmation message below. You may want to print it for your records.

**Stop Payment - Step 3 of 3**

## Transaction Complete

**Your stop payment request is being processed.** Please understand your payment can only be stopped if the check has not already been paid. If you have any questions, please call Customer Service at 1-877-CHASEPC (242-7372).

| | |
|---|---|
| **Account number** | BUSINESS CUSTOM (...6065) |
| **Check range** | Enter Information for a single check |
| **Check information** | Check number: 1955<br>Payee: Richard J McCord,<br>Check amount: $50,000.00 |

© 2008 JPMorgan Chase & Co.

1 of 1

2/19/2008 3:41 PM



Richard J. McCord, Esq.(RJM 3290)
Carol A. Glick, Esq. (CAG 2675)
CERTILMAN BALIN ADLER & HYMAN, LLP
Counsel to Chapter 7 Trustee, Richard J. McCord, Esq.
90 Merrick Avenue
East Meadow, NY 11554
(516) 296-7000

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

In re:

YANDOLI FOODS, INC., AVENUE V. FOODS, INC.,
FLATLANDS AVENUE FOODS, INC., NEPTUNE
AVE. FOODS, INC., NOSTRAND-HILLEL FOODS,
INC., ROCKAWAY PARKWAY FOODS, INC.,
SEAVIEW AVENUE FOODS, INC. and THURM-LEE
FOODS, INC.,

                                        Debtors.
-------------------------------------------------------------------X

RICHARD J. McCORD, ESQ., As Chapter 7 Trustee of the
estates of Yandoli Foods, Inc., *et. al.*

                                        Plaintiff,

        - against -

RICHARD YANDOLI and JUDITH YANDOLI,
                                        Defendants.
-------------------------------------------------------------------X

Chapter 7
Case Nos.:    06-42541-ess
              06-42544-ess
              06-42551-ess
              06-42552-ess
              06-42555-ess
              06-42556-ess
              06-42558-ess
              06-42559-ess
(Jointly Administered)

Adv. Proc. No.: 08-01005-ess

## STIPULATION AND ORDER MODIFYING AND
## AMENDING TEMPORARY RESTRAINING
## ORDER DATED JANUARY 7, 2008

        **WHEREAS**, the above Adversary Proceeding was commenced on January 4, 2008; and

        **WHEREAS**, the Plaintiff, Richard J. McCord, Esq. ("Trustee"), is the Plaintiff and the

Chapter 7 Trustee of the Estates of Yandoli Foods, Inc.; Thurm-Lee Foods, Inc.; Neptune

Avenue Foods, Inc., Flatlands Avenue Foods, Inc.; Rockaway Parkway Foods, Inc., Seaview

Avenue Foods, Inc.; Avenue V. Foods, Inc. and Nostrand-Hillel Foods, Inc. ("Debtors"); and

**WHEREAS**, on July 21, 2006 (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code (11 U.S.C. § 101 et seq., "Bankruptcy Code"); and

**WHEREAS**, the Debtor remained in possession of its property and continued in the management and operation of its affairs as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108 until the cases were converted to one under Chapter 7 of the Bankruptcy Code on October 30, 2007 ("Conversion Date"); and

**WHEREAS**, by Order dated October 31, 2007, Richard J. McCord, Esq. was appointed the Trustee of the Debtors' bankruptcy estates; and

**WHEREAS**, on January 7, 2008, the Court entered an Order To Show Cause for an *ex parte* temporary restraining order ("January 7, 2008 Restraining Order") against Richard Yandoli and Judith Yandoli (the "Defendants") and scheduled a hearing on the Trustee's application for a preliminary injunction and writ of attachment for January 31, 2008 ("Order to Show Cause Hearing"); and

**WHEREAS**, it has come to the Plaintiff's attention that Richard Yandoli and/or Judith Yandoli have an interest in a Connecticut limited liability company known as KKR Properties, LLC ("KKR"), the address of which is 54 Indian Field Road, Greenwich, Connecticut 06830, a real estate holding company that owns at least six (6) condominium units located in the City of Waterbury, Connecticut, pursuant to certain Quit Claim Deeds executed by Richard Yandoli, individually, as transferor, to KKR, as transferee, dated October 10, 2006; and

**WHEREAS**, KKR is the landlord under at least six (6) residential leases in respect of the condominium units known as (i) 511 Scott Road (Unit No. 42 of East Park Condominium), Waterbury, Connecticut; (ii) 388 Perkins Hill (Unit No. 6, Bldg. 2 of Perkins Hill), Waterbury,

1970041-1

Connecticut; (iii) 222 Bradley Avenue (Unit No. 4A, Bldg. 4, Villa Sol D'Or Condomnium), Waterbury, Connecticut; (iv) 222  Bradley Avenue (Unit No. B10, Bldg. 4, Villa Sol d'Or Condominium), Waterbury, Connecticut; (v) 222  Bradley Avenue (Unit No. 9A, Bldg. 2, Villa Sol d'Or Condominium), Waterbury, Connecticut; and (vi) 114 Bucks Hill Road (Unit No. 7, Fawn Terrace Condominium, Waterbury, Connecticut; and

**WHEREAS**, the January 7, 2008 Restraining Order does not restrain KKR or any other limited liability company, limited liability partnership or similar entity in which either or both of the Defendants may be a member from dissipating, assigning, encumbering, hypothecating, transferring, disposing of, distributing, commingling the Defendants' assets, either individually or jointly held with other individuals or entities; and

**WHEREAS**, the parties are desirous of modifying and amending the January 7 2008 Restraining Order; and

**WHEREAS**, the parties and their attorneys represent and warrant to each other that they have the full power and authority to execute and to perform their respective obligations under this Agreement.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED AS FOLLOWS:**

1.      This Stipulation and Order contains the entire agreement between the parties and may only be modified by a writing signed by the parties or their duly appointed agents.  All prior agreements and understandings between the parties concerning the subject matter hereof are superseded by the terms of this Agreement.

2.      The January 7, 2008 Restraining Order is hereby modified and amended so that the first full decretal paragraph on page 6 shall read as follows:

**ORDERED,** that on consent of the Defendants, the Defendants, their relatives, agents, servants, employees, former employees, any limited liability partnership in which the Defendants may be a general or limited partner, any limited liability company in which the Defendants may be a member, including without limitation, KKR Properties, LLC, and any other person (as defined in 11 U.S.C. § 101(41)), or entity (as defined in 11 U.S.C. § 101(15)), acting on their behalf, or purportedly acting on their behalf, are hereby temporarily enjoined and restrained from using, dissipating, disbursing, assigning, encumbering, hypothecating, transferring, disposing of, distributing, commingling, or exercising any control over the Defendants' assets, either individually held, or jointly held with other individuals or entities, wherever located and including, but not limited to, Defendants' real property and cash, accounts receivable, notes, chattel paper, corporate books and records, whether physically maintained, electronically maintained or maintained on paper and all other property of the Defendants pending the hearing and determination of the Trustee's application, except in the ordinary course of business; and, it is further

3.      Pending the adjourned Order to Show Cause Hearing in connection with the January 7, 2008 Restraining Order, the Defendants agree to strictly comply with all of the terms and conditions of the January 7, 2008 Restraining Order, as modified and amended hereby.

4.      The Defendants hereby consent that within five (5) business days from the entry of this Stipulation and Order they shall (i) execute Assignments of Rents in favor of the Plaintiff with respect to the six (6) condominium units owned by KKR; (ii) provide to the Plaintiff copies of any and all mortgages granted to any and all mortgagees with respect to the six (6) condominium units; (iii) provide to the Plaintiff proof of insurance coverage on the six (6) condominium units; (iv) provide any and all appraisals that KKR and/or the Defendants have obtained with respect to the six (6) condominium units; and (v) turn over to the Plaintiff any and all rents hereinafter paid to KKR by the tenants of the six (6) condominium units, which shall be deposited into the Trustee Escrow Account maintained by the Plaintiff in connection with this

1970041-1

Chapter 7 Case.

5.    The Defendants hereby agree to cooperate with the Plaintiff in connection with the liquidation of the assets of KKR, including, not limited to, assisting the Plaintiff to obtain title reports and/or judgment and lien searches with respect to the assets owned by KKR and executing any and all documents which will facilitate the marketing and sale of the assets of KKR..

6.    Each of the parties acknowledges that it has read all of the terms of this Stipulation and Order, has had an opportunity to consult with counsel of their own choosing or voluntarily waived such right and enters into these terms voluntarily and without duress.

7.    Each party shall bear its own attorney fees and costs in connection with the negotiation and drafting of this Stipulation and Order and its submission, with any necessary motion or order, to the Bankruptcy Court.

8.    This Stipulation and Order is binding upon and shall inure to the benefit of the parties hereto and their respective successors and/or assigns.

9.    If any provision of this Stipulation and Order is held to be illegal, invalid or unenforceable under present or future state or federal laws or rules and regulations propagated thereunder, such provision shall be fully severable, and this Stipulation and Order shall be construed and enforced as if such illegal, invalid or unenforceable provision had never compromised a part hereof, and the remaining provisions of this Stipulation and Order shall remain in full force and effect and shall not be effected by any illegal, invalid or unenforceable provision or by its severance from this Stipulation and Order.  Furthermore, in lieu of such illegal, invalid, or unenforceable provision, there shall be automatically included as part of this Stipulation and Order a provision as similar in terms to such illegal, invalid or unenforceable

1970041-1

provision as may be possible and be legal, valid and enforceable.

10. The parties agree to cooperate with each other to implement the terms of this Stipulation and Order, including without limitation, executing such other and further documents and instruments as either party may reasonably require with respect to this Stipulation and Order.

11. It is understood and agreed that this Stipulation and Order shall be governed by, construed and enforced in accordance with, and subject to the laws of the State of New York, without regard to any conflict of laws principles except to the extent that the Bankruptcy laws apply and in such case the title 11 of the United States Code shall apply. Venue for and jurisdiction over any claim or dispute pertaining to this Stipulation and Order shall be in the Bankruptcy Court for the Eastern District of New York.

12. This Stipulation and Order may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement. Delivery of an executed counterpart of a signature page to this Stipulation and Order by facsimile shall be effective as delivery of a manually executed counterpart of this Stipulation and Order.

(Continued on the next page.)

1970041-1

13.    This Stipulation and Order shall be deemed to have been jointly drafted by the parties, and in construing and interpreting this Agreement, no provision shall be construed and interpreted for or against any of the parties because such provision or any other provision of the Stipulation and Order as a whole is purportedly prepared or requested by such party.

Dated: East Meadow, New York
      February 22, 2008

                **CERTILMAN BALIN ADLER & HYMAN, LLP**
                Attorneys for Richard J. McCord, Esq., the Chapter 7 Trustee

                BY:    s/ Richard J. McCord_____
                        **RICHARD J. MCCORD, ESQ. (RJM3290)**
                        90 Merrick Avenue
                        East Meadow, New York 11554
                        (516) 296-7000

Dated: Westbury, New York
      February 21, 2008

                **HARVEY J. CAVAYERO & ASSOCIATES**
                Attorneys for Defendants Richard Yandoli & Judith Yandoli

                BY:    s/ Harvey J. Cavayero_____
                        **HARVEY J. CAVAYERO, ESQ. (HJC 7169)**
                        57 Old Country Road – 2nd Floor
                        Westbury, New York 11590
                        (516) 478-5818

**SO ORDERED:**

   *s/Elizabeth S. Stong*_____
**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**
*Brooklyn, N.Y.*
*March 5, 2008*

1970041-1

1

1

2  UNITED STATES BANKRUPTCY COURT

3  EASTERN DISTRICT OF NEW YORK

4  Case No. 06-42541

5  - - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  YANDOLI FOODS, INC.,

9

10          Debtor.

11

12  - - - - - - - - - - - - - - - - - - - - -x

13

14              U.S. Bankruptcy Court

15              271 Cadman Plaza East

16              Brooklyn, New York

17

18              October 30, 2007

19              12:14 p.m.

20

21  B E F O R E:

22  HON. ELIZABETH S. STONG

23  U.S. BANKRUPTCY JUDGE

24

25

2

1 MOTION to Convert Chapter 11 Case to Chapter 7, to Disqualify

2 Debtors Bankruptcy Counsel and to Disgorge Interim Attorneys

3 Fees Previously Paid

4

5 APPLICATION to Employ Richard L. Stern, Esq., as Responsible

6 Part for the Debtors or in the Alternative Authorizing the

7 Debtors to Enter into an Employment Agreement

8

9 MOTION to Establish Procedures for Monthly Compensation and

10 Reimbursement Expenses of Professionals

11

12 MOTION to Compel Debtors to Comply with Purchase and Sale

13 Agreements

14

15 HEARING on Disclosure Statement

16

17

18

19

20

21

22

23

24 Transcribed By:  Esther Accardi

25

3

1    A P P E A R A N C E S :

2    FORCHELLI CURTO SCHWARTZ MINEO CARLINO & COHN, LLP

3        Attorneys for Debtor

4        330 Old Country Road

5        Mineola, New York 11501

6

7    BY:   GARY M. KUSHNER, ESQ.

8

9

10   BALLARD SPAHR ANDREWS & INGERSOLL, LLP

11       Attorneys for McDonalds

12       Plaza 1000, Main Street

13       Voorhees, New Jersey 08043

14

15   BY:   DEAN C. WALDT, ESQ.

16

17

18   SILVERMAN PERLSTEIN & ACAMPORA LLP

19       Attorneys for JPMorgan Chase

20       100 Jericho Quadrangle

21       Jericho, New York 11753

22

23   BY:   EDWARD M. FLINT, ESQ.

24       RONALD J. FRIEDMAN, ESQ.

25

4

1

2  LOCKE LORD BISSELL & LIDDELL, LLP

3          Attorneys for JPMorgan Chase

4          600 Travis Street

5          Houston, Texas 77002

6

7  BY:    THOMAS H. GRACE, ESQ.

8

9

10  INTERNAL REVENUE SERVICE

11          33 Maiden Lane

12          New York, New York 10038

13

14  BY:    TOBY R. ROSENBERG, ESQ.

15

16

17  U.S. DEPARTMENT OF JUSTICE

18  OFFICE OF THE UNITED STATES TRUSTEE

19          271 Cadman Plaza East

20          Brooklyn, New York 11201

21

22  BY:    BRIAN J. HUFNAGEL, ESQ.

23

24

25

5

1   NEW YORK STATE ATTORNEY GENERAL'S OFFICE

2        Counsel for N.Y. State Department of

3         Taxation and Finance

4        120 Broadway

5        New York, New York 10271

6

7   BY:   NEAL S. MANN, ESQ.

8

9

10  SHARIL CLARK, ESQ.

11  Attorney for Sovereign Bank

12

13

14

15

16

17

18

19

20

21

22

23

24

25

58

1    to be heard on this.

2          MR. FLINT:  Just one or two points, Your Honor.  It

3    seems to me that the issues really do come down to two, and

4    that's cost and timing.  The cost argument might be

5    attractive -- might be attractive, it might even be worth

6    looking at if there was a prospect for a confirmable plan.

7    What we don't have as we stand here today are agreements of the

8    taxing authorities or Metroplex despite the passage of months

9    since the first plan was articulated.  Agreements to compromise

10    in some fashion their right to payment in full, in cash on the

11    effective date of the plan.  What we have is the opposition to

12    a Chapter 11 trustee from the two taxing authorities who are

13    present today.  It seems to me that that and that alone is

14    sufficient to allow this Court to conclude that would be, to

15    use counsel's words, a monumental waste of money to go down the

16    Chapter 11 course.  Because if we do and we wind up appointing

17    a Chapter 11 trustee anyway all that money is wasted and all

18    that money comes out of the creditors who are here today

19    opposing the Chapter 11 trustee.

20          As to the timing issue, I don't know what to say

21    other than the Court is as well aware as all the bankruptcy

22    attorneys here how lengthy a time a contested Chapter 11

23    process can be.  How delay of distributions can be under the

24    Chapter 11 process.  The Chapter 7 trustee who comes into this

25    case does not have anything near the kind of learning curve

59

1    that was suggested, all the assets have been liquidated.  There

2    is cash sitting in an account to be distributed.

3            THE COURT:  All the operating assets have been

4    liquidated.

5            MR. FLINT:  All the operating assets have.  Both the

6    Chapter 11 trustee and the Chapter 7 trustee face exactly the

7    same task of coming up to speed no the potential avoidance

8    claims.  And I will point out, Judge, that considerable work

9    has been done on that and considerable volumes are filed or

10   available to whoever comes in whether it was a Chapter 7

11   trustee or a Chapter 11 trustee from the people who've done

12   that work already.

13           So I think, Judge that quite -- when you look at the

14   Chapter 7 process it's a much quicker and simple process.  You

15   come in you start the investigations, you get those moving

16   along, you make a decision to make an interim distribution of

17   the funds that are already there.  On the other hand, in a

18   Chapter 11 you don't even have a disclosure statement approved

19   yet, you have plan which appears to be unconfirmable on its

20   face.  You're going to have contested liquidation, probable

21   multiple hearings going sometime into the beginning of next

22   year.  And at that point, assuming all of the agreements are in

23   place that are necessary for the plan to go forward, then maybe

24   a distribution takes place sometime in the first or second

25   quarter of next year.  So the whole issue of timing is a red

60

1    herring as is the issue of costs.  The real issue before the

2    Court today is this case has to start moving forward to its

3    ultimate conclusion which is the investigation of the recovery

4    actions, the collection of the funds and the distribution to

5    creditors.  And the best way to get there, what's in the best

6    interest to creditors is the conversion to a Chapter 7.

7              MR. HUFNAGEL:  Again, Brian Hufnagel for the United

8    States Trustee.  Your Honor, I'd ask that the Court be

9    skeptical of the hearsay introduced by the debtors regarding

10   the grievance with the taxing authorities.  The taxing

11   authorities have all stood up today and stated they prefer that

12   the cases be converted to Chapter 7.  It's unlikely that they

13   would then -- they may, but that their position today is to

14   state that they will agree to accept less than the

15   administrative claims for the purposes of having a plan

16   confirmed.  It's more like that they would take a position in

17   line with their position today and state that they want the

18   case converted to Chapter 7, which is what they stated on the

19   record.  Other than that, Your Honor, I have nothing additional

20   to what Mr. Flint has stated on behalf of Chase in reply on the

21   cost issues.

22             THE COURT:  All right.  Mr. Kushner, I'll give you

23   the last word if you'd like it.  Second to the last word, I

24   guess I get the last word.

25             MR. KUSHNER:  No thank you, Your Honor.